No. 24-50976

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

MANUEL ESQUIVEL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF
SIMILARLY SITUATED PERSON, ON BEHALF OF THE WHATABURGER 401(K)
SAVINGS PLAN FORMERLY KNOWN AS THE WHATABURGER PROFIT SHARING AND
401(K) SAVINGS PLAN,

*Plaintiff - Appellant,*

v.

WHATABURGER RESTAURANTS, L.L.C.; THE BOARD OF DIRECTORS OF
WHATABURGER RESTAURANTS, L.L.C.; THE WHATABURGER 401(K) SAVINGS PLAN
ADMINISTRATIVE COMMITTEE, FORMERLY KNOWN AS THE WHATABURGER PROFIT
SHARING AND 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE; DOES NO.1-20,
WHOSE NAMES ARE CURRENTLY UNKNOWN,

*Defendants - Appellees.*

On Appeal from the United States District Court
for the Western District of Texas,
USDC Civil Action No. SA-24-CV-00310-XR

---

## OPENING BRIEF OF PLAINTIFF-APPELLANT

---

JAMES E. MILLER
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
jemiller@millershah.com

JOHN S. EDWARDS, JR.
AJAMIE LLP
711 Louisiana Street, Suite 2150
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com

*(Additional counsel on signature page)*

March 24, 2025

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF INTERESTED PERSONS

Plaintiff-Appellant certifies that the following listed persons and entities, as described in the fourth sentence of Fifth Circuit Rule 28.2.1, have an interest in the outcome of this case:

1) **Plaintiff-Appellant**

   Manuel Esquivel

2) **Defendants-Appellees**

   Whataburger Restaurants, L.L.C.; The Board of Directors of Whataburger Restaurants, L.L.C.; The Whataburger 401(K) Savings Plan Administrative Committee, formerly known as The Whataburger Profit Sharing and 401(k) Savings Plan Administrative Committee

3) **Counsel for Plaintiff-Appellant**

   Miller Shah LLP and Ajamie LLP

4) **Counsel for Defendants-Appellees**

   Morgan, Lewis & Bockius LLP and Valkenaar PLLC

/s/ *James E. Miller*
JAMES E. MILLER

*Counsel for Plaintiff-Appellant*

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant requests oral argument, as he believes it would aid the decisional process in this appeal, which involves issues under ERISA and a severance agreement.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

STATEMENT REGARDING ORAL ARGUMENT ............................................... ii

TABLE OF AUTHORITIES ............................................................................... iv

INTRODUCTION ............................................................................................ 1

JURISDICTIONAL STATEMENT ...................................................................... 4

ISSUES PRESENTED ....................................................................................... 5

STATEMENT OF THE CASE ............................................................................ 5

    I.   FACTUAL BACKGROUND ....................................................................... 5

        A.  The Plan and the Parties .............................................................. 5

        B.  Defendants Retained Imprudent Investments in the Plan .......................... 6

        C.  Appellant Sues, but the District Court Dismisses his Breach of Fiduciary Duty Claims on Jurisdictional Grounds ................................................... 10

SUMMARY OF THE ARGUMENT ................................................................... 15

ARGUMENT ................................................................................................. 17

    I.   STANDARD OF REVIEW ...................................................................... 17

    II.  RULE 12(B)(1) STANDARD ................................................................. 17

    III.  THE DISTRICT COURT ERRED WHEN IT GRANTED APPELLEES' MOTION TO DISMISS ...................................................................................... 18

        A.  The Promise Not to Sue does not Apply to Appellant's ERISA Claims .... 18

        B.  The Promise Not to Sue Cannot Impair the Right to Bring Section 502(a)(2) Claims on Behalf of the Plan ..................................................... 21

        C.  The Promise Not to Sue has no Effect on Plan Injuries Arising After it was Signed ...................................................................................... 23

CONCLUSION ............................................................................................... 25

CERTIFICATE OF SERVICE ............................................................................. I

CERTIFICATE OF COMPLIANCE ..................................................................... II

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Paredes*,
  714 F. Supp. 3d 962 (M.D. Tenn. Jan. 31, 2024) ................................. 13

*Barron v. UNUM Life Ins. Co. of America*,
  260 F.3d 310 (4th Cir. 2001) ................................................................ 23

*Bowles v. Reade*,
  198 F.3d 752 (9th Cir. 1999) ............................................ 11, 14, 18, 21

*Cantu Silva v. United States*,
  110 F.4th 782 (5th Cir. 2024) .............................................................. 17

*Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. Sbc, L.L.C.*,
  93 F.4th 870 (5th Cir. 2024) ................................................................ 20

*Cedeno v. Sasson*,
  100 F.4th 386 (2d Cir. 2024) ........................................... 11, 14, 25

*Chaplin v. NationsCredit Corp.*,
  307 F.3d 368 (5th Cir. 2002) ........................................................ 13, 18

*Fernandez v. Franklin Resources, Inc.*,
  2018 WL 1697089 (N.D. Cal. Apr. 6, 2018) ....................................... 19

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014) ............................................................................... 3

*Garthwait v. Eversource Energy Co.*,
  2022 WL 1657469 (D. Conn. May 25, 2022) ....................................... 13

*Gonzalez v. Mission Am. Ins. Co.*,
  795 S.W.2d 734 (Tex. 1990) ................................................................. 20

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*,
  59 F.4th 1090 (10th Cir. 2023) ............................................................ 22

*Hawkins v. Cintas Corp.*,
   32 F.4th 625 (6th Cir. 2022) .........................................................*Passim*

*Henry on behalf of BSC Ventures Holdings, Inc. Employee Stock Ownership Plan*
   *v. Wilmington Tr. NA*,
   72 F.4th 499 (3d Cir. 2023).............................................................. 24

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ............................................................ 12

*In re Aquila ERISA Litig.*,
   237 F.R.D. 202 (W.D. Mo. 2006) ..................................................... 12

*In re JDS Uniphase Corp. ERISA Litig.*,
   2006 WL 2597995 (N.D. Cal. Sept. 11, 2006) ................................. 23

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ........................................................ 12

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009)................................................. 11, 14, 18

*In re Williams Cos. ERISA Litig.*,
   231 F.R.D. 416 (N.D. Okla. 2005)..................................................... 12

*Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*,
   278 F.3d 494 (5th Cir. 2002)........................................................ 19, 20

*Langbecker v. Electronic Data Systems Corp.*,
   476 F.3d 299 (5th Cir. 2007)............................................................. 13

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
   323 F.R.D. 145 (S.D.N.Y. 2017) ...................................................... 21

*Machete Prods., L.L.C. v. Page*,
   809 F.3d 281 (5th Cir. 2015)............................................................. 17

*Moitoso v. FMR LLC*,
   451 F.Supp.3d 189 (D. Mass. 2020) ................................................. 24

*Munro v. Univ. of S. California*,
    896 F.3d 1088 (9th Cir. 2018)................................................................ 22

*Perthuis v. Baylor Miraca Genetics Lab'ys, LLC*,
    645 S.W.3d 228 (Tex. 2022)................................................................. 20

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)................................................................ 17

*Shaw v. Delta Air Lines, Inc.*,
    463 U.S. 85 (1983).............................................................................. 1

*Stanley v. George Washington Univ.*,
    394 F. Supp. 3d 97 (D.D.C. 2019)................................................... 12, 13

*Stargel v. SunTrust Banks, Inc.*,
    968 F.Supp.2d 1215 (N.D. Ga. August 6, 2013) ........................... 15, 22

*Sullivan v. AT&T, Inc.*,
    2010 WL 905567 (N.D. Tex. March 12, 2010) .................................. 23

*Tibble v. Edison Int'l*,
    575 U.S. 523 (2015)..................................................................... 5, 16, 24

*Tsolmon v. United States*,
    841 F.3d 378 (5th Cir. 2016)................................................................ 17

*Turner v. Pleasant*,
    663 F.3d 770 (5th Cir. 2011)................................................................ 25

*Wagner v. Stiefel Laboratories, Inc.*,
    2015 WL 4557686 (N.D. Ga. June 18, 2015)................................ 15, 22

**Statutes**

28 U.S.C. § 1291 ........................................................................................ 4

28 U.S.C. § 1331 ........................................................................................ 4

28 U.S.C. § 1332 ........................................................................................ 4

29 U.S.C. § 1001 ................................................................. 1, 4

29 U.S.C. § 1104 ................................................................. 10

29 U.S.C. § 1105 ................................................................. 10

29 U.S.C. § 1109 ................................................................. 3, 10

29 U.S.C. § 1132 ................................................................. *Passim*

**Rules**

FED. R. APP. P. 4 ................................................................. 4

FED. R. APP. P. 25 ................................................................. 1

FED. R. APP. P. 32 ................................................................. 2

FED. R. CIV. P. 12 ................................................................. 17

# INTRODUCTION

"All men are mortal; Socrates is a man; therefore, Socrates is mortal."[1] Syllogisms like this are among the foundational modes of logical (and legal) reasoning. A syllogism arises when two premises—usually denoted as a major and minor premise—validly imply a conclusion. When it comes to syllogisms, false premises lead to logical fallacies. That flaw in reasoning caused the District Court to err when it dismissed Appellant's Complaint.

The Complaint asserts claims against Appellees under ERISA, "a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).[2] Specifically, Appellant claims the fiduciaries of his retirement plan failed to monitor the plan's investments and retained imprudent investments in the plan despite well-known concerns with those investments sufficient to put the fiduciaries on notice of their imprudence.[3] In seeking dismissal of the Complaint,

---

[1] This classic example of syllogistic logic is often attributed to Aristotle.

[2] "ERISA" refers to the Employee Retirement Income Security Act, 29 U.S.C. § 1001, *et seq.*

[3] The investments that Appellant claims were imprudent held almost $45 million, equal to nearly one-fifth of the plan's assets. ROA.198. The Complaint analyzes in detail the critical concerns with these investments according to fundamental financial analysis, the investments' designated goals, and substantial withdrawals by investors other than the Plan in recognition of the imprudent nature of these investments (while the Plan's fiduciaries continued to retain these investments). ROA.23–28 [¶¶ 32–44]; ROA.29–33 [¶¶ 47–56].

Appellees argued the Complaint failed to state a claim and, separately, that Appellant is barred from bringing this action by the terms of a severance agreement he signed. The District Court never reached the first issue because it found Appellant's severance agreement operates to bar the action.

The issue with the District Court's decision is plain when the terms of the severance agreement are reviewed. The severance agreement contains two related provisions that purport to address a former employee's right to bring a claim in the future: (1) a "General Release" that specifies certain claims to be released; and (2) a "Promise Not to Sue" that prohibits a former employee from filing a lawsuit with respect to released claims. Critically, the "Promise Not to Sue" specifically provides that a former employee shall not sue Appellees "for any reason covered by the General Release." ***It does not prohibit lawsuits beyond the scope of the General Release***. Thus, when the District Court correctly found the General Release does not apply to Appellant's ERISA claims, it should have logically found the Promise Not to Sue does not prohibit Appellant's lawsuit because the claims are not "covered by the General Release." The District Court, however, failed to complete the syllogism with the plain terms of the severance agreement:

**Major premise:** Appellant's ERISA claims are not released.

**Minor premise:** The Promise Not to Sue applies only to released claims.

**Conclusion:** The Promise Not to Sue does not apply to Appellant's claims.

The correct syllogism, grounded in basic principles of contract construction, demonstrates the District Court erroneously dismissed the Complaint based upon the Promise Not to Sue.

Yet, even if the Promise Not to Sue purported to apply to Appellant's claims, ERISA confirms that Appellees were not entitled to dismissal. ERISA requires that those charged with managing a plan's assets do so prudently and loyally. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 411–12 (2014). A fiduciary who breaches ERISA's fiduciary duties "shall be personally liable to make good to such *plan*" any losses or lost profits caused by a breach. 29 U.S.C. § 1109(a) (emphasis added). ERISA confers upon plan participants and beneficiaries a private right of action to obtain relief on behalf of a *plan* for such breaches. *See id.* at § 1132(a)(2). Under ERISA, individual agreements related to employment cannot impair a participant's right to bring breach of fiduciary duty claims on behalf of a plan. As the District Court recognized, courts have applied this principle in finding that agreements purporting to release such claims or require individual arbitration are ineffective. But the District Court drew a line at covenants not to sue that is inconsistent with this well-established doctrine.

Separately, the District Court overlooked plan injuries that arose *after* the effective date of Appellant's separation agreement, claims for which the Promise Not to Sue could not control temporally.

The Court should reverse the District Court's dismissal order.

## JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(e)(1), which provides for federal jurisdiction of actions brought under Title I of ERISA, 29 U.S.C. § 1001, *et seq*.

On November 8, 2024, the District Court entered final judgment in accordance with its ruling on the motion to dismiss filed by Defendants-Appellees Whataburger Restaurants, L.L.C. ("Whataburger"), the Board of Directors of Whataburger Restaurants, L.L.C. (the "Board"), and the Whataburger 401(k) Savings Plan Administrative Committee (the "Committee"), formerly known as The Whataburger Profit Sharing and 401(k) Savings Plan Administrative Committee (collectively, "Defendants" or "Appellees"). Plaintiff-Appellant Manuel Esquivel ("Plaintiff" or "Appellant") noticed this appeal from that final

judgment on December 9, 2025.[4]  Accordingly, the Court has jurisdiction pursuant to 28 U.S.C. § 1291 and this appeal is timely pursuant to FED. R. APP. P. 4(a).

## ISSUES PRESENTED

Whether the District Court erred in holding that Appellant is precluded from bringing breach of fiduciary duty claims on behalf of the Whataburger Profit Sharing and 401(k) Savings Plan (the "Plan") because of the Promise Not to Sue.

## STATEMENT OF THE CASE

**I.    FACTUAL BACKGROUND**

### A. The Plan and the Parties

The Plan is a defined contribution retirement plan.[5]  This means the "participants' retirement benefits are limited to the value of their own individual investment accounts, which is determined by the market performance of employee and employer contributions, less expenses." *Tibble v. Edison Int'l*, 575 U.S. 523, 525 (2015).  As a result, and unlike traditional defined benefit retirement plans, Plan participants bear the risk of high fees and investment underperformance.[6]  As of December 31, 2022, the Plan had 9,796 participants with account balances and

---

[4]ROA.422–424.

[5]ROA.13–17 [¶¶ 3, 17].

[6]ROA.12 [¶ 2].

assets totaling approximately $215 million, placing it among the largest defined contribution plans in the country by total assets.[7]

Whataburger sponsors the Plan for qualifying employees, and it is a fiduciary charged with administering the Plan.[8]  Whataburger's Board assembled the Committee and appointed Committee members to administer the Plan on Whataburger's behalf, making each a co-fiduciary of the Plan.[9]

Appellant is a former employee of Whataburger, and he participated in the Plan during the proposed Class Period, which is defined as March 27, 2018, to the present.[10]

## B. Defendants Retained Imprudent Investments in the Plan

Defendants' responsibilities as fiduciaries include selecting and monitoring investments in the Plan.[11]  Defendants, however, failed to appropriately monitor the Plan's investments, resulting in the Plan's retention of at least two imprudent investments during the Class Period: the MainStay Winslow Large Cap Growth

---

[7]ROA.13 [¶ 3].

[8]ROA.15 [¶ 9].

[9]ROA.15 [¶¶ 10–11].

[10]ROA.12–15 [¶¶ 1, 8].

[11]ROA.13 [¶ 4].

Fund (the "MainStay Fund") and the Janus Henderson Triton Fund (the "Janus Fund") (collectively, the "Challenged Funds").[12]

The Challenged Funds had severe problems preceding and throughout the Class Period, while suitable alternative investments were available to the Plan at all relevant times.[13]  The Challenged Funds made up one-fifth of the Plan's ten investments and held almost $45 million combined, which was more than 18% of Plan assets as of December 31, 2020.[14]

*The MainStay Fund*.  The managers of the MainStay Fund designated the Russell 1000 Growth Index as the benchmark against which the fund's performance should be evaluated.  Unfortunately for investors, the MainStay Fund persistently and substantially underperformed this objective measure, signaling serious performance concerns.  Indeed, the MainStay Fund underperformed its benchmark on three- and five-year bases for nine consecutive quarters by the start of the Class Period.[15]  In addition, the fund's three- and five-year alpha—a measure of an investment's ability to add value in excess of its benchmark—was dramatically negative for each of those same periods.[16]  The indicia of

---

[12]ROA.13–14 [¶ 5].

[13]ROA.23–29 [¶¶ 31–45].

[14]ROA.198.

[15]ROA.23–24 [¶ 32].

[16]ROA.23–24 [¶ 32].

underperformance pled in the Complaint are not short-term metrics influenced by sporadic or remote trends, but incorporate over seven years of data.[17]  These trends continued throughout the Class Period.[18]  At one point, the MainStay Fund's annualized five-year returns and alpha were negative for *sixteen consecutive quarters.*[19]

Simply put, the MainStay Fund was never an appropriate investment for the Plan during the Class Period, while suitable alternative investments that either tracked or exceeded the MainStay Fund's benchmark were available for inclusion in the Plan at each point when the fiduciaries maintained the MainStay Fund.[20]

Unlike Defendants, many investors recognized and reacted to the well-known concerns with the MainStay Fund by withdrawing their investments.  At the end of 2014, the MainStay Fund had approximately $20 billion in assets under management ("AUM"); but due in large part to net outflows of well over $1 billion per year, the fund had only approximately $11 billion in AUM as of the end of 2022, a reduction of almost 50%.[21]

---

[17]ROA.23–24 [¶ 32].

[18]ROA.25–27 [¶¶ 34–41].

[19]ROA.27 [¶ 42].

[20]ROA.27–28 [¶ 43].

[21]ROA.28 [¶ 44].

*The Janus Fund.*  Like the MainStay Fund, the Janus Fund was plagued by performance concerns that were readily apparent when considering numerous fundamental metrics and the fund's returns compared to its stated benchmark and peer investments.[22]  These concerns persisted for several years during the relevant period[23] and reached alarming levels as the Janus Fund fell below its benchmark by as much as 5.70% annualized on a three-year basis (when it was in the 85th percentile among peer funds according to this measure) and 3.17% annualized on a five-year basis (when it was in the 77th percentile among peer funds according to this measure).[24]  Defendants ignored *eight consecutive quarters* of red flags from the Janus Fund considering fundamental metrics and the fund's performance against its designated benchmark and peers.[25]

Considering these concerns, the Janus Fund was never an appropriate investment for the Plan during the Class Period, while suitable alternative investments that either tracked or exceeded the Janus Fund's benchmark were available for inclusion in the Plan at each point when the fiduciaries maintained the Janus Fund.[26]

---

[22]ROA.29 [¶ 47].

[23]ROA.30–32 [¶¶ 48–55].

[24]ROA.31 [¶ 53].

[25]ROA.32–33 [¶ 56].

[26]ROA.33 [¶ 57].

Again, unlike Defendants, many investors largely recognized and reacted to the Janus Fund's substantial concerns by withdrawing their investments. The Janus Fund had approximately $12 billion in AUM in 2019; but due in large part to net outflows of over $1 billion per year, the fund had only approximately $7 billion in AUM as of the end of 2022, a reduction of more than 40%.[27]

### C. Appellant Sues, but the District Court Dismisses his Breach of Fiduciary Duty Claims on Jurisdictional Grounds

Appellant brought this action on behalf of the Plan against Defendants,[28] asserting three claims: (1) breach of fiduciary duty under Section 404 of ERISA, 29 U.S.C. § 1104; (2) failure to monitor fiduciaries and co-fiduciary breaches under Section 405 of ERISA, 29 U.S.C. § 1105; and (3) in the alternative and to the extent any Defendant is not deemed to be a fiduciary under ERISA, knowing breach of trust.[29] Appellant invoked the private right of action created by Sections 409 and 502(a)(2) of ERISA, 29 U.S.C. §§ 1109, 1132(a)(2).[30]

---

[27]ROA.32–33 [¶ 56].

[28]ROA.12 [¶ 1].

[29]ROA.39–42 [¶¶ 78–94].

[30]ROA.39–42 [¶¶ 78–94].

Appellees moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).[31] The motion was briefed and heard upon oral argument,[32] and the District Court granted the motion under Rule 12(b)(1) for lack of jurisdiction.[33] The District Court did not reach Appellees' Rule 12(b)(6) arguments.

The District Court's analysis centered on two provisions of the Separation and Release Agreement ("Separation Agreement") that Appellant signed and which became effective on March 15, 2023—the General Release and Promise Not to Sue.

> ***The General Release***.  The General Release provides, in pertinent part, that:

> You [Appellant] release Whataburger . . . fiduciaries and others affiliated with Whataburger's benefit plans . . . from all claims . . . of any type to date, known or unknown . . . to the fullest extent allowed by law . . . including but not limited to anything to do with your employment . . . This means you give up all claims and rights related to: . . . compensatory . . . damages . . . or other federal . . . statutory . . . matters . . . claims under . . . the Employee Retirement Income Security Act . . . any participation in any class or collective action against any Releasee; and claims for damages in an individual capacity or on behalf of another person or entity.

ROA.180–181 [¶ 4].

---

[31]ROA.146.  References to "Rules" are to the Federal Rules of Civil Procedure unless otherwise indicated.

[32]ROA.427–471.

[33]ROA.420.

The District Court surveyed relevant authority on the issue and found that the "Second, Sixth, Ninth and Third Circuits have determined that agreements related to employment that have been signed by an individual participant do not preclude those participants from suing on behalf of a plan."[34]  It further observed that "several courts have concluded the issue is clear-cut, determining, as a matter of law, an individual cannot release a plan's claims and accordingly a release cannot bar an individual from bringing claims on behalf of a plan under 502(a)(2)."[35]

The District Court also noted the "Seventh Circuit found that a plaintiff released claims under ERISA § 502(a)(2) when he signed a general release that covered 'any claim or entitlement to pay, benefits or damages arising under any federal law (including but not limited to . . . [ERISA])')" and "a D.C. district court similarly concluded that a plaintiff that signed a release of 'any and all claims' alleging 'violations of any federal . . . statute and excluding claims for vested

---

[34]ROA.412–413 (citing *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632–33 (6th Cir. 2022); *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024); *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009)).

[35]ROA.413 (citing *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 210 (W.D. Mo. 2006); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 423 (N.D. Okla. 2005); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006)).

-12-

benefits under employee benefits plans' had released her ERISA claims."[36]  But it discerned that "courts have distinguished [these cases] because those courts did not specifically discuss whether the plaintiffs had the power to waive claims brought derivatively on behalf of the plan."[37]

Finally, the District Court addressed the lack of "a case wherein the Fifth Circuit squarely addresses whether a release bars claims brought on behalf of a plan."[38]  It explained that *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299 (5th Cir. 2007), an interlocutory appeal with a divided panel, "did not hold that the releases foreclosed a § 502(a)(2) suit on behalf of a plan," only "noting that 'holders of the releases could become a subclass if a class action is otherwise deemed appropriate."[39]  Similarly, the District Court clarified that, although this Court "held that a release bars ERISA claims" in *Chaplin v. NationsCredit Corp.*, 307 F.3d 368 (5th Cir. 2002), "the issue there involved a [p]laintiff bringing a claim on his own behalf, not a claim brought on behalf of a plan as contemplated here."[40]

---

[36]ROA.414 (citing *Howell v. Motorola, Inc.*, 633 F.3d 552, 558 (7th Cir. 2011); *Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 107 (D.D.C. 2019)).

[37]ROA.414 (citing *Arnold v. Paredes*, 714 F. Supp. 3d 962, 973–974 (M.D. Tenn. Jan. 31, 2024); *Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, at *14 (D. Conn. May 25, 2022)).

[38]ROA.414–415.

[39]ROA.415.

[40]ROA.415.

Accordingly, the District determined:

> [Appellant] is bringing claims through a statutory mechanism that
> provides for derivative actions on behalf of the plan. The weight of
> authority suggests a release is ineffective from barring the claim.
> Finding very little authority suggesting otherwise, the Court concludes
> that [Appellant] *has not released* his right to bring the section 502(a)(2)
> claims at issue here.

ROA.415 (emphasis added).[41]

    ***The Promise Not to Sue***. The Promise Not to Sue provides, in pertinent

part:

> A "promise not to sue" means you promise not to sue any Releasee in
> court. This is different from the General Release above. Besides
> releasing claims covered by the General Release, you agree never to
> sue any Releasee for ***any reason covered by the General Release***.

ROA.181 [¶ 6] (emphasis added).

    The District Court noted "[t]here is very little authority on whether a

covenant not to sue precludes a plaintiff from bringing claims on behalf of a

plan."[42] It quoted dicta from the Third Circuit's decision in *In re Schering Plough*,

589 F.3d at 599, suggesting that "it could be argued that [a] covenant not to sue

---

[41]The authority that the District Court reviewed included those from the "Second,
Sixth, Ninth and Third Circuits[,] [which] have determined that agreements related
to employment that have been signed by an individual participant do not preclude
those participants from suing on behalf of a plan." ROA.412–413 (citing *Bowles v.
Reade*, 198 F.3d 752, 760 (9th Cir. 1999); *Hawkins v. Cintas Corp.*, 32 F.4th 625,
632–33 (6th Cir. 2022); *Cedeno*, 100 F.4th at 400; *In re Schering Plough Corp.
ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009)).

[42]ROA.417.

bars [a plaintiff] from filing a lawsuit and serving as a lead plaintiff in an action against [the defendant]," but acknowledged that there were only a trio of district court decisions from the Eleventh Circuit that precluded plaintiffs from bringing 502(a)(2) claims on behalf of a plan based on covenants not to sue.[43]

The District Court further observed there was no relevant statutory authority, and purporting to apply federal common law to interpret the Separation Agreement, determined that "the clear, unambiguous language of the Promise Not to Sue . . . encompasses the claims asserted in the Plaintiff's lawsuit. Therefore, Plaintiff's claims are barred by the Promise Not to Sue and may be dismissed under Federal Rule 12(b)(1)."[44]  In so doing, the District Court also rejected Appellant's argument that the Promise Not to Sue could not bar his unknown, future ERISA claims, finding that "the events complained of occurred before the date the Plaintiff signed the Promise Not to Sue."[45]

### SUMMARY OF THE ARGUMENT

The District Court's Order erred in three independent ways.

---

[43]ROA.417 (citing *Wagner v. Stiefel Laboratories, Inc.*, 2015 WL 4557686, at *12 (N.D. Ga. June 18, 2015), which discussed *Stargel v. SunTrust Banks, Inc.*, 968 F.Supp.2d 1215, 1224 (N.D. Ga. August 6, 2013), and *Finnerty v. Stiefel Laboratories, Inc.*, No. 09-CV-2187, Doc. 384 (S.D. Fla. 2009)).

[44]ROA.419.

[45]ROA.420.

*First*, the District Court misread the Promise Not to Sue, which applies only to claims "covered" by the General Release. Since the General Release does not encompass Appellant's claims (as the District Court correctly found), the Promise Not to Sue likewise does not encompass Appellant's claims or operate to bar this lawsuit. This reading is the most consistent with the plain language of the Separation Agreement and applicable principles of contract interpretation. *See infra* Argument.III.A.

*Second*, breach of fiduciary duty claims brought under Section 502(a)(2) of ERISA belong to a plan and a participant's right to assert such claims in a derivative capacity cannot be impaired by individual agreements related to employment. The same principles that courts have routinely applied in finding individual employment agreements cannot require the release or arbitration of plan-wide claims under ERISA apply with equal force to a covenant not to sue. *See, e.g.*, *Hawkins*, 32 F.4th at 633. Those claims belong to the plan, so any lawsuit asserting such claims is between the plan and the fiduciaries; thus, such a suit does not infringe upon any covenant not to sue signed by an individual plan participant. *See infra* Argument.III.B.

*Third*, plan fiduciaries have an *ongoing* duty to monitor and remove imprudent plan investments. *See Tibble*, 575 U.S. at 529. Since Appellees' imprudent monitoring and retention of the Challenged Funds harmed the Plan even

after Appellant signed the Separation Agreement, the Promise Not to Sue cannot be effective for these continuous and recurring injuries. *See infra* Argument.III.C.

## ARGUMENT

### I.    STANDARD OF REVIEW

The standard of review for grants of motions to dismiss, including under Federal Rule of Civil Procedure 12(b)(1), is *de novo.  See Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

### II.    RULE 12(B)(1) STANDARD

In deciding a Rule 12(b)(1) motion, "courts may consider: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Cantu Silva v. United States*, 110 F.4th 782, 786–87 (5th Cir. 2024) (quoting *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016)).  The party asserting jurisdiction bears the burden of proving its existence. *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

III.   **THE DISTRICT COURT ERRED WHEN IT GRANTED APPELLEES' MOTION TO DISMISS**

### A. The Promise Not to Sue does not Apply to Appellant's ERISA Claims

The Separation Agreement is to be "interpreted under federal law if that law governs, and otherwise under the laws of the State of Texas."[46]  As this Court has held, "[f]ederal common law controls the interpretation of a release of federal claims," so federal law applies to the General Release, while Texas law applies to the interpretation of the other aspects of the Separation Agreement to the extent ERISA does not require a certain interpretation.  *Chaplin*, 307 F.3d at 372.

Federal common law does not permit individual participants to release claims under Section 502(a)(2) of ERISA because they belong to the plan.  *See, e.g.*, *Bowles*, 198 F.3d at 760 ("Because Bowles's [section 502(a)(2)] claims are not truly individual, it was proper for the district court to conclude that Bowles could not settle them without The Plans' consent"); *In re Schering Plough Corp.*, 589 F.3d at 594 ("Defendants contend that Wendel's release is a bar to the instant action. We disagree. Section 502(a)(2) claims are, by their nature, plan claims"). Accordingly, the District Court correctly held the General Release does not

---

[46]ROA.183 [¶ 14].

encompass the ERISA claims that Appellant brought on behalf of the Plan.[47]  This limitation controls the scope of the Promise Not to Sue.

The Promise Not to Sue states, in relevant part, "[b]esides releasing claims covered by the General Release, you agree never to sue any Releasee *for any reason covered by the General Release*."[48]  Since the General Release does not "cover" the claims that Appellant brought on behalf of the Plan under Section 502(a)(2) of ERISA, the Promise Not to Sue likewise does not "cover" Appellant's Section 502(a)(2) claims under the plain language of the Promise Not to Sue.  *See Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) ("Where the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain language as a matter of law").  In other words, Appellant is not "su[ing] any Releasee for any reason covered by the General Release"; he is suing the Releasees for reasons *not covered* by the General Release.[49]  Courts have applied this very construct in denying motions to dismiss based upon covenants not to sue for "covered" claims where the "covered" claims are plan-wide breach of fiduciary duty claims under ERISA.  *See, e.g.*, *Fernandez v. Franklin Resources, Inc.*, 2018 WL 1697089, at *4 (N.D. Cal. Apr. 6, 2018)

---

[47]ROA.415.

[48]ROA.181 [¶ 6] (emphasis added).

[49]Though the District Court did not address this point in its Order, Appellant raised it at the hearing on the motion to dismiss.  ROA.435–438 [9:11–19, 11:8–12:3].

(citation omitted) (because 'Plaintiff cannot release the breach of fiduciary duty claims made on behalf of the Plan, such claims are not covered by the covenant not to sue.'").

Other general principles of contract interpretation confirm this reading. Under the "familiar presumption[] favoring consistent usage," the term "General Release" as used in the Promise Not to Sue should be identical in scope as defined earlier in the separation agreement, which means it does not "cover" Section 502(a)(2) claims. *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. Sbc, L.L.C.*, 93 F.4th 870, 877 (5th Cir. 2024); *see Int'l Turbine Servs., Inc.*, 278 F.3d at 497 ("In construing a contract under Texas law, courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless"). At the same time, had Appellees intended the Promise Not to Sue to "cover" claims beyond those governed by the General Release, they could have included such language in that provision generally or identified Appellant's Section 502(a)(2) claims specifically. *See Perthuis v. Baylor Miraca Genetics Lab'ys, LLC*, 645 S.W.3d 228, 241 (Tex. 2022) (quoting *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990)) (construction of contractual ambiguity should be "against the party who drafted it since the drafter is responsible for the language used").

In sum, a fair reading of the entirety of the Separation Agreement and the application of its provisions establishes that, as drafted, the Promise Not to Sue does not include the Plan's claims under Section 502(a)(2) of ERISA.  Thus, the District Court erred in interpreting the Promise Not to Sue as barring the Section 502(a)(2) claims that Appellant brought on behalf of the Plan.

### B. The Promise Not to Sue Cannot Impair the Right to Bring Section 502(a)(2) Claims on Behalf of the Plan

Separately, the well-established principle that Appellant's Section 502(a)(2) claims belong to the Plan also sets these claims beyond the reach of the Promise Not to Sue, regardless of the provision's language.  As already explained, this Court's sister courts of appeal have found that an individual participant cannot release a plan's claims under Section 502(a)(2) of ERISA.  *See, e.g.*, *Bowles*, 198 F.3d at 760; *see also Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) (collecting cases) ("In cases brought on behalf of a plan, most courts have held that 'individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty'; the consent of the plan is required for a release of 29 U.S.C. § 1132(a)(2) [Section 502(a)(2)] claims.").

As a corollary, this Court's sister courts of appeal have held that a plan's dominion of Section 502(a)(2) claims prevents individual participants from agreeing to arbitrate such claims.  *See Hawkins*, 32 F.4th at 633 ("because §

502(a)(2) claims 'belong' to the Plan, an arbitration agreement that binds only individual participants cannot bring such claims into arbitration"); *Munro v. Univ. of S. California*, 896 F.3d 1088, 1092 (9th Cir. 2018) ("[W]e cannot interpret the catch-all clause agreeing to arbitrate '[a]ny claim that otherwise would have been decidable in a court . . . for violation of any federal . . . statute' to cover claims belonging to other entities") (brackets and ellipses in original); *cf. Harrison v. Envision Mgmt. Holding, Inc. Bd. of Directors*, 59 F.4th 1090, 1106–07 (10th Cir. 2023) (declining to compel arbitration of Section 502(a)(2) claims where it would prevent plan-wide relief).  Those courts explained that, even if a plan's recovery of losses would eventually be allocated to an individual participant's account, the actual dispute (and claim) is between the plan and the fiduciary defendants.  *See Hawkins*, 32 F.4th at 635 ("The [p]laintiffs' injuries here are, as discussed above, injuries to the [p]lan as a whole. If, for instance, the named [p]laintiffs were to be swapped out with two other employees, nothing material in the complaint would need to be changed"); *Munro*, 896 F.3d at 1094 ("recovery under ERISA § 409(a) [which is enforced by Section 502(a)(2)] is recovery singularly for the plan").[50]

---

[50]None of the three district court decisions from the Eleventh Circuit that the District Court cited addressed the authorities and reasoning presented here. *See Wagner*, 2015 WL 4557686, at *12 (discussing *Stargel*, 968 F.Supp.2d at 1224; *Finnerty*, No. 09-CV-2187, Doc. 384 (S.D. Fla. 2009)).

Likewise, Appellant is not "su[ing] any Releasee in court"[51] to vindicate an individual claim he holds. Rather, Appellant is asserting a claim on behalf of the Plan. The Promise Not to Sue thus cannot and does not preclude the Plan from bringing Section 502(a)(2) claims through Appellant or any other individual participant.[52] In other words, just as an individual participant cannot agree to release or arbitrate a claim that he or she does not possess, an individual participant cannot agree not to litigate a claim that he or she does not possess.[53]

### C. The Promise Not to Sue has no Effect on Plan Injuries Arising After it was Signed

Aside from misinterpreting the substantive limits of the Promise Not to Sue, the District Court also misapplied its temporal limits. As the District Court acknowledged in its Order, "a waiver may release known claims, [but] it cannot release future unknown claims." *Sullivan v. AT&T, Inc.*, 2010 WL 905567, at *4 (N.D. Tex. March 12, 2010) (citing *Barron v. UNUM Life Ins. Co. of America*, 260

---

[51]ROA.181 [¶ 6].

[52]Some courts have already extended this principle to covenants not to sue. *See In re JDS Uniphase Corp. ERISA Litig.*, 2006 WL 2597995, at *1–*2 (N.D. Cal. Sept. 11, 2006) (finding that release and covenant not to sue did not prohibit plaintiffs from bringing claims where they alleged "plan-wide fiduciary wrongdoing and [sought] plan-wide relief").

[53]The District Court likewise did not address this point in its Order, which Appellant also raised at the hearing. ROA.435–436 [9:20–10:9].

F.3d 310, 317 (4th Cir. 2001)).[54]  In this case, the Plan's injuries are ongoing and recur throughout the Class Period—March 27, 2018 to the present—which includes the period after Appellant signed the Separation Agreement on March 15, 2023.

As the Supreme Court explained in *Tibble*, ERISA fiduciaries have a "continuing duty to monitor trust investments and remove imprudent ones." *Tibble*, 575 U.S. at 529 (holding that the "Ninth Circuit erred by applying a 6-year statutory bar based solely on the initial section of the three [challenged] funds without considering the contours of the alleged breach of fiduciary duty").  Thus, Appellees' monitoring failures and unsuitable retention of the Challenged Funds continued after Appellant signed the Separation Agreement on March 15, 2023.[55] Even if the Promise Not to Sue purported to bar claims for the Plan's losses after the Separation Agreement was signed, the Plan's injuries are exactly the kind that multiple circuits have recently found immune from waiver under an individual employment agreement.[56]  *See Henry on behalf of BSC Ventures Holdings, Inc.*

---

[54]ROA.419.

[55]ROA.28–29, ROA.34 [¶¶ 45, 58].

[56]This is consistent with well-established principles under ERISA that prohibit prospective releases of fiduciary responsibility.  *See Moitoso v. FMR LLC*, 451 F.Supp.3d 189, 202 (D. Mass. 2020) (citations omitted) ("An attempt to release future ERISA violations would not be valid because it would be an attempt to relieve the fiduciary of responsibility.").

*Employee Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 507–08 (3d

Cir. 2023) (finding provisions of an employment agreement purporting to

prospectively waive a participant's right to seek remedies on behalf of a retirement

plan are unenforceable); *accord Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir.

May 1, 2024).

Accordingly, the District Court erred in finding "the events complained of

[only] occurred before the date the Plaintiff signed the Promise Not to Sue," and

should not have enforced the Promise Not to Sue to bar the entirety of Appellant's

claims as a factual matter.[57]

## CONCLUSION

This Court should reverse the District Court's Order granting Defendants'

Rule 12(b)(1) motion.

Dated: March 24, 2025                    Respectfully submitted,

                                         /s/ *James E. Miller*
                                         JAMES E. MILLER
                                         MILLER SHAH LLP
                                         65 Main Street
                                         Chester, CT 06412
                                         (866) 540-5505
                                         jemiller@millershah.com

---

[57]ROA.420.  To the extent the Court construes Appellant's Complaint to determine
the contours of his claims, it must do so in the light most favorable to him as the
non-moving party.  *See Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

JAMES C. SHAH
ALEC J. BERIN
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
jshah@millershah.com
ajberin@millershah.com

JOHN S. EDWARDS, JR.
AJAMIE LLP
711 Louisiana Street, Suite 2150
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com

*Counsel for Plaintiff-Appellant*

# CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served via the

Court's ECF filing system in compliance with Federal Rules of Appellate

Procedure 25(b) and 25(c), on March 24, 2025, on all registered counsel of record,

and has been transmitted to the Clerk of the Court.

Dated: March 24, 2025                    /s/ *James E. Miller*
                                         JAMES E. MILLER

                                         *Counsel for Plaintiff-Appellant*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of FED. R. APP. P. 32(A)(7)(B) because it contains 6,615 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(A)(5) and the type-style requirements of FED. R. APP. P. 32(A)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type-style.

3.      I further certify that (a) required privacy redactions have been made, 5TH CIR. R. 25.2.13; (b) the electronic submission is an exact copy of the paper document, 5TH CIR. R. 25.2.1; and (c) the document has been scanned for viruses with the most recent version of a commercial virus-scanning program and is free of viruses, 5TH CIR. ECF Filing Standards, § A(6).

Dated: March 24, 2025                              /s/ *James E. Miller*
                                                   JAMES E. MILLER

                                                   *Counsel for Plaintiff-Appellant*