No. 24-50976

---

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

---

MANUEL ESQUIVEL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSON, ON BEHALF OF THE WHATABURGER 401(K) SAVINGS PLAN FORMERLY KNOWN AS THE WHATABURGER PROFIT SHARING AND 401(K) SAVINGS PLAN,

*Plaintiff - Appellant,*

v.

WHATABURGER RESTAURANTS, L.L.C.; THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS, L.L.C.; THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE, FORMERLY KNOWN AS THE WHATABURGER PROFIT SHARING AND 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE; DOES NO.1-20, WHOSE NAMES ARE CURRENTLY UNKNOWN,

*Defendants - Appellees.*

On Appeal from the United States District Court
for the Western District of Texas,
USDC Civil Action No. SA-24-CV-00310-XR

---

# RECORD EXCERPTS

---

JAMES E. MILLER
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
jemiller@millershah.com

JOHN S. EDWARDS JR.
AJAMIE LLP
711 Louisiana Street
Pennzoil Place S. Tower, Suite 2150
Houston, TX 77002
jedwards@ajmie.com

March 24, 2025

*Counsel for Plaintiff-Appellant*

# **TABLE OF CONTENTS**

Docket Sheet ................................................................. ROA.1

Separation Agreement ................................................ ROA.179

Order Granting Rule 12(b)(1) Motion to Dimiss ........................ ROA.407

Final Judgment ........................................................... ROA.421

Notice of Appeal ........................................................ ROA.422

Excerpt of Hearing Transcript ....................................... ROA.427

# U.S. District Court [LIVE]
# Western District of Texas (San Antonio)
# CIVIL DOCKET FOR CASE #: 5:24-cv-00310-XR

Esquivel v. Whataburger Restaurants LLC et al
Assigned to: Judge Xavier Rodriguez
 Case in other court:  5CCA, 24-50976 (Doc. 33)
Cause: 29:1002 E.R.I.S.A.: Employee Retirement

Date Filed: 03/27/2024
Date Terminated: 11/08/2024
Jury Demand: None
Nature of Suit: 791 Labor: E.R.I.S.A.
Jurisdiction: Federal Question

**Plaintiff**

**Manuel Esquivel**
*individually and as a representative of a*
*class of similarly situated person, on behalf*
*of the WHATABURGER 401(K) SAVINGS*
*PLAN*
*formerly known as*
the Whataburger Profit Sharing and 401(k)
Savings Plan

represented by **Alec J. Berin**
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
610-891-9880
Fax: 866-300-7367
Email: ajberin@millershah.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Eric P. Chenoweth**
Ajamie LLP
711 Louisiana, Ste 2150
Houston, TX 77002
713-860-1601
Email: echenoweth@ajamie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James E. Miller**
Miller Shah LLP
65 Main Street
Chester, CT 06412
806-526-1100
Fax: 866-300-7367
Email: jemiller@millershah.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**James C. Shah**
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
610-891-9880
Fax: 866-300-7367
Email: jcshah@millershah.com

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Laurie Rubinow**
Milller Shah LLP
65 Main Street
Chester, CT 06412
866-540-5505
Fax: 866-300-7367
Email: lrubinow@millershah.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Thomas R. Ajamie**
Ajamie LLP
711 Louisiana
Suite 2150
Houston, TX 77002
(713)860-1600
Fax: 713/860-1699
Email: tajamie@ajamie.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**John S. Edwards , Jr.**
Ajamie LLP
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
(713) 860-1619
Fax: (713) 860-1699
Email: jedwards@ajamie.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Whataburger Restaurants LLC**          represented by   **Christopher B. Dempsey**
Morgan Lewis & Bockius LLP
110 N. Wacker Dr.
Suite 2800
Chicago, IL 60606
312-324-1164
Fax: 312-324-1001
Email: chris.dempsey@morganlewis.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Jeremy P. Blumenfeld**

Morgan, Lewis & Bockius LLP
2222 Market Street
Philadelphia, PA 19103
215-963-5258
Fax: 215-963-5001
Email:
jeremy.blumenfeld@morganlewis.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Keri L. Engelman**
1701 Market Street
Philadelphia, PA 19103
215-963-5100
Fax: 215-963-5001
Email: keri.engelman@morganlewis.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Samuel D. Block**
Morgan Lewis & Bockius LLP
110 North Wacker Drive
Suite 2800
Chicago, IL 60606
312-324-1000
Email: samuel.block@morganlewis.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Dylan R. Fedderman**
Valkenaar PLLC.
7898 Broadway
Suite 120
Ste 150
San Antonio, TX 78209
410-718-8686
Email: dfedderman@valkenaarlaw.com
*ATTORNEY TO BE NOTICED*

**Lauren A. Valkenaar**
Valkenaar, PLLC.
7898 Broadway
Suite 120
78209
San Antonio, TX 78209
210-239-0321
Fax: 210-634-2566
Email: lvalkenaar@valkenaarlaw.com
*ATTORNEY TO BE NOTICED*

**Natsumi Jo Covey**
Valkenaar, PLLC.
7898 Broadway
Suite 120
San Antonio, TX 78209
619-519-9044
Email: ncovey@valkenaarlaw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

| | | |
|---|---|---|
| **The Board of Directors of Whataburger Restaurants LLC** | represented by | **Jeremy P. Blumenfeld**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Dylan R. Fedderman**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Lauren A. Valkenaar**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Natsumi Jo Covey**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **The Whataburger 401(K) Savings Plan Administrative Committee**<br>*formerly known as*<br>the Whataburger Profit Sharing and 401(k) Savings Plan Administrative Committee | represented by | **Christopher B. Dempsey**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Jeremy P. Blumenfeld**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Keri L. Engelman**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Samuel D. Block**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |

**Dylan R. Fedderman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Lauren A. Valkenaar**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Natsumi Jo Covey**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>

**DOES No. 1-20**
*Whose Names Are Currently Unknown*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/27/2024 | 1 (p.11) | COMPLAINT ( Filing fee $ 405 receipt number BTXWDC-18580272), filed by Manuel Esquivel. (Attachments: # 1 (p.11) Civil Cover Sheet)(Edwards, John) (Entered: 03/27/2024) |
| 03/27/2024 | | Case assigned to Judge Xavier Rodriguez. CM WILL NOW REFLECT THE JUDGE INITIALS AS PART OF THE CASE NUMBER. PLEASE APPEND THESE JUDGE INITIALS TO THE CASE NUMBER ON EACH DOCUMENT THAT YOU FILE IN THIS CASE. (mgr) (Entered: 04/01/2024) |
| 03/27/2024 | | If ordered by the court, all referrals will be assigned to Magistrate Judge Bemporad (mgr) (Entered: 04/01/2024) |
| 03/28/2024 | 2 (p.47) | REQUEST FOR ISSUANCE OF SUMMONS by Manuel Esquivel. *TO ALL DEFENDANTS* (Edwards, John) (Entered: 03/28/2024) |
| 04/01/2024 | 3 (p.53) | Pro Hac Vice Letter to Attorneys Alec J. Berin, Don Bivens, James E. Miller, Laurie Rubinow and James C. Shah regarding Attorney Admission to the Western District of Texas. (mgr) (Entered: 04/01/2024) |
| 04/01/2024 | 4 (p.58) | Summons Issued as to The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (mgr) (Entered: 04/01/2024) |
| 04/02/2024 | 5 (p.64) | MOTION to Appear Pro Hac Vice by John S. Edwards, Jr *for Applicant Alec J. Berin* ( Filing fee $ 100 receipt number ATXWDC-18600025) by on behalf of Manuel Esquivel. (Edwards, John) (Entered: 04/02/2024) |
| 04/02/2024 | 6 (p.69) | MOTION to Appear Pro Hac Vice by John S. Edwards, Jr *for Applicant James C. Shah* ( Filing fee $ 100 receipt number ATXWDC-18600202) by on behalf of Manuel Esquivel. (Edwards, John) (Entered: 04/02/2024) |
| 04/02/2024 | 7 (p.74) | MOTION to Appear Pro Hac Vice by John S. Edwards, Jr *for Applicant James E. Miller* ( Filing fee $ 100 receipt number ATXWDC-18600445) by on behalf of Manuel Esquivel. (Edwards, John) (Entered: 04/02/2024) |
| 04/02/2024 | 8 (p.79) | MOTION to Appear Pro Hac Vice by John S. Edwards, Jr *for Applicant Laurie Rubinow* ( Filing fee $ 100 receipt number ATXWDC-18600551) by on behalf of |

| | | |
|---|---|---|
| | | Manuel Esquivel. (Edwards, John) (Entered: 04/02/2024) |
| 04/03/2024 | | Text Order GRANTING 5 (p.64) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 04/03/2024) |
| 04/03/2024 | | Text Order GRANTING 6 (p.69) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 04/03/2024) |
| 04/03/2024 | | Text Order GRANTING 7 (p.74) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 04/03/2024) |
| 04/03/2024 | | Text Order GRANTING 8 (p.79) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 04/03/2024) |
| 04/18/2024 | 9 (p.83) | WAIVER OF SERVICE Returned Executed by Manuel Esquivel as to The Board of Directors of Whataburger Restaurants LLC. Waiver sent on 4/16/2024, answer due 6/17/2024; The Whataburger 401(K) Savings Plan Administrative Committee. Waiver sent on 4/16/2024, answer due 6/17/2024; Whataburger Restaurants LLC. Waiver sent on 4/16/2024, answer due 6/17/2024. (Rubinow, Laurie) (Entered: 04/18/2024) |
| 04/18/2024 | 10 (p.86) | Pro Hac Vice Letter to Attorney Jeremy P. Blumenfeld regarding Attorney Admission to the Western District of Texas. (mgr) (Entered: 04/18/2024) |
| 05/10/2024 | 11 (p.87) | NOTICE of Attorney Appearance by Lauren A. Valkenaar on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. Attorney Lauren A. Valkenaar added to party The Board of Directors of Whataburger Restaurants LLC(pty:dft), Attorney Lauren A. Valkenaar added to party The Whataburger 401(K) Savings Plan Administrative Committee(pty:dft), Attorney Lauren A. Valkenaar added to party Whataburger Restaurants LLC(pty:dft) (Valkenaar, Lauren) (Entered: 05/10/2024) |
| 05/10/2024 | 12 (p.90) | MOTION to Appear Pro Hac Vice by Lauren A. Valkenaar *for Jeremy P. Blumenfeld* ( Filing fee $ 100 receipt number ATXWDC-18752106) by on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Attachments: # 1 (p.11) Exhibit A - Jeremy P. Blumenfeld State and Federal Court Admissions)(Valkenaar, Lauren) (Entered: 05/10/2024) |

| 05/10/2024 | 13 (p.96) | MOTION to Appear Pro Hac Vice by Lauren A. Valkenaar *for Keri L. Engelman* ( Filing fee $ 100 receipt number ATXWDC-18752151) by on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Attachments: # 1 (p.11) Exhibit A - Keri L. Engelman additional Courts of Admission)(Valkenaar, Lauren) (Entered: 05/10/2024) |
| --- | --- | --- |
| 05/10/2024 | 14 (p.101) | MOTION to Appear Pro Hac Vice by Lauren A. Valkenaar *for Samuel D. Block* ( Filing fee $ 100 receipt number ATXWDC-18752171) by on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Valkenaar, Lauren) (Entered: 05/10/2024) |
| 05/10/2024 | 15 (p.105) | MOTION to Appear Pro Hac Vice by Lauren A. Valkenaar *for Christopher B. Dempsey* ( Filing fee $ 100 receipt number ATXWDC-18752178) by on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Valkenaar, Lauren) (Entered: 05/10/2024) |
| 05/10/2024 | 16 (p.109) | RULE 7 DISCLOSURE STATEMENT filed by Whataburger Restaurants LLC identifying Corporate Parent Sunrise Group Holdings, LLC, Corporate Parent Whatabrands LLC for Whataburger Restaurants LLC. (Valkenaar, Lauren) (Entered: 05/10/2024) |
| 05/10/2024 | 17 (p.112) | NOTICE of Attorney Appearance by Dylan R. Fedderman on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. Attorney Dylan R. Fedderman added to party The Board of Directors of Whataburger Restaurants LLC(pty:dft), Attorney Dylan R. Fedderman added to party The Whataburger 401(K) Savings Plan Administrative Committee(pty:dft), Attorney Dylan R. Fedderman added to party Whataburger Restaurants LLC(pty:dft) (Fedderman, Dylan) (Entered: 05/10/2024) |
| 05/10/2024 | 18 (p.115) | NOTICE of Attorney Appearance by Natsumi Jo Covey on behalf of The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. Attorney Natsumi Jo Covey added to party The Board of Directors of Whataburger Restaurants LLC(pty:dft), Attorney Natsumi Jo Covey added to party The Whataburger 401(K) Savings Plan Administrative Committee(pty:dft), Attorney Natsumi Jo Covey added to party Whataburger Restaurants LLC(pty:dft) (Covey, Natsumi) (Entered: 05/10/2024) |
| 05/13/2024 | | Text Order CONDITIONALLY GRANTING 12 (p.90) Motion to Appear Pro Hac Vice. Because counsel has previously appeared pro hac vice, the Court will require counsel to apply for admission to practice before this Court within 60 days of this Order, diligently pursue the application until such time as he may be admitted to practice in this district, and familiarize himself with the Local Court Rules of the United States District Court for the Western District of Texas. Counsel shall advise the Court of admission once admitted. If counsel has not already done so, counsel must register for electronic filing with our court within 10 days of this order. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 05/13/2024) |
| 05/13/2024 | | Text Order GRANTING 13 (p.96) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby |

| | | granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 05/13/2024) |
|---|---|---|
| 05/13/2024 | | Text Order GRANTING 14 (p.101) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 05/13/2024) |
| 05/13/2024 | | Text Order GRANTING 15 (p.105) Motion to Appear Pro Hac Vice. Pursuant to our Administrative Policies and Procedures for Electronic Filing, the attorney hereby granted to practice pro hac vice in this case must register for electronic filing with our court within 10 days of this order. Registration is managed by the PACER Service Center entered by Judge Xavier Rodriguez. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 05/13/2024) |
| 05/13/2024 | 19 (p.118) | ORDER- It is ORDERED that the Plaintiff(s) confer with the Defendant(s) as required by Fed. R. Civ. P 26(f) to submit (1) a proposed scheduling order and (2) a Rule 26(f) Report in the formats shown in the attached documents for the Courts consideration by June 12, 2024. Failure to do so may result in the Courts entering its own scheduling order.-. Signed by Judge Xavier Rodriguez. (vl) (Entered: 05/13/2024) |
| 05/28/2024 | 20 (p.127) | NON-CONSENT to Trial by US Magistrate Judge by The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Valkenaar, Lauren) (Entered: 05/28/2024) |
| 06/11/2024 | 21 (p.128) | NOTICE of Change of Address by Lauren A. Valkenaar (Valkenaar, Lauren) (Entered: 06/11/2024) |
| 06/12/2024 | 22 (p.131) | Rule 26(f) Discovery Report/Case Management Plan *Joint* by The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Valkenaar, Lauren) (Entered: 06/12/2024) |
| 06/17/2024 | 23 (p.140) | MOTION to Dismiss *Plaintiff's Class Action Complaint* by The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Attachments: # 1 (p.11) Exhibit Declaration of J. Blumenfeld, # 2 (p.47) Exhibit A, # 3 (p.53) Exhibit B, # 4 (p.58) Exhibit C, # 5 (p.64) Exhibit D, # 6 (p.69) Exhibit E, # 7 (p.74) Exhibit F, # 8 (p.79) Exhibit G, # 9 (p.83) Exhibit H, # 10 (p.86) Exhibit I, # 11 (p.87) Exhibit J, # 12 (p.90) Exhibit K, # 13 (p.96) Errata L, # 14 (p.101) Exhibit M, # 15 (p.105) Exhibit N, # 16 (p.109) Exhibit O)(Valkenaar, Lauren) (Entered: 06/17/2024) |
| 06/18/2024 | 24 (p.326) | ORDER SETTING STATUS CONFERENCEAND HEARING ON ALL PENDING MOTIONS, (Status Conference set for 8/1/2024 10:30 AM before Judge Xavier Rodriguez,). Signed by Judge Xavier Rodriguez. (vl) (Entered: 06/18/2024) |
| 07/01/2024 | 25 (p.327) | Memorandum in Opposition to Motion, filed by Manuel Esquivel, re 23 (p.140) MOTION to Dismiss *Plaintiff's Class Action Complaint* filed by Defendant The Whataburger 401(K) Savings Plan Administrative Committee, Defendant Whataburger Restaurants LLC, Defendant The Board of Directors of Whataburger |

| | | Restaurants LLC (Berin, Alec) (Entered: 07/01/2024) |
|---|---|---|
| 07/02/2024 | 26 (p.369) | Unopposed MOTION for Extension of Time to File Response/Reply *brief in support of its Motion to Dismiss Plaintiffs Complaint* by The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC. (Attachments: # 1 (p.11) Proposed Order)(Valkenaar, Lauren) (Entered: 07/02/2024) |
| 07/02/2024 | | Text Order GRANTING 26 (p.369) Motion for Extension of Time to File Reply entered by Judge Xavier Rodriguez. Defendants' deadline to file a reply brief in support of their motion to dismiss is hereby extended to July 15, 2024. (This is a text-only entry generated by the court. There is no document associated with this entry.) (TElc) (Entered: 07/02/2024) |
| 07/15/2024 | 27 (p.378) | REPLY to Response to Motion, filed by The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC, re 23 (p.140) MOTION to Dismiss *Plaintiff's Class Action Complaint* filed by Defendant The Whataburger 401(K) Savings Plan Administrative Committee, Defendant Whataburger Restaurants LLC, Defendant The Board of Directors of Whataburger Restaurants LLC (Valkenaar, Lauren) (Entered: 07/15/2024) |
| 07/25/2024 | 28 (p.402) | NOTICE *Regarding Admission of Jeremy P. Blumenfeld to the Western District of Texas* by The Board of Directors of Whataburger Restaurants LLC, The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC re Order on Motion to Appear Pro Hac Vice,,, (Attachments: # 1 (p.11) Exhibit A)(Blumenfeld, Jeremy) (Entered: 07/25/2024) |
| 08/01/2024 | 29 | Minute Entry for proceedings held before Judge Xavier Rodriguez: Motion Hearing held on 8/1/2024 re 23 (p.140) MOTION to Dismiss *Plaintiff's Class Action Complaint* filed by The Whataburger 401(K) Savings Plan Administrative Committee, Whataburger Restaurants LLC, The Board of Directors of Whataburger Restaurants LLC (Minute entry documents are not available electronically.). (Court Reporter Gigi Simcox.)(vl) (Entered: 08/01/2024) |
| 08/23/2024 | 30 (p.427) | Transcript filed of Proceedings held on 8-1-24, Proceedings Transcribed: Motion Hearing. Court Reporter/Transcriber: Gigi Simcox, Telephone number: gigi_simcox@txwd.uscourts.gov, 210-244-5037. Parties are notified of their duty to review the transcript to ensure compliance with the FRCP 5.2(a)/FRCrP 49.1(a). A copy may be purchased from the court reporter or viewed at the clerk's office public terminal. If redaction is necessary, a Notice of Redaction Request must be filed within 21 days. If no such Notice is filed, the transcript will be made available via PACER without redaction after 90 calendar days. The clerk will mail a copy of this notice to parties not electronically noticed Redaction Request due 9/13/2024, Redacted Transcript Deadline set for 9/23/2024, Release of Transcript Restriction set for 11/21/2024, (gs) (Entered: 08/23/2024) |
| 11/08/2024 | 31 (p.407) | ORDER GRANTING 23 (p.140) Motion to Dismiss. Defendants Motion to Dismiss(ECF No. 23) is GRANTED as to the Rule 12(b)(1) motion and DENIED as MOOT as to the 12(b)(6) argument.IT IS ORDERED that Plaintiffs claim against Defendants are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. Signed by Judge Xavier Rodriguez. (mgr) (Entered: 11/12/2024) |
| 11/08/2024 | 32 (p.421) | FINAL JUDGMENT. Signed by Judge Xavier Rodriguez. (mgr) (Entered: 11/12/2024) |

| 12/09/2024 | 33 (p.422) | Appeal of Order entered by District Judge 31 (p.407) , 32 (p.421) by Manuel Esquivel. No filing fee submitted (Edwards, John) (Entered: 12/09/2024) |
|---|---|---|
| 12/09/2024 | | NOTICE OF APPEAL following 33 (p.422) Notice of Appeal (E-Filed) by Manuel Esquivel. Per 5th Circuit rules, the appellant has 14 days, from the filing of the Notice of Appeal, to order the transcript. To order a transcript, the appellant should fill out a (Transcript Order) and follow the instructions set out on the form. This form is available in the Clerk's Office or by clicking the hyperlink above. (mgr) (Entered: 12/09/2024) |
| 12/16/2024 | 34 (p.425) | TRANSCRIPT REQUEST by Manuel Esquivel for dates of August 1, 2024. Proceedings Transcribed: Motion Hearing. Court Reporter: Gigi Simcox.. (Edwards, John)***Modified TEXT on 12/17/2024 (dtg).***TRANSCRIPT IS ALREADY ON FILE WITH THE CLERK'S OFFICE, SEE DOCKET ENTRY 30 (p.427) .*** (Entered: 12/16/2024) |

24-50976.10

# Exhibit A

24-50976.178

<u>**SEPARATION AND RELEASE AGREEMENT**</u>

**1.    *Parties.*** The parties to this Agreement are **Manuel Esquivel Jr**, the Employee (for yourself, your family, beneficiaries and anyone acting for you) ("you," "your"), and your Employer, **Whataburger Restaurants LLC** ("Whataburger").

**2.    *End of Employment.*** Your employment with Whataburger will end on **March 3, 2023** ("Separation Date"). Regardless of whether you sign this Agreement, you will receive your final pay including accrued and unused vacation. All other compensation and benefits provided by or through the Employer will end on the Separation Date.

**3.    *Severance Pay & Benefits.*** As consideration for your promises in this Agreement, if you enter into and abide by this Agreement (e.g. return company property as detailed below) and continue to comply with all company policies and procedures after you sign this Agreement, you will receive the following:

- **Severance Payment: <u>$18,596.86</u>** minus applicable deductions and withholdings, by direct deposit or check made payable to you, less all normal payroll deductions and taxes, and inclusive of any and all bonus and incentives as of the Separation Date.

- **COBRA Payment:** Your Whataburger group medical, dental and vision benefits terminate as of the Separation Date.  In accordance with federal law ("COBRA"), you may, however, elect to continue your coverage in the group medical, dental and vision benefits under COBRA for generally up to eighteen (18) months from the Separation Date or, as otherwise provided for under COBRA rules and regulations.  As further consideration for entering into and not revoking this Agreement, you will receive the gross amount of <u>**$6,443.99**</u>, which is intended to help cover your approximate costs of COBRA continuation of your current group health coverage for <u>**10**</u> weeks.  This amount will be grossed up for applicable withholdings and will be paid by direct deposit or check made payable to you within the same time period and conditions for receipt provided in the Severance Pay subsection immediately above. In the event you elect continuation of coverage under COBRA you are responsible for paying your COBRA continuation coverage premiums.

- **Additional Consideration Payment:** As further consideration for entering into and not revoking this Agreement, you will receive the gross amount of <u>**$1,729.16,**</u> less all normal payroll deductions and taxes, and <u>inclusive</u> of any and all bonus and incentives as of the Separation Date.

- **Method and Timing of Payment:** The Severance Payment together with the COBRA Payment and Additional Consideration Payment amounts are collectively referred to in this Agreement as the "Severance Pay." The Severance Pay is payable within fourteen (14) business days after you sign this Agreement and after the revocation period has expired and you have not revoked this Agreement (described in section 22 below, titled: Time to Revoke), provided such payroll date is at least three (3) business days after such date. Whataburger will issue an IRS Form W-2 to you reflecting this payment. Unless you provide Whataburger with written notice of a bank account or address change or otherwise arrange with Whataburger to receive any Severance Pay payment personally, the Severance Pay payment will deposited directly to the bank account you currently have enrolled in direct deposit.

- **Mobile/Cell phone:** As additional consideration for your promises and agreements made by you in this Agreement, you may keep the Whataburger cell/mobile phone presently assigned to you, provided you promptly assume the contract for that phone and hereby release Whataburger from all claims in connection with that phone. If you do not sign this Agreement or otherwise revoke this Agreement, you must immediately return to Whataburger such cell/mobile phone.

You understand and agree that the Severance Pay and Benefits described in this Section 3 may be reduced and coordinated with other payments and benefits consistent with the terms of the Whataburger Limited Severance Program ("LSP"), which are incorporated into this Agreement. A copy of the LSP Summary Plan Description has been provided to you along with this Agreement.

You agree that the Severance Pay and Benefits are items of value being provided in exchange for your promises in this Agreement, and that you are not otherwise entitled to the Severance Pay and Benefits. You acknowledge and agree that you are not entitled to additional severance pay beyond the terms of this Agreement.

All other Whataburger benefits, including but not limited to (and to the extent you are a participant in) Whataburger paid accidental death and dismemberment insurance, short and long-term disability plans, matching gifts, deferred compensation, bonus, incentive, vacation accrual, holiday pay, 401(k) contributions, etc., cease on the Separation Date although you shall remain entitled to any vested 401(k) benefits in accordance with the terms of your respective plans.

**4.** *General Release.* You release Whataburger (plus its parents, subsidiaries, affiliates, predecessors, successors and any other entity related to it and all of its and their past and present directors, officers, employees and anyone else acting for any of them, and including trustees, fiduciaries and others affiliated with Whataburger's benefit plans – all together "Releasees") from all claims of any type to date, known or unknown, suspected or unsuspected, to the fullest extent allowed by law, including but not limited to anything to do with your employment or the end of your employment. This means you give up all claims and rights related to:

- pay, compensation, or benefits including bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave, profit sharing, or separation pay/benefits;

- compensatory, emotional or mental distress damages, punitive or liquidated damages, attorney fees, costs, interest or penalties;

- violation of express or implied employment contracts, covenants, promises or duties, intellectual property or other proprietary rights;

- unlawful or tortious conduct such as assault or battery; background check violations; defamation; detrimental reliance; fiduciary breach; fraud; indemnification; intentional or negligent infliction of emotional distress; interference with contractual or other legal rights; invasion of privacy; loss of consortium; misrepresentation; negligence (including negligent hiring, retention, or supervision); personal injury; promissory estoppel; public policy violation; retaliatory discharge; safety violations; posting or records-related violations; wrongful discharge; or other federal, state or local statutory or common law matters;

24-50976.180

- discrimination, harassment or retaliation based on age (including Age Discrimination in Employment Act or "ADEA" claims), benefit entitlement, citizenship, color, concerted activity, disability, ethnicity, gender, gender identity and expression, genetic information, immigration status, income source, jury duty, leave rights, military status, national origin, parental status, protected off-duty conduct, race, religion, retaliation, sexual orientation, union activity, veteran status, whistleblower activity (including Sarbanes-Oxley, Dodd-Frank and False Claims Act claims), other legally protected status or activity; or any allegation that payment under this Agreement was affected by any such discrimination, harassment or retaliation;

- claims under Title VII of the Civil Rights Act of 1964; the 1991 Civil Rights Act;  the Americans with Disabilities Act of 1990 and ADA Amendments Act of 2008; the Older Workers Benefit Protection Act; the Vocational Rehabilitation Act of 1973; 42 U.S.C. Section 1981, 1986 and 1988; the Employee Non-Discrimination Act; the Employee Retirement Income Security Act; the Equal Pay Act of 1963; the Immigration Reform and Control Act of 1986; Executive Orders 11246 and 1114;  the National Labor Relations Act, as amended; the Occupational Safety and Health Act; the Family and Medical Leave Act of 1993; the Worker Adjustment and Retraining Notification Act; Uniform Service Employment and Reemployment Rights Act; Fair Credit Reporting Act; and Federal Common Law; Texas Labor Code (including, without limitation, Chapters 21, 61  406, and 451), all as amended; and the common law of the State of Texas;

- any participation in any class or collective action against any Releasee; and

- claims for damages in an individual capacity or on behalf of another person or entity.

**5.** *Release Exclusions/Employee Protections.* The release provisions of this Agreement exclude: claims arising after you sign this Agreement; claims for breach of this Agreement; and claims that cannot be waived, such as for unemployment or worker's compensation benefits. Nothing in any part of this Agreement limits your rights to: (i) file a charge with any administrative agency, such as the U.S. Equal Employment Opportunity Commission, National Labor Relations Board or a state fair employment practices agency, or communicate directly with or provide information (including testimony) to an agency, or otherwise participate in an agency proceeding; (ii) testify accurately in administrative, legislative, or judicial proceeding pursuant to subpoena or court order to a written request from an administrative agency or legislature, or in court pursuant to subpoena or court order; or (iii) communicate with law enforcement or your attorney. You nonetheless give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings.

**6.** *Promise Not To Sue.* A "promise not to sue" means you promise not to sue any Releasee in court. This is different from the General Release above. Besides releasing claims covered by the General Release, you agree never to sue any Releasee for any reason covered by the General Release. Despite this Promise Not To Sue, however, you may file suit to enforce this Agreement or to challenge its validity under the ADEA. If you sue a Releasee in violation of this Agreement: (i) you shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against your suit; or alternatively (ii) Whataburger can require you to return all but $100.00 of the money and benefits provided to you under this Agreement. In that event, Whataburger shall be excused from any remaining obligations that exist solely because of this Agreement.

24-50976.181

**7.   *Whistleblowing.*** You agree that (i) no one has interfered with your ability to report within Whataburger possible violations of any law, and (ii) it is Whataburger's policy to encourage such reporting.

**8.   *Return of Employer Property.*** You have returned (or you will before receiving any separation pay/benefits) all Whataburger property you possessed or controlled, including any company vehicle, confidential information, laptop or other computer, other business equipment, credit cards, entry badges, keys, software or work product. Whataburger property includes all originals plus hard copies and electronic versions of all documents, such as e-mails, facsimiles, files, handbooks, letters, manuals, memoranda, power points, records and reports. You represent that you have not retained and will not retain any copies, duplicates, reproductions, computer files or excerpts thereof. All Whataburger property must be returned in good condition.

**9.   *Future Cooperation.*** You agree to make yourself available to assist Whataburger with transitioning your duties as well as with any investigations, legal claims, or other matters concerning anything related to your employment. You specifically agree to make yourself available to Whataburger upon reasonable notice for interviews and fact investigations, to testify without requiring service of a subpoena or other legal process, and to voluntarily provide Whataburger any employment-related documents you possess or control. "Cooperation" does not mean you must provide information favorable to Whataburger; it means only that you will upon Whataburger's request provide information you possess or control. If Whataburger requests your cooperation, it will reimburse you for reasonable time and expenses, provided you submit appropriate documentation.

**10. *Non-Disparagement.*** Except as provided in this Agreement's Release Exclusions/Employee Protections section, you promise not to do or say anything, verbally or in writing, directly or indirectly, that reflects negatively on or otherwise detrimentally affects any Releasee. However, nothing in this Section or elsewhere in this Agreement prevents you from discussing or disclosing information about alleged unlawful acts in the workplace, such as harassment, discrimination, or any other conduct that you have reason to believe is unlawful, or from assisting or communicating with others about employment terms or working conditions, or engaging in or refraining from concerted activities protected by the National Labor Relations Act.

**11. *Non-Admission.*** Neither Whataburger's offer reflected in this Agreement nor any payment under this Agreement are an admission that you have a viable claim against Whataburger or any other Releasee. This Agreement does not constitute an admission of any wrongdoing or violation of local, state, or federal law and each Releasee denies all liability.

**12. *Confidentiality of Severance Pay & Benefits.*** The amounts of Severance Pay & Benefits described in Section 3 of the Agreement are strictly confidential. You will not communicate those terms to any third party, whether verbally or in writing, by any means, including by social media such as Twitter and Facebook and the like. Except as required by law, you have not disclosed and will not disclose those amounts, to anyone except your immediate family members and your legal/financial advisors. Each of them is bound by this Confidentiality of Agreement provision, and a disclosure by any of them is a disclosure by you.

**13. *Other Post-Employment Restrictions.***

24-50976.182

- **Confidential Employer Information.** You will not disclose or use any Confidential Employer Information other than for Whataburger's benefit, except as required by law. Confidential Employer Information is not limited to trade secrets; it includes any non-public Employer information related to Whataburger's business (or the business of any entity/person with which Whataburger does business), such as budgets, customer/client lists, development, finances, forms, investigations, legal proceedings, management, marketing, operations, patents, pricing, research, resources, strategies, systems or technologies. You remain bound by any confidential information provisions of any prior agreement with Whataburger. You will inform Whataburger immediately if you receive a legal demand to disclose Confidential Employer Information, and you will not disclose such information while Whataburger obtains a judicial ruling regarding the demand. Notwithstanding the above, pursuant to the federal Defend Trade Secrets Act, you cannot be held criminally or civilly liable under any federal or state trade secret law for disclosing a trade secret if that disclosure is made: (i) in confidence to a federal, state or local government official, either directly or indirectly, or to any attorney, and for the sole purpose of reporting or investigating a suspected violation of law; or (ii) in a complaint or other document filed in a lawsuit or similar proceeding, provided that filing is made under seal. "Confidential Employer Information" does not include information regarding employment terms or working conditions [except to the extent that your specific job duties include maintaining the confidentiality of such information, e.g., an administrative assistant whose job includes compiling and maintaining private employee information].

- **Reasonable Restrictions.** You agree that the post-employment restrictions above are: reasonable in duration, geographic area and scope; and necessary to protect Whataburger's goodwill and other business interests. You further agree that breaching any of those covenants will cause Whataburger immediate irreparable harm and will entitle Whataburger to temporary and permanent injunctive relief.

**14.** *Applicable Law, Venue and Attorney's Fees.* This Agreement shall be interpreted under federal law if that law governs, and otherwise under the laws of the State of Texas, without regard to its choice of law provisions. The venue (location of any lawsuit) shall be solely in the state or federal courts located in Bexar County, Texas. To the extent permitted by law, in any legal proceeding involving any breach or claimed breach of any part of this Agreement, the prevailing party shall be entitled to recover their attorney's fees and costs, in addition to any other damages available at law or in equity.

**15.** *Dispute Resolution.* Any dispute regarding this Agreement will be decided through binding arbitration to take place: (i) in the state where you worked when you separated from employment and (ii) under the Whataburger Arbitration Agreement. Excluded from this Dispute Resolution requirement are pre-judgment actions for injunctive relief to enforce the terms of this Agreement. Both parties waive their right to a jury trial.

**16.** *Severability.* If a court (or arbitrator) finds any part of this Agreement unenforceable, that part shall be modified and the rest enforced. If a court (or arbitrator) finds any such part incapable of being modified, it shall be severed and the rest enforced.

**17.** *Enforcement.* If you breach this Agreement, Whataburger shall be entitled to preliminary and permanent injunctive relief plus attorneys' fees Whataburger incurs in enforcing this Agreement, unless

24-50976.183

otherwise expressly provided elsewhere in this Agreement, plus any additional relief determined to be appropriate. A decision not to enforce this Agreement does not waive future enforcement.

**18. *Medicare Secondary Payer.*** Nothing in this Agreement prevents either party from: (i) addressing any claim for reporting violations, penalties, or reimbursement liabilities under the Medicare Secondary Payer law or the Medicare, Medicaid, and SCHIP Extension Act of 2007; (ii) communicating information about this Agreement for compliance purposes to the Department of Health and Human Services or the Centers for Medicare & Medicaid Services; or (iii) otherwise complying with the above laws. In addition, you agree to indemnify and defend Whataburger against any loss or liability it incurs due to Medicare conditional payments related to the accident, injury, or illness underlying this settlement.

You have consulted with an attorney before signing this Agreement (or been advised by this Agreement of your right to do so) regarding any obligation of to either party to reimburse Medicare for conditional payments related to the accident, injury, or illness underlying this settlement. No mistake of law or fact by either party regarding any obligation to reimburse Medicare shall nullify and void this Agreement.

**19. *Group Separation Information.*** You received, together with this Agreement (attached as **Attachment A**), a list of group program eligibility factors, selection criteria and time limits, plus job titles and ages of all eligible/selected employees and non-eligible/non-selected employees in the same job classification or organizational unit.

**20. *Entire Agreement.*** This Agreement is the complete understanding between you and Whataburger, except that the Whataburger Arbitration Agreement, Whataburger Confidentiality, Conflict of Interest Disclosure and Non-Solicitation Agreement, and any other written confidentiality agreement, if applicable, shall survive the separation of your employment, shall remain in full force and effect, and are incorporated for all purposes in this Agreement. This Agreement otherwise replaces any other agreements, representations or promises, written or oral. You understand and agree that if any terms of this Agreements conflict with the Whataburger Confidentiality, Conflict of Interest Disclosure and Non-Solicitation Agreement, the terms of this Agreement will control.

This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement on the part of each of the undersigned. Execution of a facsimile or electronic copy shall have the same force and effect as execution of an original.

**21. *Time to Consider.*** You have **45 calendar days** to consider this Agreement after receiving it. Consistent with this review period, you must sign and return this Agreement to Whataburger no later than the close of business on the 46th calendar day after the day you receive it if you want to receive the severance pay/benefits listed at the beginning of this Agreement. You and Whataburger agree that any changes of any kind that either you or Whataburger agree to make to this Agreement after you receive the Agreement will not extend the amount of you have to consider the Agreement, including all material or non-material changes.

**22. *Time to Revoke.*** After you sign this Agreement, you have **7 days** to revoke it by sending **written notice** of revocation to Whataburger at the following e-mail address: LegalResponseTeam@wbhq.com, or sent by fax at (210) 476-6280 or by registered mail to the Office of General Counsel, Employment at 300 Concord Plaza Drive San Antonio, Texas, 78216 and **such revocation notice actually must be**

24-50976.184

**received within the 7 day revocation period.** For example, if you choose to mail your revocation, the revocation must be received by Whataburger within the revocation period. This Agreement is not effective or enforceable until the revocation period expires. If you revoke this Agreement, you will not receive the Severance Pay/Benefits described in this Agreement.

23. ***Other Representations.*** You agree that as of the date you signed this Agreement:

- You have received all pay, compensation, bonus, incentives, benefits, leave, time off, and/or expense reimbursements you are due to date, including for overtime or vacation;

- You have not suffered any on-the-job injury for which you have not already filed a claim, and the end of your employment is not related to any such injury;

- You do not have any pending lawsuits against Whataburger;

- You do not have any pending charges or claims or actions against Whataburger with any state, local, or federal agency;

- You were advised in writing, by getting a copy of this Agreement, to consult with an attorney before signing below;

- You have had the opportunity to negotiate this Agreement with Whataburger, and this Agreement shall not be construed for or against either party as a drafter of its terms;

- You have relied on your own informed judgment, or that of your attorney if any, in deciding whether to sign this Agreement;

- You understand all the provisions of this Agreement and understand the consequences of executing this Agreement; and

- You are signing this Agreement knowingly and voluntarily.

You and Whataburger execute this Separation and Release Agreement as of the day and year last written below.

**Employee**

By: ___ *Manuel Esquivel Jr* _____
**Manuel Esquivel Jr**
Dated: _3/15/2023 | 10:46 AM CDT_____

**Whataburger Restaurants LLC**

By: ___ *Peggy Rubenzer* _____
Peggy Rubenzer
SVP, Chief People Officer
Dated: ____3/15/2023 | 8:21 PM PDT_____

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MANUEL ESQUIVEL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, ON BEHALF OF THE WHATABURGER 401(K) SAVINGS PLAN; | § § § § § § | |
| *Plaintiff* | § § | |
| -vs- | § § | SA-24-CV-00310-XR |
| WHATABURGER RESTAURANTS LLC, THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS LLC, THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE, DOES NO. 1-20, WHOSE NAMES ARE CURRENTLY UNKNOWN; | § § § § § § § § § | |
| *Defendants* | § | |

**<u>ORDER</u>**

On this date, the Court considered Defendants' motion to dismiss (ECF No. 23), Plaintiff's Response in Opposition (ECF No. 25), and Defendants' Reply (ECF No. 27) along with the parties' oral arguments presented on August 1, 2024. After careful consideration the Court issues the following order.

**I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>**

This is a class action suit alleging breach of fiduciary duties under the Employee Retirement Income Security Act ("ERISA"). Manuel Esquivel, a former Whataburger employee, brings this suit on behalf of the Whataburger 401(k) Savings Plan f/k/a the Whataburger Profit Sharing and 401(k) Savings Plan ("Plan") and a proposed class ("Class") of participants and beneficiaries in the Plan against Whataburger Restaurants LLC, the Board of Directors of

Whataburger Restaurants LLC, the Whataburger 401(K) Savings Plan Administrative Committee and Does No. 1-20 (collectively, "Defendants") who manage the Plan.

Whataburger, a privately-owned fast food restaurant chain, is the Plan Sponsor. The Plan is a defined contribution plan (e.g., 401(k) plan) that Whataburger offers to its employees. ECF No. 1 at ¶ 9; ECF No. 23 at 1. As of December 31, 2022, the Plan had 9,796 participants with account balances and assets totaling approximately $215 million; according to Plaintiff, this amount places it in the top .9% of all U.S. defined contribution plans by total assets. ECF No. 1 at ¶ 3.

Throughout the time frame alleged in the complaint, the Plan operated as a participant-directed 401(k) plan. *Id*. at ¶ 17. Participants in the Plan directed the investment of their contributions into various investment options offered by the Plan, such as mutual funds and collective trust funds. *Id*. The Plan pays expenses from Plan assets, and the majority of administrative expenses are paid by participants as a reduction of investment income. *Id*. Defendants are alleged fiduciaries of the Plan and were responsible for maintaining the plan including selecting and monitoring prudent and diverse investment options for the participants. *See id.* at 4. Plaintiff filed this purported class action suit against Defendants as Plan administrators and Plan fiduciaries alleging breach of fiduciary duties—specifically, failing to appropriately monitor the Plan's investments that resulted in the retention of unsuitable investments in the Plan instead of prudent alternative investments that were readily available. ECF No. 1 at ¶ 5. Plaintiff contends that because of the alleged breached of fiduciary duties, the Plan suffered substantial losses. *Id*. at ¶ 89. Plaintiff brings the class action on behalf of the Plan under Sections 404, 409, and 502 of ERISA, 29 U.S.C. §§ 1104, 1109, and 1132. Plaintiff also seeks equitable, legal or remedial relief.

Defendants move to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of jurisdiction on the grounds that Plaintiff lacks standing to bring the claims and Rule 12(b)(6) for failure to state a claim upon which relief may be granted as to the substantive ERISA claims. ECF No. 23 at 1–2. Plaintiff filed a memorandum in opposition and the Defendants filed a reply brief. Additionally, the parties presented oral arguments to the Court on August 1, 2024. The motion to dismiss is now fully briefed and ripe for consideration.

## II. <u>LEGAL STANDARD</u>

Rule 12(b)(1) provides for dismissal of a claim based on lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam). In instances when a complaint could be dismissed for both lack of jurisdiction and failure to state a claim, "the court should dismiss only on the jurisdictional ground under [Rule] 12(b)(1), without reaching the question of failure to state a claim under [Rule] 12(b)(6)." *Crenshaw-Logal v. City of Abilene, Tex.* 436 Fed. Appx. 306, 308 (5th Cir. 2011) (quoting *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977). This practice precludes courts without jurisdiction "from prematurely dismissing a case with prejudice." *Ramming*, 281 F.3d at 161. The practice also prevents courts from issuing advisory opinions. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101 (1998).

"Article III standing is a jurisdictional prerequisite." *Steel*, 523 U.S. at 101; *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). "The standing doctrine defines and limits the role of the judiciary and is a threshold inquiry to adjudication." *McClure v. Ashcroft*, 335 U.S. 404, 408 (5th Cir.) (citing *Warth v. Seldin*, 422 U.S. 490, 517–18 (1975)). "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of

3

particular issues." *Warth*, 422 U.S. at 498. "[S]tanding to bring an action founded on ERISA is a 'jurisdictional' matter." *Cobb v. Central States*, 461 F.3d 632, 635 (5th Cir. 2006), and "is subject to challenge through Rule 12(b)(1)." *Lee v. Verizon Commc'ns, Inc*. 837 F.3d 523, 533 (5th Cir. 2016). "To establish Article III [constitutional] standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157–58 (2014) (cleaned up). If a plaintiff lacks standing to bring a claim, the court lacks subject matter jurisdiction over the claim, and dismissal under Rule 12(b)(1) is appropriate. *See Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

The burden of establishing subject matter jurisdiction is on the party—here, Esquivel— seeking to invoke it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). When deciding a motion to dismiss pursuant to Rule 12(b)(1), a court may evaluate: "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).

Motions to dismiss for lack of subject matter jurisdiction fall into two categories: facial attacks and factual attacks. *See Cell Sci. Sys. Corp. v. Louisiana Health Serv.*, 804 F. App'x 260, 263 (5th Cir. 2020). When adjudicating a "facial attack," a court is only required to look at the sufficiency of the allegations in the complaint, taken as true. *Id*. (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). However, if a defendant brings a "factual attack" on the complaint, a court may consider matters outside of the pleadings (affidavits, documents, testimony, etc.). *Id*.

4

Defendants here have presented a factual attack because the arguments it makes relating to standing rely on the documentary evidence attached to its briefing on the motion to dismiss. Accordingly, the Court may consider material outside of the pleadings. *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989).

## III. <u>ANALYSIS</u>

### A. Standing

The Defendants first move to dismiss Plaintiff's complaint on the grounds he lacks standing because he has released his claims against Whataburger, including those for "fiduciary breach" under ERISA. ECF No. 23 at 4–5. When his employment at Whataburger ended, Plaintiff signed a Separation and Release Agreement ("Agreement"). *See* ECF No. 23-2. In the Agreement, Plaintiff agreed to release Defendants and fiduciaries and others affiliated with the Plan from "all claims of any type" (known or unknown). *Id*. at 5. The Agreement also provided the Plaintiff gave up his rights to participate in any "class or collective action" or seek recovery "on behalf of another person or entity." *Id*. at 1–2.

Plaintiff contends that a release is ineffective to release breach of fiduciary claims brought on behalf of a plan under Section 502(a)(2) of ERISA. ECF No 25 at 9–10.

### 1. Release

The Defendants assert that the Plaintiff voluntarily and knowingly signed the Agreement in exchange for over $26,000. ECF No. 23 at 8. The Defendant does not dispute that assertion.

The release at issue provides in relevant parts:

> You release Whataburger . . . fiduciaries and others affiliated with Whataburger's benefit plans . . . from all claims . . . of any type to date, known or unknown . . . to the fullest extent allowed by law . . . including but not limited to anything to do with your employment . . . This means you give up all claims and rights related to: . . . compensatory . . . damages . . . or other federal . . . statutory . . . matters . . . claims under . . . the Employee Retirement Income Security Act . . . any

5

24-50976.411

participation in any class or collective action against any Releasee; and claims for damages in an individual capacity or on behalf of another person or entity.

ECF No. 23-2.

The language of ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), allows plan participants and beneficiaries to sue plan administrators for breach of fiduciary duty under § 409, 29 U.S.C. § 1109(a)[1]. The Supreme Court has determined that claims brought pursuant to § 502(a)(2) are available to parties seeking relief that benefits the plan as a whole as opposed to recovery for individual plan participants or beneficiaries. *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 140, 142 n.9, 105 S. Ct. 3085, 87 L.Ed.2d 96 (1985) (Plan participants or beneficiaries may bring claims for breach of fiduciary duties "in a representative capacity on behalf of the plan as a whole.").

Understanding that 502(a)(2) allows participants to bring breach of fiduciary duty claims on behalf of a plan, the Court now analyzes whether a release prevents a participant from doing so. The Second, Sixth, Ninth and Third Circuits have determined that agreements related to employment that have been signed by an individual participant do not preclude those participants from suing on behalf of a plan. *See Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999) (holding that the plaintiff's § 502(a)(2) claims on behalf of the plans were unaffected by her release); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632–33 (6th Cir. 2022) (addressing claims involving arbitration agreements and finding that "§ 502(a)(2) claims 'belong' to the Plan"); *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024) (holding employment agreements that contained

---

[1] ERISA authorizes participants to bring various "types of civil actions" to protect their interests. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 139 (1985). Section 502(a)(2) is one of three actions set forth in ERISA that a plaintiff can bring to protect their interests. Section 502(a)(1)(B) allows a participant to "recover benefits due under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) permits suits to "enjoin any act or practice which violates any provision of this subchapter [of ERISA] or the terms of the plan, or . . . to obtain other appropriate equitable relief . . . to redress such violations. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

provisions to prospectively waive the right to seek remedies on behalf of a retirement plan are unenforceable). Looking further, several courts have concluded the issue is clear-cut, determining, as a matter of law, an individual cannot release a plan's claims and accordingly a release cannot bar an individual from bringing claims on behalf of a plan under 502(a)(2). *See e.g.*, *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 210 (W.D. Mo. 2006) ("[T]he instant claims in this action are brought on behalf of the Plan pursuant to ERISA § 502(a)(2), not by ERISA plan participants seeking individual benefits. As a matter of law, a plan participant cannot release the Plan's claims."); *In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, 423 (N.D. Okla. 2005) ("[T]he Court notes that the claims here are brought on behalf of the Plan, and a participant cannot release the Plan's claims, as a matter of law.") (citation omitted); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 75 (S.D.N.Y. 2006) ("[N]umerous courts have held that under ERISA, individuals do not have the authority to release a . . . plan's right to recover for breaches of fiduciary duty.").

In a case on point, the Third Circuit held that participants in a retirement plan lack the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) ("The vast majority of courts have concluded that an individual release has no effect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2).").

In *In re Schering Plough Corp.*, a participant signed a release contained in a separation agreement after leaving her former employer, stating, "I release the Company (which includes Schering-Plough, and all of its subsidiaries, affiliates, officers, directors, and employees) from all claims and liabilities which I have or may have against it as of the date on which I sign this Agreement." *Id*. at 592 n.4. Despite the agreement, the participant brought a § 502(a)(2) claim on behalf of her retirement plan against her employer, and the employer argued the release barred the

7

claim. *Id*. at 595. The court held that even though the participant signed the release and the release was valid, "[§] 502(a)(2) claims are, by nature, plan claims." *Id*. Thus, because the participant's claims were brought under § 502(a)(2), they were "causes of action that belong[ed] to the Plan and [we]re based on duties owed to the Plan" and could not be affected by participant's release. *Id*. In the decision, the court noted, "[t]he vast majority of courts have concluded that an individual release has no affect on an individual's ability to bring a claim on behalf of an ERISA plan under § 502(a)(2)." *Id*.

But not all circuits agree. The Seventh Circuit found that a plaintiff released claims under ERISA § 502(a)(2) when he signed a general release that covered "any claim or entitlement to pay, benefits or damages arising under any federal law (including but not limited to . . . [ERISA])"). *Howell v. Motorola, Inc.*, 633 F.3d 552, 558 (7th Cir. 2011). There the court found that a valid release precludes § 502(a)(2) claims brought on behalf of a plan. *Id*. at 561. A D.C. district court similarly concluded that a plaintiff that signed a release of "any and all claims" alleging "violations of "any federal . . . statute and excluding "claims for vested benefits under employee benefits plans" had released her ERISA claims. *Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 107 (D.D.C. 2019). However, other courts have distinguished both *Howell* and *Stanley* because those courts did not specifically discuss whether the plaintiffs had the power to waive claims brought derivatively on behalf of the plan. *See Arnold v. Paredes*, 714 F. Supp. 3d 962, 973–974 (M.D. Tenn. Jan. 31, 2024) (distinguishing *Howell* and *Stanley*); *Garthwait v. Eversource Energy Co.*, 2022 WL 1657469, at *14 (D. Conn. May 25, 2022) (same).

This Court is unaware of a case wherein the Fifth Circuit squarely addresses whether a release bars claims brought on behalf of a plan. In *Langbecker v. Electronic Data Systems Corp.*, a district court certified a class in which close to 9,000 potential class members in a § 502(a)(2)

8

claim had signed broad releases. *Langbecker v. Electronic Data Systems Corp.*, 476 F.3d 299, 313 (5th Cir. 2007). On interlocutory appeal, a divided Fifth Circuit panel remanded the class certification to the district court for further consideration of the effect of the releases on the certification decision. *Id*. In its decision to remand, the panel did not hold that the releases foreclosed a § 502(a)(2) suit on behalf of a plan, noting that "holders of the releases could become a subclass if a class action is otherwise deemed appropriate." *Id*.

Defendants cite *Chaplin v. NationsCredit Corp.* as instructive on the issue. There the Fifth Circuit determined that a release can prevent a plaintiff from bringing a claim when seeking benefits on their own behalf. *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 376 (5th Cir. 2002) (finding a valid release bars claims that "fall within the subject matter of the release[].)" The plaintiff in *Chaplin*, having signed a release of claims, sued a former employer under ERISA seeking severance benefits. *Id*. at 370. The *Chaplin* court found the release covered the plaintiff's ERISA claim and as a result his claims were barred. *Id*. at 372. Although the *Chaplin* Court held that a release bars ERISA claims, the issue there involved a Plaintiff bringing a claim on his own behalf, not a claim brought on behalf of a plan as contemplated here.

In sum, the Plaintiff is bringing claims through a statutory mechanism that provides for derivative actions on behalf of the plan. The weight of authority suggests a release is ineffective from barring the claim. Finding very little authority suggesting otherwise, the Court concludes that Plaintiff has not released his right to bring the section 502(a)(2) claims at issue here.

## 2.  Promise Not to Sue

Defendants next assert that the Plaintiff lacks standing to bring the lawsuit because he entered into a Promise Not to Sue. ECF No. 23 at 9. The Defendants argue the Promise Not to Sue

9

is separate and distinct from the release and thus operates independently to bar Plaintiff's lawsuit. *Id*.

Plaintiff argues that, in the same manner as a general release, a covenant not to sue is ineffective against a Plan participant's right to bring suit in a representative capacity. ECF No. 25 at 13–14. The Plaintiff also contends that a covenant not to sue is ineffective as to unknown, future ERISA claims. *Id*. at 14–15.

The Court first examines whether the Promise Not to Sue should be examined independent of the release.

Starting with the language of the Promise Not to Sue itself, the covenant clearly states it is to be distinguished from the release. ECF No. 23-1 at 5 (stating the Promise Not to Sue "is different from the General Release Above."). Both the Plaintiff and the Defendants agree that the two provisions are separate. ECF No. 25 at 14 (plaintiff concedes "Defendants are correct in distinguishing the covenant not to sue from a release."). Despite the concession, the Plaintiff contends that the covenant is ineffective from preventing derivative claims from being brought on behalf of the plan. *Id*. In support of his position, Plaintiff cites *In re JDS Uniphase Corp. ERISA Litigation*. In that case, the release and the covenant not to sue were, by terms of the agreement, one and the same. The court there found the release did not bar an ERISA fiduciary duty claim on behalf of the plan but provided no analysis specific to the covenant not to sue. *In re JDS Uniphase Corp. ERISA Litigation*, 2006 WL 2597995, at *1–2 (N.D. Cal. Sept 11, 2006).

The Third Circuit, in *In re Schering Plough*, distinguished between a release and a covenant not to sue when it explained (without deciding), "even if a release does not bar an individual from bringing an ERISA § 502 claim on behalf of a plan, it could be argued that the covenant not to sue

bars [Plaintiff] from filing a lawsuit and serving as a lead plaintiff in an action against [defendant]." *In re Schering Plough*, 589 F.3d 585, 599 (3d. Cir. 2009).

There is very little authority on whether a covenant not to sue precludes a plaintiff from bringing claims on behalf of a plan. As noted above, the Third Circuit commented that an argument could be made that a covenant not to sue bars a plaintiff from bringing claims under 502(a)(2). *In re Schering Plough*, 589 F.3d 585, 599 (3d. Cir. 2009). A district court in the Northern District of Georgia barred a plaintiff from bringing 502(a)(2) claims on behalf of a plan reasoning in part that "at least two district courts in the Eleventh Circuit have found that covenants not to sue bar a plaintiff from bringing a section 502(a)(2) claim on behalf of employee stock bonus plan." *Wagner v. Stiefel Laboratories, Inc.*, 2015 WL 4557686, at *12 (N.D. Ga. June 18, 2015) (discussing *Stargel v. SunTrust Banks, Inc.*, 968 F.Supp.2d 1215, 1224 (N.D. Ga. August 6, 2013) (vacated and remanded on other grounds); *Finnerty v. Stiefel Laboratories, Inc.*, No. 09-CV-2187 (S.D. Fla. 2009)).

Looking first at the text of Section 502, the Court finds no statutory stricture on covenants not to sue. Unlike other Congressional Acts, which regulate release requirements[2], ERISA contains no such provisions. *Chaplin*, 307 F.3d 368, 376 ("ERISA does not regulate releases at all").

When Courts interpret a severance agreement releasing ERISA claims, federal common law applies. *See Chaplin*, 307 F.3d at 372[3]. "Settlement agreements and release agreements are contracts, and their construction is governed by legal principles applicable to contracts generally."

---

[2] The Older Workers Benefits Protection Act ("OWBPA"), 29 U.S.C. § 626(f) requires a release to contain certain elements for the release to be valid. *See Chaplin*, 307 F.3d at 375.

[3] "The relevant federal substantive law" includes "common-sense canons of contract interpretation" that are "derived from state law." *Morais v. Cent. Beverage Corp. Union Emps.' Suppl. Ret. Plan*, 167 F.3d 709, 712 (1st Cir. 1999) (construing settlement agreements involving the release of ERISA benefits). The Court will draw from Texas law to set forth the applicable general contract principles to interpret the covenant not to sue. The Court finds those general principles equally apply under Texas and federal common law, and that the Court would reach the same conclusion irrespective of which law governs.

11

*Stamps v. Univ. of Texas System*, 2024 WL 2194856, at *4 (W.D. Tex. May 15, 2024) (citations omitted). "In Texas, 'settlement agreements are governed by the law of contracts.'" *Sanders v. Unum Life Ins. Co. of America*, 2016 WL 1436695, at *1 (W.D. Tex. Apr. 11, 2016) (citing *Schriver v. Tex. Dep't of Transp.*, 293 S.W.3d 846, 851 (Tex. App. 2009)).

"In construing a contract . . . courts must examine and consider the entire writing and give effect to all provisions such that none are rendered meaningless." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002) (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Where the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain language as a matter of law." *Int'l Turbine Servs*, 278 F.3d at 497 (citing *DeWitt County Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999)).

The Promise Not to Sue plainly states "[a] 'promise not to sue' means you promise not to sue any Releasee in court. This is different from the General Release above. Besides releasing claims covered by the General Release, you agree never to sue any Releasee for any reason covered by the General Release." *Id*. The General Release covers: (1) all claims . . .  of any type to date, known or unknown; (2) claims under the Employee Retirement Income Security Act; (3) any participation in any class or collective action against any Releasee; and (4) claims for damages in an individual capacity or on behalf of another person or entity. *Id*.

Analyzing the Promise Not to Sue, the Court concludes it is clear and unambiguous. First, Plaintiff expressly *promised not to sue any Releasee*. Despite the Promise, Plaintiff has sued Whataburger, The Board of Directors of Whataburger Restaurants LLC and The Whataburger 401(K) Savings Plan Administrative Committee in this Court. The Agreement's definition of Releasee includes Whataburger and any other entity related to it including fiduciaries and others affiliated with Whataburger's benefit plans. ECF No. 23-2 at 5. Second, Plaintiff Promised Not to

Sue for any reason covered by the General Release ("*all claims of any type to date, known or unknown, suspected or unsuspected, to the fullest extent allowed by law, including but not limited to anything to do with your employment or the end of your employment*" including *claims under the Employment Retirement Income Security Act*. Third, Plaintiff Promised Not to Sue *or participate in any class or collective action against any Releasee or bring claims for damages on behalf of another person or entity*.

Based on the clear, unambiguous language of the Promise Not to Sue, the Court finds it encompasses the claims asserted in the Plaintiff's lawsuit. Therefore, Plaintiff's claims are barred by the Promise Not to Sue and may be dismissed under Federal Rule 12(b)(1).

Plaintiff brings one final attack on the Promise Not to Sue, arguing, it is ineffective as to unknown, future ERISA claims. Plaintiff cites a case wherein a court determined that "a waiver may release known claims, [but] it cannot release future unknown claims." *Sullivan v. AT&T, Inc.*, 2010 WL 905567, at *4 (N.D. Tex. March 12, 2010). The *Sullivan* court considered whether a plaintiff could bring a claim for an alleged misrepresentation that occurred "more than four years after he executed a waiver." In making its decision, the court referenced a Fourth Circuit holding that a waiver did not release claims arising from events that had not occurred when the release was executed. *Barron v. UNUM Life Ins. Co. of America*, 260 F.3d 310, 317 (4th Cir. 2001). Respectively, both courts concluded that waivers are invalid for future claims (i.e., claims for events after the release was executed).

Defendants here, on the other hand, argue that all the events the Plaintiff has sued on occurred before he signed the Promise Not to Sue—March 15, 2023. ECF. No. 27 at 6.[4] By

---

[4] Defendant summarized the Plaintiff's complained of conduct. ECF No. 27 at 6. *See e.g.*, ECF No. 1 at ¶¶ 46–56 (Janus Fund allegedly underperformed between 2020 and 2021; "Had the Committee met to appropriately review the Plan's investment results as of the end of the Fourth Quarter of 2021 . . . ."); *Id.* at ¶¶ 32–41 (Mainstay Fund allegedly

Plaintiff's own admission, the causes of action arose during his participation in the Plan and so must have occurred and existed prior to the effective date of the Promise Not to Sue.

The Court agrees that the events complained of occurred before the date the Plaintiff signed the Promise Not to Sue and therefore cannot be unknown, future claims.

While the Plan may have claims that could be brought against the Defendants, the Plaintiff has contracted away his right to bring those claims on behalf of the Plan.

## **CONCLUSION**

For the foregoing reasons, the Court concludes Plaintiff does not have standing to bring his claims against the Defendants.

Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED** as to the Rule 12(b)(1) motion and **DENIED** as **MOOT** as to the 12(b)(6) argument.

IT IS **ORDERED** that Plaintiff's claim against Defendants are **DISMISSED WITHOUT PREJUDICE** for lack of subject matter jurisdiction.

It is so **ORDERED**.

**SIGNED** this 8th day of November, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

underperformed in 2018 and 2019; "Had the Committee met to appropriately review the Plan's investment results at the end of the Fourth Quarter of 2019 . . . .").

14

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| MANUEL ESQUIVEL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSONS, ON BEHALF OF THE WHATABURGER 401(K) SAVINGS PLAN; | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | SA-24-CV-00310-XR |
| *Plaintiff* | | |
| -vs- | | |
| WHATABURGER RESTAURANTS LLC,  THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS LLC,  THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE,  DOES NO. 1-20, WHOSE NAMES ARE CURRENTLY UNKNOWN; | | |
| *Defendants* | | |

## FINAL JUDGMENT

On November 8, 2024, the Court entered an order granting Defendants' motion to dismiss and dismissing Plaintiff's claims for lack of subject matter jurisdiction. As nothing remains to resolve, the Court renders Final Judgment pursuant to Federal Rule of Civil Procedure 58.

**IT IS ORDERED** that the case is **CLOSED**.

It is so **ORDERED**.

**SIGNED** this 8th day of November, 2024.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| MANUEL ESQUIVEL, individually and as a representative of a class of similarly situated persons, on behalf of the WHATABURGER 401(K) SAVINGS PLAN (f/k/a the Whataburger Profit Sharing and 401(k) Savings Plan),<br><br>Plaintiff,<br><br>v.<br><br>WHATABURGER RESTAURANTS LLC, *et al.*,<br><br>Defendants. | Case No. 5:24-cv-310-XR |

## NOTICE OF APPEAL

Notice is hereby given that Plaintiff Manuel Esquivel, individually and as a

representative of a class of similarly situated persons, on behalf of the Whataburger 401(K)

Savings Plan (f/k/a the Whataburger Profit Sharing and 401(k) Savings Plan), appeals to the

United States Court of Appeals for the Fifth Circuit from the final judgment of the district court

entered in this action on November 8, 2024.  This appeal incorporates the Order Granting

Defendants' Motion to Dismiss (ECF No. 31) and Final Judgment (ECF No. 32).

Dated: December 9, 2024

Respectfully submitted,
/s/ *John S. "Jack" Edwards, Jr.*
John S. "Jack" Edwards, Jr.
Texas Bar No. 24040851
Thomas R. Ajamie
Texas Bar No. 00952400
Eric Chenoweth
Texas Bar No. 24006989
**AJAMIE LLP**
Pennzoil Place - South Tower
711 Louisiana, Suite 2150
Houston, TX 77002
Telephone: (713) 860-1600

1

Facsimile: (713) 860-1699
Email: jedwards@ajamie.com
       tajamie@ajamie.com
       echenoweth@ajamie.com

James C. Shah
Alec J. Berin
**MILLER SHAH LLP**
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jcshah@millershah.com
       ajberin@millershah.com

James E. Miller
Laurie Rubinow
**MILLER SHAH LLP**
65 Main Street
Chester, CT 06412
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: jemiller@millershah.com
       lrubinow@millershah.com

Don Bivens
**DON BIVENS PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, AZ 85254
Telephone: (602) 708-1450
Email: don@donbivens.com

*Attorneys for Plaintiff, the Plan,*
*and the Proposed Class*

24-50976.423

**CERTIFICATE OF SERVICE**

I, Jack Edwards, hereby certify that the foregoing document was electronically filed and

served on all counsel of record by operation of the Court's CM/ECF system on this date.

Dated: December 9, 2024          */s/ Jack S. "Jack" Edwards, Jr.*
                                       Jack S. "Jack" Edwards, Jr.

1

```
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE WESTERN DISTRICT OF TEXAS
 2                      SAN ANTONIO DIVISION

 3

   MANUEL ESQUIVEL,                  .
 4                                   .
                     PLAINTIFF,      .
 5         vs.                       . DOCKET NO. 5:24-CV-310-XR
                                     .
 6 WHATABURGER RESTAURANTS,          .
   LLC, ET AL,                       .
 7                                   .
                     DEFENDANT.      .
 8

 9

10         TRANSCRIPT OF MOTION TO DISMISS PROCEEDINGS
            BEFORE THE HONORABLE XAVIER RODRIGUEZ
11                UNITED STATES DISTRICT JUDGE
                        AUGUST 1, 2024
12

13

14

15

16 APPEARANCES:
   FOR THE PLAINTIFF:       ALEC J. BERIN, ESQUIRE
17                          MILLER SHAH LLP
                            1845 WALNUT STREET
18                          SUITE 806
                            PHILADELPHIA PA 19103
19

20                          JOHN S. EDWARDS, JR., ESQUIRE
                            AJAMIE LLP
21                          PENNZOIL PLACE - SOUTH TOWER
                            711 LOUISIANA, SUITE 2150
22                          HOUSTON TX 77002

23

24

25
```

```
 1
       FOR THE DEFENDANT:        JEREMY PL BLUMENFELD, ESQUIRE
 2                               MORGAN LEWIS & BOCKIUS LLP
                                 2222 MARKET STREET
 3                               PHILADELPHIA PA 19103

 4
                                 KERI L. ENGELMAN, ESQUIRE
 5                               MORGAN LEWIS & BOCKIUS LLP
                                 1701 MARKET STREET
 6                               PHILADELPHIA PA 19103

 7

 8                               LAUREN A. VALKENAAR, ESQUIRE
                                 VALKENAAR PLLC
 9                               7898 BROADWAY
                                 SUITE 120
10                               SAN ANTONIO TX 78209

11

12

13
       REPORTED BY:             GIGI SIMCOX, RMR, CRR
14                              OFFICIAL COURT REPORTER
                                UNITED STATES DISTRICT COURT
15                              SAN ANTONIO, TEXAS

16

17

18

19

20

21

22

23

24

25
```

```
 1        (San Antonio, Texas; August 1, 2024, at 10:30 a.m., in
 2   open court.)
 3            THE COURT:  And then lastly, 24 civil 310, Manuel
 4   Esquivel versus Whataburger Restaurants and others.
 5            Who do we have for the plaintiff?
 6            I'm sorry.  Let me let you get to the table.
 7            MR. BERIN:  Good morning, Your Honor.  Alec Berin for
 8   the plaintiff and the putative class.  And with me is my
 9   co-counsel, John Edwards.
10            THE COURT:  Thank you.
11            MR. BLUMENFELD:  Good morning, Your Honor.  Jeremy
12   Blumenfeld from Morgan Lewis on behalf of the Whataburger
13   defendants.
14            THE COURT:  Thank you.
15            MS. ENGELMAN:  Keri Engelman from Morgan Lewis as
16   well, also on behalf of defendants.
17            THE COURT:  Thank you.
18            MS. VALKENAAR:  Lauren Valkenaar, Valkenaar, PLLC.
19            THE COURT:  Thank you.
20            So we have a case here where Mr. Esquivel was a
21   former employee of Whataburger.  He invested into the
22   Whataburger 401(k) savings plan and 401(k) plan.  He was
23   discharged, I guess, or he quit, I'm not sure which.  It
24   really doesn't matter, but as part of that separation he
25   signed a release with Whataburger.
```

1    Defendants contend that that release forecloses his

2 ability to bring a suit against the plan.  The argument is

3 that the plan — and here I'm not certain how many different

4 investment opportunities employees had, 12, 15, something like

5 that — and that the argument is two of those 12, 15, whatever

6 it is, investment options were underperforming and the

7 Whataburger defendants violated ERISA provisions and their

8 fiduciary obligations by failing to take a look at that and

9 not retain them into the plan.

10    So let me — I guess unless the plaintiff wants to

11 make any other arguments at this point, do I have this sort of

12 right?

13    MR. BERIN:  Yes, Your Honor.  I think while we

14 disagree with the scope and effect of the release agreement

15 and certain representations about the claims, that's, I think,

16 a fair encapsulation of the status.

17    THE COURT:  So most of my questions are going to be

18 for the defendant and I'll let you guys have an opportunity to

19 respond.  But the vast majority of cases, minus one court that

20 I can find, have all — so I mean, I'm not making any rulings.

21 I'm talking out loud.

22    My first blush was on this, as I first got this case,

23 is, well, how can this plaintiff bring this lawsuit when he

24 signed a release.  How does he have standing.  And to my

25 surprise almost every other court that has considered this

1   issue, minus one, all says that they have standing.  So where
2   are all those other courts making the mistake?
3             MR. BLUMENFELD:  Thank you, Your Honor.  May I?
4             THE COURT:  That's fine.
5             MR. BLUMENFELD:  Thanks.
6             So Your Honor, to answer your question, I think
7   first, there are a few cases that have said that a plaintiff
8   in this circumstance lacks standing, and they are the *Stanley*
9   *versus George Washington University* case, *Howell versus*
10  *Motorola*, and there's one other case in the District of
11  Columbia that reached a similar conclusion.
12            And what I would say, Your Honor, is here it's not
13  just the release, but it's the release and the promise not to
14  sue, and the promise that this plaintiff is not entitled to
15  any other relief.  And the three of those things mean that
16  this plaintiff lacks standing to sue.  And what I would say --
17            THE COURT:  All those other courts saw that same
18  scenario in front of them.  Maybe not the covenant not to sue,
19  but from my understanding is they all said the release was
20  void under the ERISA provision, and so if it was void as to a
21  release, why isn't the covenant not to sue also void?
22            MR. BLUMENFELD:  Yeah.  So the courts that have
23  addressed this question have not said that a release is void.
24  What they have said, in some circumstances, is that the plan
25  needs to be the entity that releases the claim because the

1 claim is the plan's claims.

2 We're not saying that the plan here released the

3 claims. But this plaintiff, he has the right to bring the

4 lawsuit, and he waived that right in the release. He has the

5 right to bring this lawsuit and he promised that he wouldn't

6 in the covenant not to sue. And he has the right to bring

7 this lawsuit. He has the right to bring it in court. He has

8 the right, if he wanted to, tomorrow, to file a dismissal of

9 the case with prejudice.

10 That would be binding on him, but it wouldn't be

11 binding on other plan participants. The release is really no

12 different. The covenant not to sue is a promise not that the

13 plan won't do something, or that the plan is giving something

14 up, but that this plaintiff has.

15 THE COURT: Right.

16 MR. BLUMENFELD: *And the Schering-Plough* case, Your

17 Honor, which is one of the cases that they talk about in their

18 papers, it was a class certification case. And what the court

19 said in that case, to your point, was that the release didn't

20 bar these claims, but they sent it back to the district court

21 because the covenant not to sue, the Third Circuit thought was

22 different, and the agreement by the plaintiff in that case

23 that he wasn't going to accept any relief also was different

24 and might mean, in that circumstance, because it was class

25 certification, that that plaintiff wasn't an appropriate

1  representative, for the same reasons we are arguing here.

2          THE COURT:  Yeah.  And so you heard me earlier say I

3  always look for the path of least resistance.  Is there any

4  other plaintiff in this case, or is it just Mr. —

5          Is it Esquivel?

6          MR. BERIN:  Yes, Your Honor.

7          THE COURT:  Esquivel.  Do we have any other

8  plaintiffs yet?

9          MR. BLUMENFELD:  There are no other plaintiffs, Your

10 Honor.  And, you know, who knows why a person becomes a

11 plaintiff in a lawsuit, but the fact that there's only one

12 individual suggests to me that others don't have the same

13 concerns that he has about the operation of this plan.

14         THE COURT:  So why don't we take these points one by

15 one.  Let me hear from the plaintiffs.  I mean, why don't you

16 just get another plaintiff?  And if you're trying to get a

17 class certification, I mean, isn't this already sort of

18 indicative of the numerosity problem, if you can't find

19 somebody else?

20         MR. BERIN:  May I approach, Your Honor?

21         THE COURT:  Yes.

22         MR. BERIN:  I think just to the specific questions,

23 the why can't we get another plaintiff, you know, at this

24 juncture, it's Mr. Esquivel who wants to move forward with the

25 lawsuit.  It is entirely possible and often in these cases

1   when notice is sent out to a class we become in touch with

2   enormous amounts of people within a plan who share concerns

3   who reach out to us and who become involved in the case, you

4   know, so nothing would preclude an individual who became aware

5   of the lawsuit from stepping up and seeking to join either as

6   a plaintiff or in some other capacity.

7       The reality is with 401(k) claims like this, they are

8   often not apparent to a layperson.  They involve technical

9   matters in investing, and routinely plaintiffs or potential

10  plaintiffs in these cases don't have the financial

11  sophistication to understand the natures of the claims, and

12  so, you know, without speculating about whether there are

13  others out there who would share the concerns who would want

14  to bring a lawsuit, what I can represent here is that

15  Mr. Esquivel is the plaintiff who came forward and who is

16  interested.

17      And then, in terms of numerosity, I think that

18  analysis relates to the participants in the plan.  The class

19  would include plan participants and beneficiaries, and not

20  just those who become interested.  Typically in ERISA

21  derivative litigation like this, plans are certified under

22  rule — classes are certified under Rule 23(b)(1), which is

23  the mandatory class.  It's not an opt-out class, and so we

24  don't think there would be a numerosity issue.

25      So I think that addresses those two questions.  And I

1   have other responses on the law.

2          THE COURT:  Yeah.  Let's turn to — so most of these

3   cases seem to suggest that a release won't bar, but what about

4   this covenant not to sue?  Why does that — does that cause a

5   wrinkle, or not?

6          MR. BERIN:  You know, I will agree with Your Honor's

7   observation and Mr. Blumenfeld's that that is a circumstance

8   that is not addressed throughout the cases dealing with the

9   force and effect of an individual employment agreement on an

10  ERISA derivative claim.

11         What I would first submit is, and the defendants

12  criticize us for dealing with the covenant not to sue and the

13  release agreement together, but the language of the agreement

14  is apparently designed to be read together.  The covenant not

15  to sue refers directly to the general release as the claims

16  for which the signatory is agreeing not to sue.  And so to the

17  extent that the general release couldn't apply to a plan-wide

18  claim under ERISA, nor would, in our view, the covenant not to

19  sue under the plain language of the agreement.

20         We also think that the derivative principles that

21  have been applied routinely to arbitration agreements, to

22  other release agreements, would apply with full force to a

23  covenant not to sue.  This, as all of those courts recognize,

24  is a right to relief for the plan.

25         The parties that can bring this particular claim

1  under ERISA Section 502(a)(2) are participants and

2  beneficiaries, the Secretary of Labor, other fiduciaries, but

3  what that circumstance recognizes is that the claim belongs to

4  a plan, and for that reason, court after court has found that

5  an individual employment agreement doesn't impair a plan-wide

6  claim.  And so not only do we think this agreement on its face

7  wouldn't apply, both with respect to the release and covenant

8  not to sue to the plaintiff's claim on behalf of the plan, we

9  think all of those courts essentially get the analysis right.

10         And what I would note about the few cases that

11 Mr. Blumenfeld cited, the *Stanley versus George Washington*

12 *University* case, the *Motorola* case, in each of those cases the

13 plaintiff characterized his or her claim differently.  They

14 characterized it as a claim for benefits under ERISA Section

15 502(a)(1), which is an individual claim for a vested benefit

16 in a plan.  And while — and the defendants point this out in

17 their reply brief — while it is the case that ultimately the

18 claim brought in the *George Washington* case was stylized as a

19 claim on behalf of the plan, the argument that the court dealt

20 with was under the 502(a)(1) vested benefit subsection of that

21 portion of the statute.

22         I think the reason that is, is, and we point this out

23 in our opposition, that court was dealing with an argument

24 under the vested benefits portion because the specific

25 agreement in that case accepted the vested benefit claim from

1 the release. And so the plaintiffs seem to pursue strategy to

2 get within that exception to the release agreement, and so

3 neither the *George Washington* court nor the *Motorola* court

4 address whether an individual can release a plan-wide claim.

5       THE COURT: Help me understand. In this case, when

6 Esquivel signed that release, was the 401(k) savings plan part

7 of the released parties?

8       MR. BERIN: So the plan wasn't. That's because he's

9 a participant in the plan. And the plan, in essence, is the

10 party in interest. The releasees include the company, and the

11 company officers, and employees. And so those would

12 ostensibly include the fiduciary defendants in this case.

13       Not withstanding that, in all of these cases, the

14 circuit cases, in the Sixth Circuit, Second Circuit, Ninth

15 Circuit, that we cite, and I think, you know, under a fair

16 reading of (inaudible) those courts recognize the derivative

17 claims don't exist, all the release agreements were virtually

18 the same in respect of the released parties, but it's the

19 plan's claim, and so the analysis is relative to Mr. Esquivel,

20 I think, and not the parties that are released, and that this

21 claim is not subject to that release agreement nor the

22 covenant not to sue under the plain terms.

23       The promise not to sue, and I just want to state

24 clearly, says, "You agree never to sue any releasee for any

25 reason covered by the general release," and so we think for

1  the same reasons the general release couldn't impair

2  Mr. Esquivel's plan-wide claim.  The covenant not to sue falls

3  into the exact same category.

4         THE COURT:  So help me understand this.  So if he

5  signed that release and the release includes the plan for all

6  ostensible purposes, I mean, I'm still stuck on standing.  So

7  this case goes forward, let's just talk, assuming arguendo,

8  this case goes forward, what relief would he be able to be

9  granted?  That's the part I'm having trouble with.  How could

10 he be a viable claimant and much less the class

11 representative?

12        MR. BERIN:  Sure.  And I just want to make sure I

13 understand the first part of your question.  The release I

14 don't think deals with the plan.  I think it deals with the

15 defendant parties.  The plan is the party is who the claim

16 belongs to, and Mr. Esquivel.  So in effect the plan is the

17 plaintiff in the case.  When there's a recovery under —

18        THE COURT:  The plan is a plaintiff and a defendant?

19        MR. BERIN:  Not a defendant, Your Honor.

20        The defendants are just the company that sponsors the

21 plan and the managers it appointed of the plan.  He's not

22 suing the plan.  He's suing for the plan, and so that is sort

23 of the derivative hook here.

24        What typically happens under 502(a)(2), and this is

25 in the plain language of that section of ERISA, when there's a

1 recovery, the recovery doesn't go to Mr. Esquivel.  It goes to

2 the plan.  It then is disbursed according to a plan of

3 allocation oftentimes, or according to the plan's balances and

4 accounts.  So I think the reason that all of those courts

5 recognize that the derivative component doesn't impair the

6 ability to press the plan's claim, is that when there's a

7 recovery in these cases the money goes to the plan.

8 　　　　　Mr. Esquivel would get eventually a pro rata share

9 according to his entitlement under the plan to benefits and

10 according to his investments in the plan.  But the reason I

11 think those courts have no problem with the situation is that

12 the money doesn't go to Mr. Esquivel if he wins here, it goes

13 to the plan.

14 　　　　　THE COURT:  And your arguments and the complaint are

15 that only two — these are questions — you are arguing only

16 two of the investment opportunities were, for lack of a better

17 word, defective?

18 　　　　　MR. BERIN:  So we do challenge two investments.  I do

19 just want to clarify for the record because there seems to be

20 a lack of clarity in the papers about how much of the plan

21 those two investments represent.  It was two of ten.  And so

22 the 14 and 19 numbers that are thrown out there are

23 investments that were made by the plan at any point in the

24 last six plus years.

25 　　　　　So at the beginning of the class period here there

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served via the

Court's ECF filing system in compliance with Federal Rules of Appellate

Procedure 25(b) and 25(c), on March 24, 2025, on all registered counsel of record,

and has been transmitted to the Clerk of the Court.

Dated: March 24, 2025                     /s/ *James E. Miller*

                                          JAMES E. MILLER

                                          *Counsel for Plaintiff-Appellant*