# No. 24-50976

# In the United States Court of Appeals
## FOR THE FIFTH CIRCUIT

MANUEL ESQUIVEL, Individually and as a representative of a class of similarly situated person, on behalf of the Whataburger 401(k) Savings Plan formerly known as the Whataburger Profit Sharing and 401(k) Savings Plan,

*Plaintiff - Appellant*

v.

WHATABURGER RESTAURANTS, L.L.C.; THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS, L.L.C.; THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE, formerly known as The Whataburger Profit Sharing and 401(k) Savings Plan Administrative Committee; DOES No.1-20, Whose Names Are Currently Unknown,

*Defendants - Appellees*

On Appeal from the United States District Court for the Western District of Texas
No. 24-cv-310, Honorable Xavier Rodriguez

## BRIEF OF APPELLEES

LAUREN A. VALKENAAR
NATSUMI J. COVEY
VALKENAAR PLLC
7898 Broadway, Suite 120
San Antonio, TX 78209
(210) 239-0321

JEREMY P. BLUMENFELD
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5258

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5893

*Counsel for Appellees Whataburger Restaurants, LLC, the Board of Directors of Whataburger Restaurants LLC, and the Whataburger 401(k) Savings Plan Administrative Committee*

## CERTIFICATE OF INTERESTED PERSONS

### No. 24-50976, *Esquivel v. Whataburger*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.     Whataburger Restaurants, LLC, Defendant and Appellee. Whataburger Restaurants LLC is 100% owned by Whatabrands LLC. Whatabrands LLC is 100% owned by Sunrise Group Holdings, LLC. No publicly held corporation owns 10% or more of Whataburger Restaurants, LLC's stock.

2.     Board of Directors of Whataburger Restaurants LLC,[1] Defendant and Appellee

3.     Whataburger 401(k) Savings Plan Administrative Committee, Defendant and Appellee

4.     Jeremy P. Blumenfeld, Attorney for Defendants and Appellees

5.     Michael E. Kenneally, Attorney for Defendants and Appellees

6.     Keri L. Engelman, Attorney for Defendants

7.     Samuel D. Block, Attorney for Defendants

8.     Christopher B. Dempsey, Attorney for Defendants

---

[1] This entity does not exist.

i

9.      Lauren A. Valkenaar, Attorney for Defendants and Appellees

10.     Dylan R. Fedderman, Attorney for Defendants

11.     Natsumi J. Covey, Attorney for Defendants and Appellees

12.     Manuel Esquivel, Plaintiff and Appellant

13.     James E. Miller, Attorney for Plaintiff and Appellant

14.     James C. Shah, Attorney for Plaintiff and Appellant

15.     Alec J. Berin, Attorney for Plaintiff and Appellant

16.     John S. Edwards, Jr., Attorney for Plaintiff

Dated:  April 23, 2025                    s/ Jeremy P. Blumenfeld
                                          JEREMY P. BLUMENFELD

                                          *Counsel for Whataburger Restaurants,
                                          LLC, the Board of Directors of
                                          Whataburger Restaurants LLC, and the
                                          Whataburger 401(k) Savings Plan Ad-
                                          ministrative Committee*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees respectfully request oral argument because they believe it could aid the Court's decision.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................i

STATEMENT REGARDING ORAL ARGUMENT ........................................... iii

TABLE OF AUTHORITIES ....................................................................................v

INTRODUCTION ....................................................................................................1

STATEMENT OF JURISDICTION........................................................................4

ISSUE PRESENTED ...............................................................................................4

STATEMENT OF THE CASE................................................................................4

I.    Statutory background.....................................................................................4

II.   Factual background........................................................................................6

III.  Procedural background ...............................................................................11

SUMMARY OF ARGUMENT .............................................................................13

ARGUMENT ..........................................................................................................15

I.    Esquivel's Promise Not To Sue unambiguously applies to this action........16

II.   ERISA does not preclude enforcing Esquivel's contractual promises.........24

     A.    Although the Court need not reach the issue, ERISA does not preclude releases of fiduciary breach claims. ...................................25

     B.    In all events, the district court correctly ruled that the Promise Not To Sue is enforceable regardless of the General Release's enforceability.....................................................................................30

III.  The district court properly dismissed the entire action. ..............................32

CONCLUSION......................................................................................................35

CERTIFICATE OF SERVICE .............................................................................36

CERTIFICATE OF COMPLIANCE.....................................................................37

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ............................................................................................4

*Bowles v. Reade*,
198 F.3d 752 (9th Cir. 1999) ...........................................................26, 27, 28, 30

*Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. SBC, L.L.C.*,
93 F.4th 870 (5th Cir. 2024) ...........................................................................22

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024) ...........................................................................35

*Chaplin v. NationsCredit Corp.*,
307 F.3d 368 (5th Cir. 2002) ......................................................................25, 32

*Conkright v. Frommert*,
559 U.S. 506 (2010) ...............................................................................4, 5, 19

*Cunningham v. Cornell Univ.*,
— U.S. —, 2025 WL 1128943 (2025) ...............................................................31

*FDIC v. Mijalis*,
15 F.3d 1314 (5th Cir. 1994) ............................................................................33

*Fernandez v. Franklin Res., Inc.*,
No. 17-cv-6409, 2018 WL 1697089 (N.D. Cal. Apr. 6, 2018) ....................21, 22

*Foremost Cnty. Mut. Ins. Co. v. Home Indem. Co.*,
897 F.2d 754 (5th Cir. 1990) ............................................................................17

*Green Valley Special Util. Dist. v. City of Schertz*,
969 F.3d 460 (5th Cir. 2020) ............................................................................15

*Harrison v. Envision Mgmt. Holding, Inc. Bd. of Dirs.*,
59 F.4th 1090 (10th Cir. 2023) .........................................................................29

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Hawkins v. Cintas Corp.*,
   32 F.4th 625 (6th Cir. 2022) ...................................................................................29

*Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v.*
*Wilmington Tr. NA*,
   72 F.4th 499 (3d Cir. 2023) ................................................................................35

*Howell v. Motorola, Inc.*,
   633 F.3d 552 (7th Cir. 2011) ...........................................................14, 26, 28, 32

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)....................................................................................27, 29

*Hughes v. Nw. Univ.*,
   595 U.S. 170 (2022)..............................................................................................6

*In re JDS Uniphase Corp. ERISA Litig.*,
   No. 03-cv-4743, 2006 WL 2597995 (N.D. Cal. Sept. 11, 2006) .......................30

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009) ..................................................................28, 31, 32

*Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*,
   278 F.3d 494 (5th Cir. 2002) ..............................................................................22

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008)..........................................................................26, 27, 28, 32

*Leavitt v. Nw. Bell Tel. Co.*,
   921 F.2d 160 (8th Cir. 1990) ........................................................................26, 32

*Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*,
   174 F.3d 653 (5th Cir. 1999) ..............................................................................23

*Munro v. Univ. of S. Cal.*,
   896 F.3d 1088 (9th Cir. 2018) ............................................................................29

*Nat'l Am. Ins. Co. v. Melancon*,
   No. 98-cv-1273, 1999 WL 600372 (E.D. La. Aug. 9, 1999) .............................17

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Procter & Gamble Co. v. Amway Corp.*,
  376 F.3d 496 (5th Cir. 2004) ...............................................................34

*Schnell v. State Farm Lloyds*,
  98 F.4th 150 (5th Cir. 2024) ...............................................................33

*Stanley v. George Washington Univ.*,
  394 F. Supp. 3d 97 (D.D.C. 2019).......................................................15

*Tanzin v. Tanvir*,
  592 U.S. 43 (2020)...............................................................................25

*Thole v. U.S. Bank N.A.*,
  590 U.S. 538 (2020)..................................................................6, 29, 31

*Tibble v. Edison Int'l*,
  575 U.S. 523 (2015)..............................................................................35

*Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*,
  220 F.3d 427 (5th Cir. 2000) ...............................................................23

*Van Loon v. Dep't of the Treasury*,
  122 F.4th 549 (5th Cir. 2024)...............................................................25

*Woods-Tucker Leasing Corp. of Ga. v. Kellum*,
  641 F.2d 210 (5th Cir. 1981) ...............................................................17

**STATUTES**

28 U.S.C. § 1291.........................................................................................4

28 U.S.C. § 1331.........................................................................................4

Age Discrimination in Employment Act
  29 U.S.C. § 621 *et seq.* ......................................................9, 10, 17, 21

# TABLE OF AUTHORITIES
## (continued)

Page(s)

Employee Retirement Income Security Act
    29 U.S.C. § 1002...........................................................................................*passim*
    29 U.S.C. § 1102...............................................................................................5
    29 U.S.C. § 1104............................................................................................4, 5
    29 U.S.C. § 1105...............................................................................................4
    29 U.S.C. § 1109............................................................................................4, 5
    29 U.S.C. § 1110.............................................................................................32
    29 U.S.C. § 1132...........................................................................................*passim*

## RULES

FED. R. APP. P. 4......................................................................................................4

FED. R. CIV. P. 23 ..................................................................................................31

## OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (12th ed. 2024)
    *Reason*.............................................................................................................20
    *Cover*..............................................................................................................20

OXFORD ENGLISH DICTIONARY (online ed. 2025)....................................................20

## INTRODUCTION

Plaintiff Manuel Esquivel does not dispute that at the end of his employment at Whataburger Restaurants, he signed a Separation and Release Agreement. ROA.179-85 ("Separation Agreement"). In doing so, he released Whataburger from all claims related to his employment—including "claims under . . . the Employee Retirement Income Security Act." ROA.181. Separate from this "General Release," Esquivel made a "Promise Not To Sue." *Id.* As the Separation Agreement explained, this Promise Not To Sue was "different from the General Release." *Id.* Through this second provision, Esquivel "promise[d] not to sue any Releasee in court . . . for any reason covered by the General Release." *Id.* In exchange, Whataburger agreed to pay Esquivel $26,770.01. ROA.179.

Despite receiving this compensation to release his claims and not sue his former employer, Esquivel filed this ERISA class action lawsuit. He accuses Defendants of failing prudently monitor the investment options in his retirement plan—based on sparse allegations that two (out of nineteen) of the plan's investment options performed less well than a few cherry-picked alternative investments during certain stretches of time while he was employed. Esquivel's substantive allegations under ERISA fall far short under the governing pleading standards. But the district court never needed to reach that problem because of the Separation Agreement. Through that contract, Esquivel has already settled any right he might have had to

pursue this relief.  So he can gain nothing from this lawsuit and lacks Article III standing to bring it.

On appeal, Esquivel makes three arguments.  None withstands scrutiny.

*First*, he argues that ERISA does not permit him to release his individual claims through the General Release and that the Promise Not To Sue covers only claims validly released in the General Release.  The district court rightly rejected this argument.  Even if Esquivel is correct about the alleged invalidity of the General Release, the unambiguous contract language refutes his reading of the Promise Not To Sue.  Contrary to Esquivel's characterization, the Promise Not To Sue is not limited to "claims" covered by the General Release.  It instead bars Esquivel from "su[ing] any Releasee for any *reason* covered by the General Release."  ROA.181 (emphasis added).  The General Release covers the reasons for this lawsuit, by calling out litigation based on employee benefits, benefit entitlements, fiduciary breach, and federal statutory matters—in addition to alleged violations of ERISA—during Esquivel's employment.  He promised not to bring this suit, even assuming that ERISA prevented him from "releasing" certain claims.  His contrary interpretation improperly collapses the distinction between the General Release and Promise Not To Sue.

*Second*, Esquivel argues that a covenant not to file ERISA lawsuits is unenforceable because his claims belong to the Plan.  Unsurprisingly, he cites no

2

provision of ERISA that supports that argument. Nor does he cite any case that supports that argument, much less any case binding on this Court. A moment's reflection shows that his argument must be wrong. If he were right, ERISA claims and ERISA lawsuits could never be settled. The plaintiff would always be able to attack the settlement agreement as invalid and refile the suit. If Congress had intended that absurd result, it would have said so—particularly given federal law's longstanding public policy in favor of the voluntary settlement of claims.

*Third*, Esquivel criticizes the district court for supposedly overlooking claims that postdate his Separation Agreement. This argument is both forfeited and baseless. As the district court noted, Esquivel identified no allegations in his Complaint giving rise to post-Separation Agreement claims, and there are none. Nor did he seek leave to amend to add any. That makes sense, because he attacks Defendants for not removing two investments that supposedly should have been removed from the Plan no later than the fourth quarter of 2019 or 2021 respectively—before his employment ended and before he signed the Separation Agreement in 2023.

The district court properly held Esquivel to his promise not to bring this type of lawsuit. He should have held himself to that promise, especially after the significant monetary payment he received in exchange. He has no valid criticism of the decision below, and this Court should affirm.

3

## STATEMENT OF JURISDICTION

The district court had statutory subject matter jurisdiction under 28 U.S.C. § 1331 because the complaint asserted claims under ERISA, including 29 U.S.C. § 1104, § 1105, § 1109, and § 1132.  ROA.16, ROA.39-42; *see also* 29 U.S.C. § 1132(e)(1).  This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court entered a final judgment dismissing all claims on November 8, 2024, and Esquivel filed a timely notice of appeal on December 9, 2024.  ROA.421-22; FED. R. APP. P. 4(a)(1)(A).

As this brief explains, however, the district court correctly determined that Esquivel lacks Article III standing to bring this action.  He has no legally cognizable injury, let alone one that can be redressed by judicial relief, because he has already promised not to bring suit and not to seek or accept any recovery in this action.

## ISSUE PRESENTED

Whether the district court properly dismissed this action based on Esquivel's obligations under his Separation Agreement.

## STATEMENT OF THE CASE

### I.    Statutory background

ERISA is "a comprehensive statute for the regulation of employee benefit plans."  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004).  The statute reflects a "careful balancing" of the interests of employers and employees.  *Conkright v.*

*Frommert*, 559 U.S. 506, 517 (2010) (citation omitted). Congress intended to help employees receive the benefits they earned. *Id.* at 516. But Congress did not obligate employers to offer employee benefits at all. *Id.* So Congress took care to avoid creating a regime "so complex that administrative costs, or litigation expenses, unduly discourage employers from offering ERISA plans in the first place." *Id.* at 517 (citation and brackets omitted).

ERISA plans are managed and administered by plan fiduciaries, who are subject to various statutory duties. 29 U.S.C. §§ 1002(21)(A), 1102(a), 1104. Among an ERISA fiduciary's duties is the duty of prudence: the duty to exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Fiduciaries are personally liable if they breach their fiduciary duties and must make the ERISA plan whole for any losses they cause to it. 29 U.S.C. § 1109(a).

A fiduciary's obligations under ERISA are enforceable through rights of action created in 29 U.S.C. § 1132(a). Individual plan participants and beneficiaries may bring suit for breach of fiduciary duty under 29 U.S.C. § 1132(a)(2) and (3). Subsection (a)(2) permits plaintiffs to seek appropriate relief under 29 U.S.C. § 1109(a). And subsection (a)(3) permits plaintiffs to pursue injunctions and other appropriate equitable relief in response to ERISA violations. Plan participants and

beneficiaries are not the only potential plaintiffs who can assert these rights of action. Plan fiduciaries also can sue under both subsections. 29 U.S.C. § 1132(a)(2)-(3). And the Secretary of Labor can sue under subsection (a)(2).

## II. Factual background

Whataburger is a quick-service restaurant chain headquartered in San Antonio, Texas. ROA.15 (Compl. ¶ 9). Among the benefits that Whataburger offers its employees is sponsoring the Whataburger Profit Sharing and 401(k) Savings Plan. ROA.12, ROA.15 (Compl. ¶¶ 1, 9); ROA.187. The Plan is a defined contribution plan, which helps Plan participants save for retirement by establishing individual accounts. ROA.13 (Compl. ¶ 3); 29 U.S.C. § 1002(34).

As with any traditional "401(k) plan, the retirees' benefits are typically tied to the value of their accounts." *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 540 (2020). Plan participants choose how to invest the money in their accounts by choosing from a menu of investment options selected by plan fiduciaries. *See, e.g.*, *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022). The ultimate amount of retirement money available to participants turns on the contributions made to their accounts (including matching contributions from the employer) and the performance of their investments. ROA.17 (Compl. ¶ 17). Whataburger offers matching contributions to employees who choose to participate in the Plan. ROA.17 (Compl. ¶ 17).

6

The Plan enables participants to choose from a diverse menu of investment options, which include mutual funds and collective trusts. ROA.17 (Compl. ¶ 17). Throughout the putative class period (March 27, 2018 to the present), the Plan has offered a total of nineteen different investment options, which have varied year by year as the Plan added or removed funds. ROA.189, ROA.192, ROA.195, ROA.198, ROA.201. These nineteen options have included mutual funds that cover different asset classes, investment styles (*e.g.*, actively managed funds and passively managed "index" funds like S&P 500 index funds), and risk-reward profiles (*e.g.*, growth, developing markets, bonds, etc.), as well as a suite of target date funds. ROA.189, ROA.192, ROA.195, ROA.198, ROA.201.

Plaintiff Manuel Esquivel is a former employee of Whataburger. ROA.14 (Compl. ¶ 8). He describes himself as a "former participant" in the Plan. ROA.14 (Compl. ¶ 8). Esquivel alleges that the fiduciaries' process was imprudent because just two of the Plan's nineteen funds supposedly "underperformed" at times. ROA.23-34 (Compl. ¶¶ 31-58). Although Esquivel's allegations of the supposed underperformance are thin, he claims that the MainStay Winslow Large Cap Growth Fund Class R1 was underperforming through the fourth quarter of 2018 before improving in 2019, 2020, and 2021. ROA.23-27 (Compl. ¶¶ 31-38, 42). Esquivel contends that the Janus Henderson Triton Fund Class T was underperforming in 2020 and 2021. ROA.29-32 (Compl. ¶¶ 47-55). The complaint alleges that Esquivel

7

invested in fourteen different Plan investment options, including the two he challenges. ROA.14-15 (Compl. ¶ 8). He does not allege *when* he held those two specific investments. *Id.* But he alleges that the MainStay Winslow Large Cap Growth Fund Class R1 option should have been removed no later than the fourth quarter of 2019. ROA.23-27 (Compl. ¶¶ 32-41). And he alleges that the Janus Henderson Triton Fund Class T option should have been removed no later than the fourth quarter of 2021. ROA.29-32 (Compl. ¶¶ 47-55).

On March 15, 2023, Esquivel signed the Separation Agreement. ROA.185. The Separation Agreement reflected that his employment with Whataburger ended on March 3, 2023. ROA.179. As consideration for entering the Separation Agreement, Esquivel received a severance payment of $18,596.86, a COBRA payment of $6,443.99 to continue his group help coverage for ten weeks, and additional consideration of $1,729.16—for a total of $26,770.01. ROA.179. In exchange, Esquivel made three promises relevant here.

First, Esquivel released a range of claims against Whataburger and other released entities and individuals in the General Release:

> **4. *General Release.*** You release Whataburger (plus its parents, subsidiaries, affiliates, predecessors, successors and any other entity related to it and all of its and their past and present directors, officers, employees and anyone else acting for any of them, and including trustees, fiduciaries and others affiliated with Whataburger's benefit plans – all together "Releasees") from all claims of any type to date, known or unknown, suspected or unsuspected, to the fullest extent allowed by law, including but not limited to anything to do with your employment

or the end of your employment.  This means you give up all claims and rights related to:

- pay, compensation, or benefits including bonuses, commissions, equity, expenses, incentives, insurance, paid/unpaid leave, profit sharing, or separation pay/benefits;

- compensatory, emotional or mental distress damages, punitive or liquidated damages, attorney fees, costs, interest or penalties;

- violation of express or implied employment contracts, covenants, promises or duties, intellectual property or other proprietary rights;

- unlawful or tortious conduct such as assault or battery; background check violations; defamation; detrimental reliance; fiduciary breach; fraud; indemnification; intentional or negligent infliction of emotional distress; interference with contractual or other legal rights; invasion of privacy; loss of consortium; misrepresentation; negligence (including negligent hiring, retention, or supervision); personal injury; promissory estoppel; public policy violation; retaliatory discharge; safety violations; posting or records-related violations; wrongful discharge; or other federal, state or local statutory or common law matters;

- discrimination, harassment or retaliation based on age (including Age Discrimination in Employment Act or "ADEA" claims), benefit entitlement, citizenship, color, concerted activity, disability, ethnicity, gender, gender identity and expression, genetic information, immigration status, income source, jury duty, leave rights, military status, national origin, parental status, protected off-duty conduct, race, religion, retaliation, sexual orientation, union activity, veteran status, whistleblower activity (including Sarbanes-Oxley, Dodd-Frank and False Claims Act claims), other legally protected status or activity; or any allegation that payment under this Agreement was affected by any such discrimination, harassment or retaliation;

- claims under Title VII of the Civil Rights Act of 1964; the 1991 Civil Rights Act; the Americans with Disabilities Act of 1990

and ADA Amendments Act of 2008; the Older Workers Benefit Protection Act; the Vocational Rehabilitation Act of 1973; 42 U.S.C. Section 1981, 1986 and 1988; the Genetic Non-Discrimination Act; the Employee Retirement Income Security Act; the Equal Pay Act of 1963; the Immigration Reform and Control Act of 1986; Executive Orders 11246 and 1114; the National Labor Relations Act, as amended; the Occupational Safety and Health Act; the Family and Medical Leave Act of 1993; the Worker Adjustment and Retraining Notification Act; Uniform Service Employment and Reemployment Rights Act; Fair Credit Reporting Act; and Federal Common Law; Texas Labor Code (including, without limitation, Chapters 21, 61 406, and 451), all as amended; and the common law of the State of Texas;

- any participation in any class or collective action against any Releasee; and

- claims for damages in an individual capacity or on behalf of another person or entity.

ROA.180-81.

Second, Esquivel separately agreed not to bring any lawsuit against any of the

released entities or individuals in the Promise Not To Sue:

**6.** ***Promise Not To Sue.*** A "promise not to sue" means you promise not to sue any Releasee in court. This is different from the General Release above. Besides releasing claims covered by the General Release, you agree never to sue any Releasee for any reason covered by the General Release. Despite this Promise Not To Sue, however, you may file suit to enforce this Agreement or to challenge its validity under the ADEA. If you sue a Releasee in violation of this Agreement: (i) you shall be required to pay that Releasee's reasonable attorney fees and other litigation costs incurred in defending against your suit; or alternatively (ii) Whataburger can require you to return all but $100.00 of the money and benefits provided to you under this Agreement. In that event, Whataburger shall be excused from any remaining obligations that exist solely because of this Agreement.

ROA.181.

Third, while the Separation Agreement had some exclusions preserving Esquivel's right to participate in specified administrative and judicial proceedings, it nonetheless gave up his right to recover in certain proceedings. ROA.181. Esquivel agreed to "give up all rights to any money or other individual relief based on any agency or judicial decision, including class or collective action rulings." *Id.*

## III. Procedural background

On March 27, 2024, a little over a year after signing the Separation Agreement, Esquivel filed this lawsuit against Whataburger and alleged fiduciaries of the Plan. ROA.5; ROA.15 (Compl. ¶¶ 9-11). As noted, the complaint alleges that two of the Plan's nineteen investment options over the proposed class period underperformed during a narrow timeframe. Based on these allegations alone, Esquivel asserts that Defendants violated ERISA. Count I asserts that Defendants breached fiduciary duties. ROA.39-40 (Compl. ¶¶ 78-82). Count II is a derivative claim asserting that certain Defendants failed to monitor Plan fiduciaries who allegedly breached their duties. ROA.40-42 (Compl. ¶¶ 83-91). Finally, Count III is another derivative claim asserting that any Defendant not found to be a fiduciary or co-fiduciary should be found liable for participating in a knowing breach of trust. ROA.42 (Compl. ¶¶ 92-94).

Defendants moved to dismiss. ROA.140-73. The motion argued that the Separation Agreement showed Esquivel lacked standing to bring this lawsuit. The General Release, Promise Not To Sue, and waiver of monetary or other individual relief showed he had no concrete stake in these claims, let alone one that could be redressed by the court. And even if he had standing to bring the claims, those claims failed on the merits under settled appellate precedent. In brief, Esquivel's challenge to just two of the Plan's nineteen investment options could not establish a violation of ERISA's duty of prudence, which focuses on the soundness of the fiduciary's process and not the results. Nor does ERISA require fiduciaries to pick only the best-performing funds. And even if such narrow underperformance allegations could conceivably state a claim, they could not do so here, where Esquivel failed to pick meaningful comparators for the challenged investments given their risks, holdings, goals, and investment strategies.

Ultimately, the district court did not need to reach Defendants' merits arguments. The Separation Agreement doomed the complaint at the threshold. The district court noted that the Seventh Circuit has held that a valid general release of ERISA claims precludes a participant from later obtaining relief for those claims. ROA.414. But the district court assumed Esquivel was right that such a release is ineffective for claims asserted under 29 U.S.C. § 1132(a)(2), which the court characterized as "derivative actions on behalf of the plan." ROA.415. Nevertheless,

even if the General Release was ineffective, the Promise Not To Sue still stood in Esquivel's way.  ROA.415-20.  The language of the Promise Not To Sue clearly showed that its prohibitions were separate from those of the General Release, and Esquivel conceded that a covenant not to sue is different than a release.  ROA.416. The Promise Not To Sue applied by its terms.  ROA.418-19.  And there was no support in ERISA's statutory text or any applicable precedent for invalidating a covenant not to sue.  ROA.417.  Nor had Esquivel offered any argument to dispute Defendants' observation that the allegations in the complaint concerned events that preceded his signing of the Separation Agreement.  ROA.419-20.

## SUMMARY OF ARGUMENT

I.    Esquivel starts by attacking the district court's interpretation of the parties' contract.  But his contractual interpretation arguments are meritless.  By its plain terms, and consistent with settled legal doctrine, the Separation Agreement specifies that its General Release and Promise Not To Sue impose different rights and duties.  The former releases a broad set of *claims*, while the latter prevents Esquivel from bringing a legal action based on any of the *reasons* covered by the General Release.  Esquivel attempts to collapse this distinction between the two provisions.  He pretends that the Promise Not To Sue is restricted to validly released claims, rather than the reasons for asserting those claims.  And in the end he proposes a reading that makes the Promise Not To Sue superfluous.  Esquivel's argument

neglects the contract's plain language and departs from numerous principles of contract interpretation.

II.      Esquivel's second argument is that the Promise Not To Sue is unenforceable if it does apply. This argument starts from the premise that ERISA prohibits releasing claims under 29 U.S.C. § 1132(a)(2). But that premise is itself faulty. Nothing in the statute's text regulates releases. So, as the Seventh Circuit held in *Howell v. Motorola, Inc.*, 633 F.3d 552, 558-61 (7th Cir. 2011), a participant in a defined contribution plan can release his right to obtain recovery under Section 1132(a)(2) relating to his own individual account in the plan. And even if ERISA precluded a release of those claims, the district court correctly concluded that ERISA does not preclude enforcing an individual participant's personal promise not to bring suit on those claims. If ERISA invalidated every promise not to litigate claims against a plan fiduciary, settling such claims would be impossible. That cannot be correct, as multiple circuit courts have recognized.

III.      In a last-ditch effort to revive this action, Esquivel argues that the district court "overlooked" the parts of his claims that postdated his execution of the Separation Agreement. But the district court overlooked nothing. Esquivel has never identified any allegations in the complaint that relate to post-Separation Agreement conduct—even after the district court noted this problem in its decision. Esquivel has not done so because there are none. The conduct that he alleges injured

14

him happened before the Separation Agreement, while he was still employed. All of Esquivel's challenges to the district court's decision fail, and this Court should affirm.

## ARGUMENT

The issues on appeal are very narrow. Esquivel does not dispute that he knowingly and voluntarily signed the Separation Agreement. He does not dispute that it was appropriate for the district court to consider the Separation Agreement on Defendants' motion to dismiss. Nor does he dispute that if the Separation Agreement applies to his claims and is compatible with ERISA, he lacks Article III standing to assert them and the district court lacked jurisdiction to decide them. For good reason: a plaintiff no longer has a legally cognizable interest in a dispute once that he has contractually settled his claims. *See, e.g.*, *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 469 (5th Cir. 2020) (en banc) (discussing how settlements during litigation render a dispute moot); *Stanley v. George Washington Univ.*, 394 F. Supp. 3d 97, 106 (D.D.C. 2019) (dismissing ERISA breach of fiduciary claim challenging investment options for lack of standing because claims fell within scope of release), *aff'd*, 801 F. App'x 792 (D.C. Cir. 2020) (per curiam).

Instead, Esquivel argues that the district court misconstrued the Separation Agreement, failed to recognize that ERISA invalidates its Promise Not To Sue, and

improperly barred claims that postdate the Separation Agreement. None of these arguments have merit, and the Court should affirm.

## I.    Esquivel's Promise Not To Sue unambiguously applies to this action.

The district court agreed with Esquivel that the General Release is unenforceable as to his ERISA claims, which supposedly belong to the Plan and not Esquivel himself. Still, even after spotting Esquivel that premise, the district court recognized that the Separation Agreement's Promise Not To Sue imposes further obligations barring Esquivel's action. Esquivel's lead argument on appeal is that the district court should have viewed the Promise Not To Sue as coextensive with the General Release and equally ineffective as to his claims. But his argument fails under the plain language of the contract and basic principles of contract interpretation.

As the district court observed, ROA.416, the Promise Not To Sue expressly states that it "is different from the General Release." ROA.181. The contract further explains that "[a] 'promise not to sue' means [Esquivel] promise[s] not to sue any Releasee in court." *Id.* So, "[b]esides releasing *claims* covered by the General Release, [Esquivel] agree[d] never to sue any Releasee for any *reason* covered by the General Release." *Id.* (emphasis added). There are just two reasons for which Esquivel may sue under the Promise Not To Sue, and the provision carves them out explicitly: (1) to enforce the Separation Agreement; or (2) to challenge its validity

under the Age Discrimination in Employment Act ("ADEA"). *Id.* The complaint involves neither scenario.

The distinction between a release and a promise or covenant not to sue is well established. Esquivel even conceded below that "Defendants are correct in distinguishing the covenant not to sue from a release." ROA.349. And this Court has long recognized that releases have a different and potentially broader effect. Covenants not to sue govern whether a particular person may take legal action or demand payment, while releases generally extinguish the underlying liability (which can affect the rights of additional parties like guarantors of the liability). *See, e.g.*, *Woods-Tucker Leasing Corp. of Ga. v. Kellum*, 641 F.2d 210, 214 n.5 (5th Cir. 1981) (addressing release with reservation of rights); *Foremost Cnty. Mut. Ins. Co. v. Home Indem. Co.*, 897 F.2d 754, 761 n.11 (5th Cir. 1990) (contrasting release with covenant not to execute); *Nat'l Am. Ins. Co. v. Melancon*, No. 98-cv-1273, 1999 WL 600372, at *3 (E.D. La. Aug. 9, 1999) ("The Fifth Circuit has recognized that a release differs from a covenant not to sue; while a covenant not to sue preserves the cause of action, a release destroys it.").

Given this well-settled distinction between releases and covenants, combined with the Separation Agreement's unambiguous language, the only question is whether Esquivel is attempting "to sue any Releasee for any reason covered by the

17

General Release." ROA.181. The answer, as the district court recognized, is plainly yes.

To start, there is no question that Defendants are "Releasees." The Separation Agreement defines that term to include "Whataburger . . . plus its parents, subsidiaries, affiliates, predecessors, successors and any other entity related to it and all of its and their past and present directors, officers, employees and anyone else acting for any of them, and including trustees, fiduciaries and others affiliated with Whataburger's benefit plans." ROA.180. Esquivel does not deny that each Defendant falls within that definition. *See* ROA.15 (Compl. ¶¶ 9-11). Nor does he appeal the district court's ruling that each Defendant falls within that description. ROA.418.

Next, Esquivel's lawsuit attempts to sue Defendants for reasons covered by the General Release—again, just as the district court held. ROA.418-19. The General Release covers "all claims and rights related to . . . benefits[,] . . . damages, . . . attorney fees, costs, interest or penalties[,] . . . unlawful or tortious conduct such as . . . fiduciary breach . . . or other federal, state or local statutory or common law matters[, and] . . . benefit entitlement." ROA.180-81. On top of those prohibited reasons for a potential lawsuit, the General Release gives up "all claims and rights related to . . . claims under . . . the Employee Retirement Income Security Act." *Id.* And the General Release further gives up "all claims and rights related to . . . any

participation in any class or collective action against any Releasee" and "claims for damages in an individual capacity or on behalf of another person or entity." *Id.*

There is no way to read this comprehensive language as not encompassing the reasons for this lawsuit. From the opening paragraph, the complaint makes clear that the reasons for this lawsuit include Defendants' alleged "breaches of their fiduciary duties." ROA.12 (Compl. ¶ 1); *see also* ROA.13-14, 39-42 (Compl. ¶¶ 5-6, ¶¶ 79-82, 85, 94). Allegations of fiduciary breach are not just "a" reason for this lawsuit, but the overarching reason for it. And the complaint exclusively asserts claims and rights related to "benefits" and "benefit entitlement" because that is the subject matter that ERISA protects. ROA.180-81; *see, e.g.*, ROA.12 (Compl. ¶ 2) (discussing the roles that defined benefit plans and defined contribution plans have played in providing retirement benefits); *cf. Conkright v. Frommert*, 559 U.S. 506, 516 (2010) ("Congress enacted ERISA to ensure that employees would receive the benefits they had earned[.]"). The relief Esquivel seeks includes "damages," "[a]ttorneys' fees," "costs," and "interest." ROA.14, ROA.42 (Compl. ¶¶ 7, 95); *cf.* ROA.180. He also seeks to recover "damages in an individual capacity or on behalf of another person or entity," including by serving as representative in a "class . . . action." ROA.181; *see* ROA.36-39 (Compl. ¶¶ 65-77).

As a matter of ordinary language, then, Esquivel's reasons for filing suit match many of the reasons for suit covered by the General Release. A litigant's "reasons"

for suit readily encompass the litigant's stated explanation or justification for filing suit as well as their ground or cause for doing so. *See, e.g.*, *Reason*, BLACK'S LAW DICTIONARY (12th ed. 2024) (defining "reason" in pertinent part as "[a]n expression or statement given by way of explanation or justification" or "[a] ground or cause that explains or accounts for something"); OXFORD ENGLISH DICTIONARY (online ed. 2025) (noting that "reason" can mean "[a] cause, ground, or motive"). Again, the complaint itself establishes that the purported justification, explanation, or motive for this lawsuit is Esquivel's belief that Defendants committed a fiduciary breach and that he and the class are entitled to additional benefits and damages as a result.

Esquivel never explains how the reasons for this lawsuit might fall outside the reasons set forth in the General Release. He instead asserts, without elaboration, that "he is suing the Releasees for reasons *not covered* by the General Release." Esquivel Br. 19 (emphasis in original). There is no basis for this assertion. On any possible reading, the General Release "covers" all the reasons for suit just described because it includes those reasons within its own scope. *See, e.g.*, *Cover*, BLACK'S LAW DICTIONARY, *supra* (defining "cover," in relevant sense, as "[t]o treat, include, or deal with (a subject matter, category of items, etc.)"); OXFORD ENGLISH DICTION-ARY, *supra* (defining "cover," in relevant sense, as "[t]o be extensive enough to in-clude or comprehend; to include within its application or scope; to provide for"). As

a matter of ordinary English, Esquivel is suing for reasons covered by the General Release.

Rather than engage with the plain meaning of "reasons" and "covered by," Esquivel tries to collapse the differences between the two contract provisions. In this vein, he argues that "covenants not to sue for 'covered' claims" do not apply "where the 'covered' claims are plan-wide breach of fiduciary duty claims under ERISA." Esquivel Br. 19. Relatedly, he argues that "[s]ince the General Release does not 'cover' the claims that [he] brought on behalf of the Plan under [29 U.S.C. § 1132(a)(2)], the Promise Not to Sue likewise does not 'cover' [those] claims." *Id.* But this argument rewrites the contract's language. The Separation Agreement does not have a covenant not to sue for covered *claims*. It contains a covenant not to sue for covered *reasons*. And again, the Separation Agreement carves out the only two reasons for which Esquivel could contractually bring a lawsuit—enforcing the Separation Agreement or challenging its validity under the ADEA—neither of which are at issue here. ROA.181.

In these respects, the Separation Agreement differs materially from the one in the out-of-Circuit district court case that Esquivel cites, which included a "Promise Not to Litigate Released Claims." *Fernandez v. Franklin Res., Inc.*, No. 17-cv-6409, 2018 WL 1697089, at *3 (N.D. Cal. Apr. 6, 2018) (emphasis omitted). In this case, the Promise Not To Sue is a promise not to sue for specified reasons, not a promise

21

not to litigate released claims.  What is more, the provision in *Fernandez* explicitly excluded "any right that relates to . . . the Employee's vested participation in any qualified retirement plan."  *Id.* at *4.  There is no remotely similar carveout here.  So even if *Fernandez* was rightly decided, it has zero bearing on this case.

Defendants agree with Esquivel that "[w]here the contract language is clear and definite, the contract is not ambiguous and the court must apply the plain language as a matter of law."  *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 497 (5th Cir. 2002).  But Esquivel fails to recognize that the clear contract language defeats his position.  The Promise Not To Sue deliberately uses the term "reason" rather than the term "claim," which is the term used in the General Release. The Promise Not To Sue extends to all reasons falling within the scope of the General Release.  And the Promise Not To Sue explicitly differentiates its requirements from those of the General Release.  In all these ways, its clear language forecloses Esquivel's action.

Esquivel argues that a "presumption favoring consistent usage" somehow supports his contrary reading of the Promise Not To Sue.  Esquivel Br. 20 (brackets omitted) (quoting *Catalyst Strategic Advisors, L.L.C. v. Three Diamond Cap. SBC, L.L.C.*, 93 F.4th 870, 877 (5th Cir. 2024)).  But this argument gets contract law backwards.  True, contract law often follows a consistent-usage presumption according to which the repetition of "identical words" in different parts of a contract shows an

22

intent to convey the same meaning with each use; but conversely, using "different words" in different parts of a contract shows the opposite—an intent to convey a "different meaning." *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 657 (5th Cir. 1999) (citation omitted). The second presumption—that meaningful variations in contract language suggest different meanings—aptly applies here, particularly when the Separation Agreement uses "claims" in the General Release and "reasons" in the Promise Not To Sue.

This principle that using different words conveys different meanings is reinforced by contract law's canon against surplusage. Under federal contract law as well as general state contract law, "a contract should be interpreted as to give meaning to all of its terms—presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous." *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Off. of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000). But Esquivel is asking the Court to treat the provisions as "identical in scope." Esquivel Br. 20. And he argues that after finding that "the General Release does not apply to [his] ERISA claims, [the district court] should have logically found the Promise Not to Sue does not prohibit [his] lawsuit." *Id.* at 2. If Esquivel's interpretation were right, the Promise Not To Sue would be redundant, if not altogether meaningless. Contract law forecloses that reading.

Esquivel is likewise wrong to suggest that the parties needed to include specific language extending the Promise Not To Sue beyond the claims covered by the General Release. *See* Esquivel Br. 20. By expressly differentiating itself from the General Release and by choosing different and more capacious language that is not tied to the *claims* covered by the General Release, the Promise Not To Sue already has language showing that it sweeps more broadly. Nor is there any ambiguity to support construing the Separation Agreement in Esquivel's favor. The Separation Agreement language is "clear" and "unambiguous." ROA.419. Esquivel promised not to sue for any reasons covered by the General Release. And regardless of whether the General Release is enforceable in this lawsuit, this lawsuit plainly rests on reasons for suit enumerated in the General Release, just as the district court held.

## II.    ERISA does not preclude enforcing Esquivel's contractual promises.

Esquivel's second argument is that even if the Promise Not To Sue would apply by its own terms, it would still be unenforceable under ERISA. This argument hinges on the premise that ERISA plan participants cannot lawfully release their claims under 29 U.S.C. § 1132(a)(2), and then tries to extend that principle to covenants not to sue. As an initial matter, Esquivel's premise is wrong: nothing in ERISA bars plan participants from releasing their own claims. And even if the premise were correct, nothing in ERISA would support extending it to covenants not to sue, which are fundamentally different than releases.

**A.    Although the Court need not reach the issue, ERISA does not preclude releases of fiduciary breach claims.**

Esquivel does not dispute that the terms of the General Release cover his claims, but he incorrectly argues that ERISA precludes any release of claims under 29 U.S.C. § 1132(a)(2).  As with any statutory interpretation question, the Court should "start with the statutory text."  *Van Loon v. Dep't of the Treasury*, 122 F.4th 549, 563 (5th Cir. 2024) (quoting *Tanzin v. Tanvir*, 592 U.S. 43, 46 (2020)).  The district court correctly recognized that 29 U.S.C. § 1132 (ERISA's right-of-action and civil enforcement provision) contains no language regulating release require-ments.  ROA.417.  The district court relied on this observation in holding that ERISA permits a covenant not to sue under Section 1132(a)(2), but it is equally apt when considering a release of claims.  This Court has already recognized that "ERISA does not regulate releases at all."  *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 376 (5th Cir. 2002).  That should end the debate, because the Court has no license to rewrite the statutory text.

And the rewrite that Esquivel desires would be especially improper.  In *Chap-lin*, this Court noted that "[p]ublic policy favors voluntary settlement of claims and enforcement of releases" and that this deep-rooted public policy extends to ERISA claims.  *Id.* at 373 (citation omitted).  If Congress had intended to depart from this policy, it would have said so somewhere in ERISA.

Further support for this view is found in the Seventh Circuit's decision in *Howell v. Motorola, Inc.*, 633 F.3d 552, 558-61 (7th Cir. 2011). There, the Seventh Circuit emphasized "the federal policy in favor of voluntary settlement of claims" and concluded that nothing in ERISA requires otherwise. *Id.* at 561; *see also Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162-63 (8th Cir. 1990) (enforcing release as to ERISA claim for denial of plan benefits). As the Seventh Circuit explained, the release's "language barring claims that arise under ERISA dispose[d] of [that] case" because the exceptions in the release did not apply. *Howell*, 633 F.3d at 559. That was true even though the participant asserted claims under 29 U.S.C. § 1132(a)(2). Under the Supreme Court's decision in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008), 29 U.S.C. § 1132(a)(2) permits a participant to seek recovery when "breaches of fiduciary duty might impair the value of plan assets in a participant's individual account." *Howell*, 633 F.3d at 560. Nothing in the statute forbids a participant from releasing such claims tied to their individual accounts. *See id.* at 560-61. Stated plainly, if a participant has the right to bring these claims in court, to win them or lose them, to waive or abandon arguments in support of them, and to voluntarily dismiss them with prejudice, he must also have the right to settle and release them.

Esquivel places great weight on the Ninth Circuit's decision in *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999). That decision, however, relied on the

notion that the individual participant's claim under Section 1132(a)(2) did not seek "individual relief" but instead sought "relief for the Plan[] and all participants." *Bowles*, 198 F.3d at 759.   The Ninth Circuit ruled that such "claims are not truly individual" and therefore require the plan's consent to settle.  *Id.* at 760.   Those conclusions do not survive *LaRue*, decided by the Supreme Court ten years later, which recognized that defined contribution plan participants can assert Section 1132(a)(2) claims tied to their individual accounts without asserting those claims for the "entire plan."  *LaRue*, 552 U.S. at 254.   In a defined contribution or "individual account" plan, ERISA's text establishes that the balance of the participant's individual account is that participant's "accrued benefit."   29 U.S.C. § 1002(23)(B), (34).   As a result, the participant has the ultimate entitlement to the amounts in his or her account, even if those amounts are held in trust by the plan until distribution.  *See, e.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999) ("[E]ach beneficiary is entitled to whatever assets are dedicated to his individual account.").   This arrangement contrasts sharply with defined benefit plans, which lack individual accounts for each participation and which do not give participants "a claim to any particular asset that composes a part of the plan's general asset pool."  *Id.* at 440.

The Third Circuit overlooked this fundamental characteristic of defined contribution plans in the case Esquivel cites expressing doubt over the enforceability of

ERISA releases. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 595 (3d Cir. 2009). The court there determined that even after *LaRue* (which it brushed aside in a footnote), participants in defined contribution plans cannot release 29 U.S.C. § 1132(a)(2) claims tied to the assets in their individual accounts. *In re Schering Plough*, 589 F.3d at 595 & n.9. But the Third Circuit never grappled with the statutory provision establishing that the assets in the individual account of a defined contribution plan participant are that individual's own "accrued benefit." 29 U.S.C. § 1002(23)(B). There is nothing odd or improper about individual participants' ability to release claims regarding their own accrued benefits. On the contrary, given "the federal policy in favor of voluntary settlement of claims," *Howell*, 633 F.3d at 561, it is far more difficult to read the statute to implicitly require a separate entity's approval of an individual participant's attempt to resolve claims that relate exclusively to his own benefits. There is no basis to engraft onto ERISA that entirely atextual restriction on releasing this one species of ERISA claim.

Esquivel cites a hodgepodge of recent cases addressing the *arbitrability* of claims under 29 U.S.C. § 1132(a)(2). Those cases are irrelevant because this case does not involve an arbitration agreement. And those cases share the same oversight as *Bowles* and *Schering Plough*, ignoring that individual account balances are the accrued benefits of the individual participants in a defined contribution plan and are

28

not undifferentiated assets belonging to the plan as a whole. *See* 29 U.S.C. § 1002(23)(B); *Hughes Aircraft*, 525 U.S. at 439-40.

These arbitration cases also rely on other reasoning that does not withstand scrutiny. For example, in *Munro v. University of Southern California*, 896 F.3d 1088, 1092-93 (9th Cir. 2018), the court compared Section 1132(a)(2) claims to qui tam claims under the False Claims Act. But the Supreme Court has since rejected the analogy between ERISA claims (purportedly brought on behalf of the plan) and qui tam actions (brought on behalf of the government). *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 543-44 (2020). The other cited decisions rely on arbitration-specific reasoning that does not apply here. For instance, *Harrison v. Envision Management Holding, Inc. Board of Directors*, 59 F.4th 1090, 1097-98 (10th Cir. 2023), relied on the judge-made "effective vindication" doctrine, which according to the court invalidates arbitration agreements that do not sufficiently protect the plan participant's ability to vindicate the statutory cause of action in the arbitral forum. And in *Hawkins v. Cintas Corp.*, 32 F.4th 625, 629 (6th Cir. 2022) (citation omitted), the court thought that enforcing an arbitration agreement was in tension with "ERISA's policy . . . to provide 'ready access to the Federal courts.'" Neither rationale has any purchase here.

In short, the cases Esquivel cites offer no reason to read ERISA's language as prohibiting participants from releasing claims tied to their individual accounts. This

Court's cases and those of the Supreme Court do not provide any support for that interpretation, either, and this Court should join the Seventh Circuit in rejecting it.

**B.    In all events, the district court correctly ruled that the Promise Not To Sue is enforceable regardless of the General Release's enforceability.**

But the Court need not reach the question of the General Release's enforceability. Even if an ERISA plan participant cannot *release* a claim, a participant can certainly agree not to personally sue over it. As the district court noted, no language in ERISA says otherwise. ROA.417. Nor does Esquivel identify any *case* anywhere that says otherwise. The closest he comes is a footnote citing *In re JDS Uniphase Corp. ERISA Litigation*, No. 03-cv-4743, 2006 WL 2597995, at *1-2 (N.D. Cal. Sept. 11, 2006). But as the district court noted, the court there viewed the release and covenant not to sue as one in the same, and so it followed the Ninth Circuit's precedent on releases in *Bowles* without addressing the differences between releases and covenants not to sue. ROA.417.

As already discussed, releases and covenants not to sue are fundamentally different. The former extinguishes liability, and the second gives up a right to take legal action. *See supra* p. 17. Even if a release of Section 1132(a)(2) claims were thought to infringe a plan's rights, no such argument could stand in the way of enforcing an individual promise not to file suit. When a participant waives his or her own individual right to sue under Section 1132(a)(2), the statute still permits suit for

the same alleged ERISA violation by other potential plaintiffs (namely, the Secretary of Labor or one of the plan's fiduciaries). 29 U.S.C. § 1132(a)(2). That is why even one of Esquivel's own preferred cases, *In re Schering Plough*, distinguished a release from a covenant not to sue when assessing that class representative's typicality under Rule 23. 589 F.3d at 599. Esquivel has no answer to the substantive distinction between a release and a covenant not to sue.

And with Esquivel having "give[n] up all rights to any money or other individual relief based on any . . . judicial decision," *see* ROA.181, there can be no doubt that he lacks any concrete stake in these claims. He seems to suggest that he does not need one because the Plan has been injured as an entity regardless of his personal right to recover. But the Supreme Court has made clear that ERISA participants cannot rely solely on plan injuries to support standing to sue. *Thole*, 590 U.S. at 542. "There is no ERISA exception to Article III." *Id.* at 547. If a plaintiff would receive exactly the same retirement benefits after winning the lawsuit that the plaintiff would receive after losing it, the plaintiff has no concrete stake in the lawsuit and thus no Article III standing. *Id.* at 541-42; *see also Cunningham v. Cornell Univ.*, — U.S. —, 2025 WL 1128943, at *8 (2025) (highlighting *Thole*).

With neither text nor precedent on his side, Esquivel cannot possibly justify the disastrous consequences that follow from his position, which would upend ERISA litigation. His contention, after all, is that "an individual participant cannot

agree not to litigate a claim" under Section 1132(a)(2) because according to Esquivel the individual participant "does not possess" the claim. Esquivel Br. 23. As already explained, that argument confuses the release of the plan's claims with his personal covenant not to bring a lawsuit. But even if one were willing to look past that problem, the unavoidable implication of Esquivel's position would be that no participant could ever enter into a binding agreement to drop—or not bring—any Section 1132(a)(2) claim (not even the individual claim asserted in *LaRue*). Courts have widely recognized, however, that if an interpretation of the statute makes it impossible to settle ERISA claims, it cannot be correct. *See, e.g.*, *In re Schering Plough*, 589 F.3d at 594 (rejecting plaintiff's proposed interpretation of 29 U.S.C. § 1110(a) because "individuals could never amicably resolve litigation over these issues"); *Howell*, 633 F.3d at 561 (same); *Leavitt*, 921 F.2d at 161-62 (same). This Court should conclude likewise. If Congress had wanted to prevent settlement of Section 1132(a)(2) claims, it would have said so. Instead, ERISA fully embodies the usual federal policy in support of voluntary settlement of disputes. *See, e.g.*, *Chaplin*, 307 F.3d at 373.

## III. The district court properly dismissed the entire action.

Esquivel's final challenge to the district court's ruling is that the court allegedly "overlooked plan injuries that arose *after* the effective date of [his] separation agreement." Esquivel Br. 4 (emphasis in original). Even if Esquivel were right to

argue, as a legal matter, that a participant cannot validly release claims arising after signing an agreement, this argument provides no basis for reversal because his claims predated the Separation Agreement.

As the district court explained, Defendants have consistently argued that all the events alleged in the complaint as giving rise to Esquivel's claims happened years before he signed the Separation Agreement on March 15, 2023. ROA.419. Because Esquivel's allegations concern events that happened before the effective date, they do not implicate "unknown, future claims." ROA.420.

Esquivel does not respond to this reasoning at all. Esquivel Br. 23-25. He does not point to any allegation in his complaint that purportedly supports a breach of fiduciary duty after March 15, 2023. *Id.* Nor did he do so below. *See* ROA.349-50. He therefore has failed to preserve an argument for appeal. *See, e.g.*, *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("[I]f a litigant desires to preserve an argument for appeal, the litigant must press and not merely intimate the argument during the proceedings before the district court."). Even now, Esquivel fails to meaningfully develop the factual basis for this argument, and instead merely asserts that the district court "erred" in concluding that the complained-of events occurred before March 15, 2023. Esquivel Br. 25. This underdevelopment of the argument constitutes another forfeiture. *See, e.g.*, *Schnell v. State Farm Lloyds*, 98 F.4th 150, 161 (5th Cir. 2024) ("A party may forfeit an argument through inadequate briefing

33

in several ways, such as . . . by failing to 'offer record citations.'" (citation omitted)). Nor may Esquivel correct these failures by developing the arguments for the first time on reply. *See, e.g.*, *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 499 n.1 (5th Cir. 2004) (finding that appellants waived an argument by failing to adequately brief it in their opening brief).

In any event, the complaint contains no allegations suggesting that Esquivel could assert his claims based on events that arose after March 15, 2023. The two investment options he challenges allegedly suffered from underperformance well before 2023—starting in 2018 (for the MainStay Winslow Large Cap Growth Fund Class R1) and 2020 (for the Janus Henderson Triton Fund Class T). ROA.23-27, 29-33 (Compl. ¶¶ 31-38, 42, 47-56). And the complaint contends that these funds should have been removed from the Plan no later than the fourth quarter of 2019 and 2021 respectively. ROA.27, ROA.32 (Compl. ¶¶ 41, 55). There are no allegations that Esquivel continued to hold either fund after March 15, 2023, let alone that he suffered any harm as a result of doing so. One cannot infer from the complaint's allegations that Esquivel is asserting any claims arising after the Separation Agreement. On the contrary, the complaint even refers to Esquivel as a "former participant" in the Plan. ROA.14 (Compl. ¶ 8).

Because there are no allegations (let alone adequately briefed arguments) that Esquivel continued to suffer any harm from the complained-of conduct after the

Separation Agreement, his third argument fails.  And his arguments about fiduciaries' continuing duties and prospective waiver of ERISA remedies are beside the point.  Esquivel Br. 24-25 (citing *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015), *Henry ex rel. BSC Ventures Holdings, Inc. Emp. Stock Ownership Plan v. Wilmington Tr. NA*, 72 F.4th 499, 507-08 (3d Cir. 2023), and *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024)).  For all that appears in the complaint, none of Esquivel's alleged injuries happened after he entered the Separation Agreement.

## CONCLUSION

For all these reasons, the judgment of the district court should be affirmed.

Dated:  April 23, 2025

Respectfully submitted,

s/ Jeremy P. Blumenfeld

LAUREN A. VALKENAAR
NATSUMI J. COVEY
VALKENAAR PLLC
7898 Broadway, Suite 120
San Antonio, TX 78209
(210) 239-0321

JEREMY P. BLUMENFELD
MORGAN, LEWIS & BOCKIUS LLP
2222 Market Street
Philadelphia, PA 19103
(215) 963-5258

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, DC 20004
(202) 739-5893

*Counsel for Appellees Whataburger Restaurants, LLC, the Board of Directors of Whataburger Restaurants LLC, and the Whataburger 401(k) Savings Plan Administrative Committee*

## CERTIFICATE OF SERVICE

I certify that on this day, April 23, 2025, I served a true and correct copy of

the foregoing Brief of Appellees on counsel of record for all other parties through

this Court's CM/ECF system:

James E. Miller
Miller Shah LLP
65 Main Street
Chester, CT 06412
(866) 540-5505
jemiller@millershah.com

James C. Shah
Alec J. Berin
Miller Shah LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
(866) 540-5505
jcshah@millershah.com
ajberin@millershah.com

John S. Edwards, Jr.
Ajamie LLP
711 Louisiana Street
Suite 2150
Houston, TX 77002
(713) 860-1600
jedwards@ajamie.com

Dated:  April 23, 2025

s/ Jeremy P. Blumenfeld
JEREMY P. BLUMENFELD

*Counsel for Whataburger Restaurants, LLC, the Board of Directors of Whataburger Restaurants LLC, and the Whataburger 401(k) Savings Plan Administrative Committee*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and 5th Cir. R. 32.1, this document contains 8,348 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5), and 5th Cir. R. 32.1 and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 MSO in Times New Roman size 14-point font.

Dated:  April 23, 2025                            s/ Jeremy P. Blumenfeld
                                                 JEREMY P. BLUMENFELD

                                                 *Counsel for Whataburger Restaurants, LLC, the Board of Directors of Whataburger Restaurants LLC, and the Whataburger 401(k) Savings Plan Administrative Committee*

37