No. 24-50976

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

MANUEL ESQUIVEL, INDIVIDUALLY AND AS A REPRESENTATIVE OF A CLASS OF SIMILARLY SITUATED PERSON, ON BEHALF OF THE WHATABURGER 401(K) SAVINGS PLAN FORMERLY KNOWN AS THE WHATABURGER PROFIT SHARING AND 401(K) SAVINGS PLAN,

*Plaintiff - Appellant*,

v.

WHATABURGER RESTAURANTS, L.L.C.; THE BOARD OF DIRECTORS OF WHATABURGER RESTAURANTS, L.L.C.; THE WHATABURGER 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE, FORMERLY KNOWN AS THE WHATABURGER PROFIT SHARING AND 401(K) SAVINGS PLAN ADMINISTRATIVE COMMITTEE; DOES NO.1-20, WHOSE NAMES ARE CURRENTLY UNKNOWN,

*Defendants - Appellees*.

On Appeal from the United States District Court
for the Western District of Texas,
USDC Civil Action No. SA-24-CV-00310-XR

---

### REPLY BRIEF OF PLAINTIFF-APPELLANT

---

JAMES E. MILLER
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
jemiller@millershah.com

JOHN S. EDWARDS JR.
AJAMIE LLP
711 Louisiana Street
Pennzoil Place S. Tower, Suite 2150
Houston, TX 77002
jedwards@ajmie.com

May 14, 2025

*Counsel for Plaintiff-Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

ARGUMENT ........................................................................................ 3

   I.   The Whataburger Defendants Cannot Ignore Federal Common Law or Redefine the Coverage of the Promise Not to Sue ........................................ 3

   II.  The District Court Correctly Held that the General Release did not Cover the Section 502(a)(2) Claims ............................................................ 5

  III. Individual Participants Cannot Surrender the Right to Bring Section 502(a)(2) Claims on Behalf of the Plan without the Plan's Authority or Consent ........................................................................ 13

  IV. The Whataburger Defendants have no Substantive Response to the District Court's Misapplication of the Promise Not to Sue to Subsequent Plan Injuries ....................................................................... 18

CONCLUSION ..................................................................................... 20

CERTIFICATE OF SERVICE ................................................................... I

CERTIFICATE OF COMPLIANCE .......................................................... II

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arnold v. Paredes*,
714 F. Supp. 3d 962 (M.D. Tenn. 2024)................................................. 18

*Babin v. Quality Energy Servs.*,
877 F.3d 621 (5th Cir. 2017)............................................................... 13

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 3142364 (W.D. Tex. Aug. 5, 2022)...................................... 19

*BNSF R. Co. v. Alstom Transp., Inc.*,
777 F.3d 785 (5th Cir. 2015).................................................................. 7

*Bowles v. Reade*,
198 F.3d 752 (9th Cir. 1999).......................................................... 9, 10

*Cedeno v. Sasson*,
100 F.4th 386 (2d Cir. 2024)................................................. 9, 12, 17

*Chaplin v. NationsCredit Corp.*,
307 F.3d 368 (5th Cir. 2002)................................................................. 9

*Coan v. Kaufman*,
457 F.3d 250 (2d Cir. 2006)................................................................. 3

*Cunningham v. Cornell Univ.*,
145 S. Ct. 1020 (2025) ............................................................... 16, 17

*Fernandez v. Franklin Res., Inc.*,
2018 WL 1697089 (N.D. Cal. Apr. 6, 2018) ...................................... 5

*Hawkins v. Cintas Corp.*,
32 F.4th 625 (6th Cir. 2022) ..................................................... 9, 11, 12

*Howell v. Motorola, Inc.*,
633 F.3d 552 (7th Cir. 2011)................................................................. 9

*In re Schering Plough Corp. ERISA Litig.*,
   589 F.3d 585 (3d Cir. 2009).......................................................... 10, 12, 15, 18

*Jennings v. Stephens*,
   135 S.Ct. 793 (2015) ......................................................................... 7

*Langbecker v. Elec. Data Sys. Corp.*,
   476 F.3d 299 (5th Cir. 2007) ............................................................ 11

*LaRue v. DeWolff, Boberg & Assocs., Inc.*,
   552 U.S. 248 (2008) ...................................................... 11, 12, 13, 21

*Leavitt v. Nw. Bell Tel. Co.*,
   921 F.2d 160 (8th Cir. 1990)............................................................ 11

*Morley Const. Co. v. Maryland Cas. Co.*,
   300 U.S. 185 (1937) ......................................................................... 8

*Munro v. Univ. of S. California*,
   896 F.3d 1088 (9th Cir. 2018)......................................................... 12

*Nat'l Prop. Holdings, L.P. v. Westergren*,
   453 S.W.3d 419 (Tex. 2015)............................................................. 6

*Perez v. Bruister*,
   823 F.3d 250 (5th Cir. 2016)........................................................... 18

*Thole v. U. S. Bank N.A*,
   590 U.S. 538 (2020) ................................................................... 16, 17

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015)............................................................... 4, 19, 20

*United States v. Am. Ry. Express Co.*,
   265 U.S. 425 (1924) ......................................................................... 7

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996) ........................................................................ 16

*Weaver v. Tex. Capital Bank N.A.*,
   660 F.3d 900 (5th Cir. 2011).................................................................... 7

**Statutes**

29 U.S.C. § 1002(7) .................................................................................... 21

**Rules**

Fed. R. Civ. P. 8(a)(2) ................................................................................. 5

Fed. R. App. P. 32(a)(5) .............................................................................. 2

Fed. R. App. P. 32(a)(6) .............................................................................. 2

Fed. R. App. P. 32(a)(7)(B) ........................................................................ 2

Fed. R. App. P. 32(f) ................................................................................... 2

Fed. R. App. P. 25(b) .................................................................................. 1

Fed. R. App. P. 25(c) ................................................................................... 1

**Other Authorities**

Pension Plan Guide Letter No. 2313 Issue No. 2620,
   Pens. Plan Guide (CCH) ¶ 4979111 ..................................................... 8

# INTRODUCTION

Defendants-Appellees, Whataburger Restaurants, LLC ("Whataburger"), the Board of Directors of Whataburger and the Whataburger 401(k) Savings Plan Administrative Committee (collectively, the "Whataburger Defendants"), articulate no reasoned response to the issues raised in this appeal.[1]  The District Court correctly concluded that the General Release was ineffective against the claims under Section 502(a)(2) of ERISA asserted by Plaintiff-Appellant, Manuel Esquivel ("Esquivel").  The District Court then erred when it inexplicably concluded that the Promise Not to Sue, which is limited to lawsuits arising from the "reason[s] covered by the General Release," bars the same claims.  The Whataburger Defendants urge this Court to ratify the District Court's conclusion by repeating that illogical analysis.

Next, the Whataburger Defendants claim that no ERISA provision or decision supports the proposition that a participant cannot release or agree not to bring a Section 502(a)(2) claim.  As an initial matter, the Whataburger Defendants did not cross-appeal or otherwise seek review of the District Court's holding that the General Release does not apply to the claims at issue.  Therefore, they cannot properly seek review of that portion of the District Court's decision in this appeal

---

[1] Unless otherwise noted, this Reply Brief adopts the same abbreviations as in Plaintiff-Appellant's opening brief (Doc. 36).

because, as explained below, in so doing, they clearly seek to expand their rights through the appeal.  Yet, even if they could, the Whataburger Defendants' position is undercut by the Order they seek to uphold.  As the District Court observed, the Courts of Appeals for the Second, Third, Sixth and Ninth Circuit, as well as countless district courts, have determined that ERISA expressly provides that a Section 502(a)(2) claim belongs to the plan.  Accordingly, a participant cannot release a Section 502(a)(2) claim without the plan's authority or consent.  This principle likewise extends to covenants not to sue.

The Whataburger Defendants warn that ERISA lawsuits cannot be settled if this Court recognizes the principle that Section 502(a)(2) claims belong to the plan. This scaremongering is contradicted by numerous ERISA class settlements, which are agreements made on behalf of *a plan* and the entire class of individuals who have a right to bring claim and with procedural safeguards to ensure a claim is appropriately released.[2]  These agreements do not purport to be individualized to a single participant, like the agreement at issue, and agreements of this kind are generally made between all class members, the sponsor and fiduciaries of a plan,

---

[2]Courts have recognized that, when an individual participant brings claims on behalf of a plan under Section 502(a)(2), they "must comply with procedural safeguards" to ensure the interests of other participants are protected. *Coan v. Kaufman*, 457 F.3d 250, 260 (2d Cir. 2006).  This recognition lends even further support to the well-established principal that an individual participant cannot impair a right that belongs to a plan.

and any necessary third parties.  In addition, such agreements are reviewed and approved by an independent fiduciary and a district court consistent with the due process and other requirements of Rule 23.  Indeed, the Whataburger Defendants' own counsel has represented and negotiated on behalf of defendant fiduciaries in many of those instances.

Finally, the Whataburger Defendants insist that Esquivel cannot challenge the District Court's misapplication of the Promise Not to Sue to the Whataburger Defendants' subsequent failure to remove the Challenged Funds. They state that this issue was not raised below or alleged in the Complaint, but that is belied by the record.  Consistent with *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015), the Complaint provides that the Whataburger Defendants are still in breach of their continuing duty to monitor the Plan investments by failing to remove them to this day, a point that Esquivel raised and the District Court acknowledged on the Whataburger Defendants' motion to dismiss.

In short, the Whataburger Defendants have provided no cogent basis for this Court to affirm the District Court's Order.

## ARGUMENT

### I.    THE WHATABURGER DEFENDANTS CANNOT IGNORE FEDERAL COMMON LAW OR REDEFINE THE COVERAGE OF THE PROMISE NOT TO SUE

The Whataburger Defendants argue that that the "comprehensive language" of the General Release reaches Section 502(a)(2) claims, so the Promise Not to Sue

bars Esquivel's lawsuit. Brief of Whataburger Defendants ("Resp. Br."), at 18–21. But as the District Court correctly determined, "a release is ineffective from barring . . . [a Section 502(a)(2)] claim" under federal common law,[3] so Esquivel "has not released his right to bring the [S]ection 502(a)(2) claims at issue."[4]

If Esquivel did not "release his right to bring the [S]ection 502(a)(2) claims at issue," he certainly did not release his "reasons" to bring such claims. The General Release cannot be ineffective as to the Section 502(a)(2) claims yet be effective against the "reasons" for such claims simultaneously; no litigant can assert claims in court without a "reason" for doing so. *See* Fed. R. Civ. P. 8(a)(2); *Reason*, BLACK'S LAW DICTIONARY (12th ed. 2024).[5]

The plain language of the Promise Not to Sue limits it to lawsuits "for any reason covered by the General Release."[6] The General Release does not cover Esquivel's Section 502(a)(2) claims, so it does not cover any "reason" for those claims. Accordingly, the Promise Not to Sue, like the General Release, does not

---

[3]Indeed, the Separation Agreement expressly states that its provisions are to be "interpreted under federal law if that law governs, and otherwise under the laws of the State of Texas." ROA.183 [¶ 14].

[4]ROA.415.

[5]As such, the Whataburger Defendants' attempt to highlight the use of "reason," instead of "claim," in the Promise Not to Sue to distinguish *Fernandez v. Franklin Res., Inc.*, 2018 WL 1697089 (N.D. Cal. Apr. 6, 2018) (Resp. Br., at 21–24), does not pass muster.

[6]ROA.181 [¶ 6].

reach Esquivel's Section 502(a)(2) claims.  Esquivel's Opening Brief ("Op. Br."),
at 18–21.  The Whataburger Defendants re-litigate the coverage of the General
Release elsewhere in their brief, but that contention is irrelevant to the fact that the
language of the General Release and Promise Not to Sue render the two provisions
coextensive.

The "distinction between a release and a promise not to sue" that the
Whataburger Defendants emphasize (Resp. Br., at 17) is of no significance here.
The Whataburger Defendants explain that "[c]ovenants not to sue govern whether
a particular person may take legal action or demand payment, while releases
generally extinguish the underlying liability."  *Id.*  In other words, a "release
provides an affirmative defense to future suits," while a covenant not to sue "bar[s]
future suits."  *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 428
(Tex. 2015).  But their practical differences have no effect on the substantive
coverage of the General Release and Promise Not to Sue, which is limited by
federal common law and the plain language of those provisions.

## II.    THE DISTRICT COURT CORRECTLY HELD THAT THE GENERAL RELEASE DID NOT COVER THE SECTION 502(A)(2) CLAIMS

The Whataburger Defendants alternatively challenge the District Court's
conclusion (which they did not cross-appeal) that, under federal common law,
Esquivel did not (and could not) release the Section 502(a)(2) claims at issue here.

Resp. Br., at 24–30.[7] But in so arguing, the Whataburger Defendants clearly seek to enlarge their own rights by requesting from this Court a determination that, despite the District Court's explicit holding to the contrary, the General Release at issue is legally effective—a decision if reached by this Court (and directly contrary to the District Court's correct holding) would substantially enlarge the rights of the Whataburger Defendants—because that decision would benefit them vis-à-vis not only Esquivel—but also vis-à-vis the Plan itself and other similarly participants seeking to enforce rights on behalf of the Plan. ***This the Whataburger Defendants cannot do***. As this Court explained in *BNSF R. Co. v. Alstom Transp., Inc.*, 777 F.3d 785, 791 (5th Cir. 2015)(emphasis added):

> "An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing before the record, although his argument may involve an attack upon the reasoning of the lower court.'" *Jennings v. Stephens*, 135 S.Ct. 793, 798 [] (2015) (*quoting United States v. Am. Ry. Express Co.*, 265 U.S. 425, 435 [] (1924)). "***But an appellee who does not cross-appeal may not 'attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.'*** *Id.* (*quoting Railway Express*, 265 U.S. at 435 [] 560); *see also Weaver v. Tex. Capital Bank N.A.*, 660 F.3d 900, 905 (5th Cir.2011) (per curiam) ("Although an appellee may argue any ground available to support affirmance of a judgment, he may not argue for a ruling that would expand his legal rights.").

---

[7]ROA.411–415.  The Whataburger Defendants attribute the District Court's holding as Esquivel's "premise."  Resp. Br., at 24.  The Whataburger Defendants also misstate that Esquivel "does not dispute that the terms of the General Release cover his claims."  Resp. Br., at 25.  Esquivel clearly does.  Op. Br., at 18–21; ARGUMENT, Section I.A, *supra*.

*See Morley Const. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191 (1937) (internal citations omitted) (emphasis added) ("What he may not do in the absence of a cross-appeal is to 'attack the decree with a view either to ***enlarging his own rights thereunder or of lessening the rights of his adversary***, whether what he seeks is to correct an error or to supplement the decree with respect to a matter not dealt with below' . . . ***The rule is inveterate and certain***.").  Here, as discussed above, there can be no question that the Whataburger Defendants seek to diminish the rights of Esquivel (as well as the Plan and members of the proposed class of participants) by obtaining a judicial determination that the release at issue is effective (when the District Court has held it is not)—an important substantive right under ERISA. *See, e.g.*, Pension Plan Guide Letter No. 2313 Issue No. 2620, Pens. Plan Guide (CCH) ¶ 4979111 (discussing case law holding that "[f]iduciary breach claims [are] not subject to plans' individual arbitration requirement that eliminated ***substantive ERISA rights of plan participants***" because "b]y prohibiting the individual participants from acting in a representative capacity on behalf of the plans . . . provisions operated as prospective waivers of the participants' guaranteed rights and remedies under ERISA").

Even if somehow properly presented, despite the Whataburger Defendants' failure to cross-appeal to preserve that argument to diminish the substantive rights of Plaintiff Esquivel, other plan participants and the Plan itself (while

correspondingly expanding the Whataburger Defendants' own substantive rights), their argument that the release at issue should have been deemed effective by the District Court is erroneously premised on *Chaplin v. NationsCredit Corp.*, 307 F.3d 368 (5th Cir. 2002) and *Howell v. Motorola, Inc.*, 633 F.3d 552 (7th Cir. 2011). According to the Whataburger Defendants, *Chaplin* "end[s] the debate" because it states that "ERISA does not regulate releases at all." Resp. Br., at 25. But as the District Court explained, "[a]lthough the *Chaplin* Court held that a release bars ERISA claims, the issue there involved a [p]laintiff bringing a claim on his own behalf, *not a claim brought on behalf of a plan as contemplated here*."[8] In contrast, the District Court found that:

> The Second, Sixth, Ninth and Third Circuits have determined that agreements related to employment that have been signed by an individual participant do not preclude those participants from suing on behalf of a plan." *See Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999) (holding that the plaintiff's § 502(a)(2) claims on behalf of the plans were unaffected by her release); *Hawkins v. Cintas Corp.*, 32 F.4th 625, 632–33 (6th Cir. 2022) (addressing claims involving arbitration agreements and finding that "§ 502(a)(2) claims 'belong' to the Plan"); *Cedeno v. Sasson*, 100 F.4th 386, 400 (2d Cir. 2024) (holding employment agreements that contained provisions to prospectively waive the right to seek remedies on behalf of a retirement plan are unenforceable).[9]

---

[8]ROA.415 (emphasis added).

[9]ROA.412–413.

The District Court further examined the decisions of other district courts, which "concluded the issue is clear-cut, determining, as a matter of law, an individual cannot release a plan's claims and accordingly a release cannot bar an individual from bringing claims on behalf of a plan under 502(a)(2)." [10]  It also considered the Third Circuit's analysis in *In re Schering Plough Corp. ERISA Litig.*, which "held that participants in a retirement plan lack the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty." *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009).[11]

Likewise, even though the "Seventh Circuit found that a plaintiff released claims under ERISA § 502(a)(2) when he signed . . . [the] general release [at issue]" in *Howell*, the District Court correctly observed that the court of appeals "did not specifically discuss whether the plaintiffs had the power to waive claims brought derivatively on behalf of the plan."[12]  In other words, *Howell* did not address the question of whether a participant can release a plan claim without the plan's consent or authority, to which this Court's sister courts of appeals have uniformly concluded the answer is "no." *See Bowles*, 198 F.3d at 760 (*"Because Bowles's claims are not truly individual, it was proper for the district court to

---

[10]ROA.413 (citing cases).

[11]ROA.413–414.

[12]ROA.414.

conclude that Bowles could not settle them without The Plans' consent");

*Hawkins*, 32 F.4th at 627 ("the arbitration provisions in these individual

employment agreements—which only establish the [p]laintiffs' consent to

arbitration, not the plan's—do not mandate that these claims be arbitrated").[13]

    Recognizing that the "weight of authority" is against them, the Whataburger

Defendants quixotically charge at this entire body of authority based on their

tortured reading of *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248

(2008).  According to the Whataburger Defendants, *LaRue* "recognized that

defined contribution plan participants can assert Section 1132(a)(2) claims tied to

their individual accounts without asserting those claims for the 'entire plan,'"

which upended *Bowles* and the Third Circuit failed to recognize in *In re Schering*

*Plough Corp. ERISA Litig.*  Resp. Br., at 26–28.

    *LaRue* did nothing of the sort.  In  *Munro v. Univ. of S. California*, the

University of Southern California ("USC"), like the Whataburger Defendants here,

argued that "individuals may seek individual recovery in the context of defined

---

[13]The Whataburger Defendants also cite *Leavitt v. Nw. Bell Tel. Co.*, which
enforced a release as to a claim for denial of plan benefits.  921 F.2d 160 (8th Cir.
1990).  Such claims are brought individually under Section 502(a)(1)(B), not
Section 502(a)(2), which are brought on behalf of the plan.  *See Langbecker v.
Elec. Data Sys. Corp.*, 476 F.3d 299, 313 (5th Cir. 2007) ("ERISA § 502(a)(1)(B)
allows a beneficiary to recover plan 'benefits,' whereas § 502(a)(2) allows
recovery that inures to the benefit of the plan as a remedy for breach of fiduciary
duties") (citation omitted).

contribution plans, such as the [p]lans . . . because defined contribution plans comprise individual accounts."  896 F.3d 1088, 1093 (9th Cir. 2018).  The Ninth Circuit found otherwise:

> *LaRue* cannot bear the weight USC places on it. In *LaRue*, the Supreme Court held that an individual may bring an ERISA claim alleging breach of fiduciary duty even if the claim pertains only to her own account and seeks relief for losses limited to that account. 552 U.S. at 256 []. In doing so, the Court made clear that it had not reconsidered its longstanding recognition that it is the plan, and not the individual beneficiaries and participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan. *Id*. ("[A]lthough § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account.").

*Id.*  Other courts of appeals, including the Third Circuit, have likewise rejected this mischaracterization of *LaRue*.  *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 595 n.9 (3d Cir. 2009) (*LaRue* "broadens, rather than limits, the relief available under § 502(a)(2) in holding that a derivative fiduciary claim may be brought on behalf of a "plan," even if the ultimate relief may be individualized"); *Hawkins*, 32 F.4th at 631 ("*LaRue* therefore means that while any claims properly brought under § 502(a)(2) must be for injuries to the plan itself, § 502(a)(2) authorizes suits on behalf of a defined-contribution plan even if the harm is inherently individualized"); *Cedano*, 100 F.4th at 400 ("nothing about *LaRue* alters

*Russell*'s holding that remedies under Section 502(a)(2) are limited to providing relief to the plan").[14]

Indeed, even though this Court has yet to address this argument, its reading of *LaRue* accords with the Second, Third, Sixth and Ninth Circuits. As it explained in *Babin v. Quality Energy Servs.*, "Section 1109(a) only imposes liability for specific types of harms—*i.e.*, fiduciary breaches that impair plan assets (for a defined-benefit plan) or individual-account assets (for a defined-contribution plan)." 877 F.3d 621, 627 n.8 (5th Cir. 2017) (citing *LaRue*, 552 U.S. at 255–56). "It '*does not* provide a remedy for individual injuries distinct from plan injuries.'" *Id*. (emphasis added). Accordingly, *LaRue* does not undermine the "weight of authority" establishing that, without the Plan's consent, "a release is ineffective from barring" the Section 502(a)(2) claims that Esquivel brought.

---

[14]The Whataburger Defendants dismiss *Munro*, *Hawkins*, and *Cedano* because those cases addressed the issue of a participant's ability to agree to arbitrate Section 502(a)(2) claims without the plan's consent or authority. Resp. Br., at 28–30. The principles of plan consent and authority are, however, the same, and regardless, those cases disagreed with the tortured reading of *LaRue* that the Whataburger Defendants advance here.

### III. INDIVIDUAL PARTICIPANTS CANNOT SURRENDER THE RIGHT TO BRING SECTION 502(A)(2) CLAIMS ON BEHALF OF THE PLAN WITHOUT THE PLAN'S AUTHORITY OR CONSENT

The Whataburger Defendants argue that, even if a participant cannot agree to release or arbitrate Section 502(a)(2) claims without the plan's consent or authority, a covenant not to sue is effective against such claims because "covenants not to sue are fundamentally different" from releases. Resp. Br., at 30. They reiterate that "[t]he former extinguishes liability, and the second gives up a right to take legal action." *Id.* They also say, "[w]hen a participant waives his or her own individual right to sue under Section 1132(a)(2), the statute still permits suit for the same alleged ERISA violation by other potential plaintiffs," such as the Secretary of Labor or a plan fiduciary. *Id.* at 30–31. This, according to the Whataburger Defendants, is the "substantive distinction between a release and covenant not to sue." *Id.* The Whataburger Defendants' reasoning is unintelligible.

Sure, a covenant not to sue is distinct from a release as a general matter. But so is a release and an agreement to arbitrate. Nevertheless, as the Ninth Circuit held in *Munro* and the Sixth Circuit held in *Hawkins*, the principle that a participant cannot release a plan's Section 502(a)(2) claim without the plan's consent or authority applies with equal force to a participant's ability to agree to arbitrate such a claim. *See Munro*, 898 F.3d at 1092-93; *Hawkins*, F.4th at 633. The difference between a release and covenant not to sue is irrelevant in the

context of that principle as well; just as a participant cannot agree to release or arbitrate a plan's Section 502(a)(2) claim without the plan's authority or consent, a participant cannot agree not to sue under Section 502(a)(2) without the plan's authority or consent.  Op. Br., at 21–23.

The Whataburger Defendants' point that Section 502(a)(2) permits a plan fiduciary or the Secretary of Labor to pursue Section 409(a) claims is even more inconsequential.  Such alternative plaintiffs exist when a participant agrees to a release or an arbitration provision as well, but that detail has no impact on the ineffectiveness of a release or arbitration provision on Section 502(a)(2) claims, which are contingent on the plan's consent or authority.  *See Munro*, 898 F.3d at 1092–93; *Hawkins*, F.4th at 633; *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d at 594.[15]

The Whataburger Defendants also assert that Esquivel has no standing because he "g[a]ve up all rights to any money or other individual relief based on any . . . judicial decision" when he signed the Separation Agreement.  Resp. Br., at

---

[15]In *In re Schering Plough Corp. ERISA Litig.*, the Third Circuit only noted, without any analysis as to the merits, that "it *could* be argued that the covenant not to sue bars [the named plaintiff] from filing a lawsuit and serving as a lead plaintiff."  589 F.3d at 599 (emphasis added).  As discussed above, the same reasoning that the Third Circuit applied to find the plaintiff's release ineffective would control the effectiveness of a covenant not to sue, just as the Sixth and Ninth Circuits have held for arbitration agreements.

31.  That language, however, is drawn from the General Release, not the Promise

Not to Sue.  ROA.181.  But as the Whataburger Defendants acknowledge (for this

argument anyway), the General Release is ineffective against the Section 502(a)(2)

claim that Esquivel brought,[16] so Esquivel never gave up his "rights to any money

or individual relief" from judicial action for the 502(a)(2) claim in the first

instance.

The Whataburger Defendants' invocation of *Thole v. U. S. Bank N.A*, 590

U.S. 538 (2020) and *Cunningham v. Cornell Univ.*, 145 S. Ct. 1020 (2025), is

likewise meaningless.  The Supreme Court emphasized that its standing analysis in

*Thole* concerned defined benefits plan, not defined contribution plans such as the

Plan here:

> Of decisive importance to this case, the plaintiffs' retirement plan is a
> defined-benefit plan, not a defined-contribution plan.
>
> *            *            *
>
> [P]articipants in a defined-benefit plan are not similarly situated to the
> beneficiaries of a private trust or to the participants in a defined-
> contribution plan. *See Varity Corp. v. Howe*, 516 U.S. 489, 497 []
> (1996) (trust law informs but does not control interpretation of ERISA).
> In the private trust context, the value of the trust property and the
> ultimate amount of money received by the beneficiaries will typically
> depend on how well the trust is managed, so every penny of gain or loss
> is at the beneficiaries' risk. By contrast, a defined-benefit plan is more
> in the nature of a contract. The plan participants' benefits are fixed and
> will not change, regardless of how well or poorly the plan is managed.

---

[16]ROA.415.

590 U.S. at 540, 542.

Applied here—and in contrast to the defined benefits plan participants in *Thole*—"the ultimate amount of money received by [Esquivel] will . . . depend on how well the [Plan] is managed," so Esquivel has standing to bring a Section 502(a)(2) claim on behalf of the Plan if it is mismanaged. *Id.*; *cf. Cedeno*, 100 F.4th at 403 ("That an individual must have a personal stake in the relief sought on behalf of the plan to have Article III standing for a suit under Section 502(a)(2) does not mean the plaintiff therefore litigates in an individual capacity to recover for the plaintiff's own individual injuries rather than in a representative capacity to secure relief for the plan").

In *Cunningham*, the Supreme Court referred to *Thole* to instruct, "suits that allege a prohibited transaction occurred but fail to identify an injury" should be dismissed. 145 S. Ct. at 1032. That proposition is irrelevant here.

In recognition of the infirmity of its legal position, the Whataburger Defendants finally implore that "disastrous consequences" will follow if this Court does not bless their untethered view that the Promise Not to Sue extends to the Plan's Section 502(a)(2) claim. Resp. Br., at 31. According to the Whataburger Defendants, "no participant could ever enter into a binding agreement to drop—or—not to bring—[such] claim[s]." Resp. Br., at 32.

-16-

This rhetoric once again ignores the fundamental principle that only a plan can agree to arbitrate, release, or promise not to litigate a Section 502(a)(2) claim. *See* ARGUMENT, Section I.B, *supra*; Op. Br., at 21–23.; *see also Arnold v. Paredes,* 714 F. Supp. 3d 962, 974 (M.D. Tenn. 2024)(emphasis added)("The Court does not find any of the cases relied upon by Defendants to be persuasive to answer the question whether Plaintiffs can release derivative claims" and Plaintiffs "did not have the power to individually ***waive*** claims owned by the Plan in their separation agreements").[17] As a corollary to that principle, a participant can agree to release or promise not to bring a Section 502(a)(2) claim on behalf of a plan once that participant is determined to be an adequate representative of the plan. *See Perez v. Bruister*, 823 F.3d 250, 258 (5th Cir. 2016) ("this court has implicitly approved the use of class actions to obtain relief for alleged ERISA plan-wide violations" as a safeguard to ensure that the participant's "prosecution of the claims" does not prejudice the plan or other participants). Numerous binding settlements have been entered on that basis, include ones represented by the Whataburger Defendants'

---

[17]The Whataburger Defendants reference the determinations in *In re Schering Plough*, *Howell*, and *Levitt* that ERISA Section 410(a), which prohibits provisions that "purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy," does not apply to releases. Resp. Br., at 32. But that conclusion is distinct from the principle that plan consent or authority is necessary for a release to be effective. *See In re Schering Plough*, 589 F.3d at 594.

counsel. *See, e.g.*, *Blackmon v. Zachary Holdings, Inc.*, 2022 WL 3142364, at *3

(W.D. Tex. Aug. 5, 2022) (approving release of plan fiduciaries in class settlement

after finding participant plaintiffs adequate representatives in Section 502(a)(2)

action).

## IV.  THE WHATABURGER DEFENDANTS HAVE NO SUBSTANTIVE RESPONSE TO THE DISTRICT COURT'S MISAPPLICATION OF THE PROMISE NOT TO SUE TO SUBSEQUENT PLAN INJURIES

The Whataburger Defendants insist that the District Court correctly found

that the Promise Not to Sue covered the entirety of Esquivel's action because the

Section 502(a)(2) claims predated the Separation Agreement.  Resp. Br., at 32–33,

34–35.  But their contention rests on misstating the record.

ERISA fiduciaries have a "continuing duty to monitor trust investments and

remove imprudent ones." *Tibble*, 575 U.S. at 529.  Esquivel alleges that the

Challenged Funds remain in the Plan to the present.  Op. Br., at 6–10, 23–25.[18]

Accordingly, the Whataburger Defendants' fiduciary breaches are continuous and

continue to this day.

---

[18]ROA.12–13 [¶¶ 1, 5] (alleging that the Whataburger Defendants "failed to appropriately monitor the Plan's investments, resulting in the retention of unsuitable investments in the Plan instead of prudent alternative investments that were readily available at all times Defendants selected and retained the funds at issue and throughout the Class Period," which is from 2018 to the present); ROA.28–29 [¶¶ 45, 58].

The Whataburger Defendants also claim that Esquivel did not raise this point before the District Court or in his opening brief. Resp. Br., at 33–34. To the contrary, the District Court recognized Esquivel's argument that the "Promise Not to Sue . . . is ineffective as to unknown, future ERISA claims" like the Section 502(a)(2) claims Esquivel brought on behalf of the Plan.[19] But it erred by ignoring Esquivel's allegations that the Whataburger Defendants' fiduciary breaches are continuous because the Plan retains the Challenged Investments to the present. *See Tibble*, 575 U.S. at 530 ("The Ninth Circuit erred by applying a 6–year statutory bar based solely on the initial selection of the three funds without considering the contours of the alleged breach of fiduciary duty").[20] Esquivel detailed this oversight in his opening brief, which includes citations to the Complaint and the District Court's Order. *See* Op. Br., at 23–25.

Finally, the Whataburger Defendants argue that there are no allegations of Esquivel holding the Challenged Funds after the Separation Agreement's effective date of March 15, 2023. Resp. Br., at 34–35. Esquivel, however, alleges that "assets attributable to his Plan account were invested in the alternatives challenged in the Action during the Class Period."[21] The singular fact that he is no longer a

---

[19]ROA.419; Op. Br., at 14–15.

[20]ROA.419—420; ROA.12–13 [¶¶ 1, 5].

[21]ROA.14–15 [¶ 8].

participant today does not establish with any degree of certainty that he closed his Plan account prior to March 15, 2023, nor did the District Court examine that issue.  Thus, to the extent such an issue is relevant, Esquivel should be provided the opportunity to amend his pleadings or submit supporting evidence.  *See LaRue*, 552 U.S. at 256 n.6 ("After our grant of certiorari respondents filed a motion to dismiss the writ, contending that the case is moot because petitioner is no longer a participant in the [p]lan.  While his withdrawal of funds from the [p]lan may have relevance to the proceedings on remand, we denied their motion because the case is not moot.  A plan 'participant,' as defined by § 3(7) of ERISA, 29 U.S.C. § 1002(7), may include a former employee with a colorable claim for benefits").

## CONCLUSION

This Court should reverse the District Court's Order granting the Whataburger Defendants' Rule 12(b)(1) motion.

Dated: May 14, 2025                    Respectfully submitted,

                                       /s/ *James E. Miller*
                                       JAMES E. MILLER
                                       MILLER SHAH LLP
                                       65 Main Street
                                       Chester, CT 06412
                                       (866) 540-5505
                                       jemiller@millershah.com

JAMES C. SHAH
ALEC J. BERIN
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
jshah@millershah.com
ajberin@millershah.com

JOHN SAUL EDWARDS JR.
AJAMIE, LLP
711 Louisiana Street
Pennzoil Place S. Tower, Suite 2150
Houston, TX 77002
jedwards@ajmie.com

*Counsel for Plaintiff-Appellant*

## CERTIFICATE OF SERVICE

This is to certify that the foregoing document has been served via the

Court's ECF filing system in compliance with Federal Rules of Appellate

Procedure 25(b) and 25(c), on March 14, 2025, on all registered counsel of record,

and has been transmitted to the Clerk of the Court.

Dated: May 14, 2025                    /s/ *James E. Miller*

                                               JAMES E. MILLER

                                               *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 4,871 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman type-style.

Dated: May 14, 2025                    /s/ *James E. Miller*
                                                         JAMES E. MILLER

                                                         *Counsel for Plaintiff-Appellant*